UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
SOUTH BEND DIVISION

| | |
|---|---|
| CITY OF SOUTH BEND, )<br>)<br>Plaintiff, )<br>)<br>v. )<br>)<br>SOUTH BEND COMMON COUNCIL, )<br>*ET AL.,* )<br>)<br>Defendants. ) | Cause No. 3:12-cv-475 |

**DEFENDANT BOYKINS' RESPONSE IN OPPOSITION TO JOINT MOTION FOR PROTECTIVE ORDER**

Comes now Darryl Boykins (hereafter "Boykins"), by counsel, and opposes the Joint Motion For Protective Order filed by the City of South Bend, Bryan Young, Sandy Young, Timothy Corbett, David Wells and Steve Richmond (hereafter "the moving parties"). Boykins agrees with, and adopts the arguments made and legal authorities relied upon, by Karen DePaepe and Scott Duerring in their Response in Opposition, filed July 19, 2013. By this Opposition Response, Defendant Boykins seeks to augment the bases for denying the Joint Motion for Protective Order. In addition to the arguments made by DePaepe and Duerring, there are three additional points to be considered. First, a general protective order is unnecessary at this stage of the proceedings. Second, the protective order is against, or potentially against, public policy. Third, the proposed protective order (Exhibit A to the Joint Motion) is inaccurate, overly broad and unworkable.

1

## HISTORICAL BACKGROUND

Some historical background might assist the court in understanding why the parties, having engaged in several months of discovery, are only recently coming to the issue of a protective order.

After the FBI investigated the South Bend Police Department phone line recording system, the City of South Bend fired its Communications Director, Karen DePaepe, and demoted its Chief of Police, Darryl Boykins. Both DePaepe and Boykins have sued the City (and others) in federal court as a result of those adverse employment decisions under separate Cause Numbers. As a result, even though the City, DePaepe and Boykins are co-Defendants "on the same side of the v" in Cause Number 3:12-CV-532, and even though the City and the other moving parties are "on the opposite side of the v" in that same case, the moving parties share a common purpose in arguing to the court that an actionable wiretap violation occurred. DePaepe, Duerring, Boykins and the South Bend City Council disagree with that argument, and believe the law enforcement exception applies to the facts of this case to negate the allegation that an improper interception ever occurred. They believe this case is on all fours with *Amati v. City of Woodstock,* 176 F.3d 952 (7th Cir. 1999).

Of course, the City and its counsel are free to employ any legal strategies they deem appropriate, and to argue any and all of their theories of the case to the court. The relevance of those strategies and theories comes into play at this stage in the proceedings when analyzing both the timing and the propriety of their joint motion because the moving parties are the ones who have gotten into, attempted to get into, or expressed a need to get into, the content of the tapes.

On April 15, 2013, Boykins was deposed by Daniel Pfeifer, attorney for the Youngs and Messers. Corbett, Wells and Richmond. During the Boykins deposition, Pfeifer marked as Exhibit 1 an Officer's Report dated January 4, 2012 (*sic*, 2011), authored by DePaepe. At that point, the parties went off the record and counsel agreed to seal the unredacted copy of the Report, then to proceed with questioning on the partially redacted portion of the same Report, which was then marked as Exhibit 1A and left unsealed. The agreed reason for sealing the unredacted Report was to avoid getting into the content of any of the tapes. Attached as Exhibit 1 are pages 65 and 66 of Boykins' deposition transcript.[1]

Pfeifer and the City's outside counsel Edward Sullivan then asked a series of questions regarding the Report, which questions centered around when and why the recorded phone line, which had been authorized to be recorded by prior Chief of Police Thomas Fautz for legitimate law enforcement purposes, was listened to by DePaepe. At one point in the questioning by Sullivan, undersigned and Sullivan had a conversation regarding concerns that Sullivan was asking Boykins questions about the content of the tapes. And while counsel disagreed about whether or not Sullivan's questions were getting into the contents of the tapes, those pages of the deposition were marked "For Attorneys' Eyes Only" in order to avoid inadvertent disclosure of the content of the tapes. Attached as Exhibit 2 are pages 122 and 133 of Boykins' deposition transcript, marked "For Attorneys' Eyes Only." At Boykins' deposition, all counsel were sensitive to, and

---

[1] Pfeifer later asked questions about, and marked as deposition Exhibit 3, an FBI receipt produced by the City which indicated the number of tapes returned to the City by the FBI, the dates the tapes were made and, though redacted, a summary of what was included on one or more of the tapes.

3

careful about, the issue of not getting into the content of the tapes at the first phase of the bifurcated discovery schedule.

Later that same day, Attorney Jeff McQuary, Pfeifer's co-counsel, then commenced the deposition of Karen DePaepe, which to date has not been completed. During the DePaepe deposition, McQuary began questioning her about Exhibits 1 and 1A, previously marked in the Boykins deposition. McQuary questioned DePaepe about the contents of at least one of the tapes, and at that juncture, counsel had a conversation both on and off the record about the propriety of asking tape content-based questions at this phase of the bifurcated discovery schedule. On the record McQuary stated that he thought it would be very difficult for him to brief the issue at hand (ostensibly referring to his summary judgment motion) without referring to the redacted portions of Exhibit 1A. Specifically, he indicated that he did not believe it was possible to get to the substance of the legal issue at hand without going into the contents of the tapes.

Because of the lateness of the day, DePaepe's deposition was continued. Depositions occurred the next day, but did not touch upon the issues of the contents of the tapes. Instead, at the next wave of depositions by the moving parties, which occurred on May 28, 2013, and by request of the moving parties, all counsel met in Pfeifer's office and outside the presence of the parties or stenographers, to discuss the issue of getting into the contents of the tapes. At that meeting, which included a call to the court for guidance, it was the position of the moving parties, including the City, that they would need to go into the contents of the tapes when DePaepe's deposition resumed. It was the position of the non-moving parties (Depaepe, Duerring, Boykins and the South Bend City Council), that it was premature to get into the contents of the tapes (beyond what the

4

moving parties had already attempted or done), and that to do so would necessarily require that the tapes not only be produced, but be referred to and marked as deposition exhibits, pursuant to the Best Evidence Rule.  Without a clear *inter se* resolution on this issue, DePaepe's deposition was again continued, and other depositions were taken.   The moving parties subsequently filed their Joint Motion for Protective Order, ostensibly to try to resolve the issue.

## ARGUMENTS

**Argument 1:  A Sweeping Protective Order is Unnecessary at this Stage of the Proceedings**

Unless the parties intend or need to get into the contents of the tapes, there is no reason for a protective order at this juncture in the proceedings.  If the moving parties, as Mr. McQuary indicated, need to explore the contents of the tapes in order to brief, for summary judgment purposes, their argument that the wiretap statute was violated, then they have *de facto* admitted that they cannot prevail on summary judgment at the first phase of discovery.  The first phase of discovery, per the court's direction and order, is supposed to be a content neutral discovery process designed to answer the questions of what lines were recorded and for what purposes.  That is why counsel for the parties have, almost *ad absurdum,* sought to avoid getting into the contents of the tapes.

It has already been discovered, and will be fully briefed at summary judgment, that the line in question was ordered to be recorded not by Defendant Boykins, but rather, by prior Chief of Police Fautz, for entirely legitimate law enforcement purposes.[2]  And that is the only issue to be discovered at this phase of the discovery process.  The

---

[2] Indeed, if Chief Fautz had violated the applicable wiretap statutes when he ordered the line(s) recorded, he necessarily would be named a Defendant in this matter.   Instead, he is disclosed as a witness by the moving parties.

5

question before the court will be a legal one… whether or not the recording of the line in question constituted a violation of, or an exception to, the wiretap statute. There is no need of a protective order for the parties to brief, or the court to rule on, that issue. It is only in the exploration, in discovery, of the contents of the tapes that a protective order might be appropriate. Since all parties agree that the contents of the tapes are not at issue at this juncture, a protective order would not only be overkill, but more importantly, would be abjectly improper.

**Argument 2: A Protective Order Would Be Against Public Policy**

This case is being monitored by the public. It is, and for almost a year and a half has been, the biggest, or one of the biggest, public interest stories in the media and at public meetings and fora. The notion that counsel for all the parties, with the approval of the court, would hold, or appear to hold, these proceedings in secret via a protective order is anathema to the openness of the courts and the administration of government in general. At this first phase of the court's bifurcated discovery order, we are not talking about the content of the tapes. Rather, we are talking about a specifically legal question, to wit, whether the taping of a particular line, authorized for legitimate law enforcement purposes by a prior chief several years previous, constitutes a violation of the federal wiretap statute.

At this phase, discovery is meant to uncover how the line came to be recorded, and for what reasons. It is not meant to discover the contents of the recordings with regard to these particular moving parties. If the City and the other moving parties are not able to brief their arguments without getting into the content of the tapes, then so be it. If the are able, then a protective order would only serve to send a message to the public that

it is okay to conduct normal civil proceedings in secret just because counsel are not sure how to avoid getting into content-based disclosures.

**Argument 3:  The proposed Protective Order is Inaccurate, Overly Broad and Unworkable.**

Even if the court found reason to enter a protective order, the moving parties' Proposed Protective Order (Exhibit A to their Joint Motion for Protective Order) is inaccurate, overly broad and unworkable.  It is inaccurate insofar as it suggests the motion for protective order was a combined effort, an agreed motion, by all parties.  It is overly broad in that it seeks protection against disclosure not of a specific piece of evidence or class of evidentiary material, but rather, of all matters produced or discovered in discovery.  And it is unworkable in two ways; first, it does not allow disclosure of discovery materials to the parties themselves, and secondly, it creates a malleable standard of subjective good faith in each attorney to determine what information is to be shared with which employees.

CONCLUSION

Based on the foregoing, and also on the arguments and legal standards cited by Defendants DePaepe and Duerring in their Response in Opposition, Defendant Boykins opposes the Joint Motion for Protective Order and requests that the court deny the same.


Respectfully submitted,


/s/ Thomas M. Dixon_____
Thomas M. Dixon, Esq. (18611-71)
Dixon, Wright & Associates, P.C.
Attorney for Darryl Boykins
55255 Birchwood Court

Osceola, IN  46561
(574) 315-6455
(574) 675-7783 fax
email:  tdixon3902@comcast.net

## CERTIFICATE OF SERVICE

      I certify that a true and accurate copy of the foregoing has been served upon all counsel of record at their addresses of record by email using the CM/ECF system, this 22nd day of July, 2013.


/s/ Thomas M. Dixon
Thomas M. Dixon, Esq. (18611-71)