UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
SOUTH BEND DIVISION

| | | |
|---|---|---|
| CITY OF SOUTH BEND, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Cause No. 3:12-cv-475 |
| | ) | |
| SOUTH BEND COMMON COUNCIL, | ) | |
| *ET AL.,* | ) | |
| | ) | |
| Defendants. | ) | |

**DEFENDANT BOYKINS' RESPONSE IN OPPOSITION TO THE CITY OF
SOUTH BEND'S MOTION FOR PROTECTIVE ORDER**

Comes now Darryl Boykins (hereafter "Boykins"), by counsel, and opposes the

City of South Bend's Motion For Protective Order filed July 15, 2013.  In a nutshell, the

City's Motion incorrectly combines two separate inquiries into one, when only one

inquiry is at issue.  The first and only inquiry at issue is the City's duty to produce the

tapes.  Boykins has no issue with entry of a protective order at this phase in the

proceedings for purposes of protecting the contents of the tapes from random or

inadvertent disclosure that is not supervised by the court.  The law is abundantly clear

that in a federal wiretap case, whether civil or criminal, the Defendant is entitled to the

recordings at issue in order to prepare his defenses, regardless of whether or not the

recordings are later adjudged to be subject to disclosure.  And while the issue of the

contents of the tapes is generally recognized to be a matter to be taken up in the second

phase of the court's current bifurcated discovery order, that fact does not create good

cause to order the tapes not to be produced at all, or to be produced at some later date.

1

As delineated in Boykins' Response in Opposition to the Joint Motion for Protective Order by the City and the Plaintiffs in Cause Number 3:12-cv-532 (the Youngs and Messers. Corbett, Wells and Richmond), it has been the City and the "532" Plaintiffs who have already either sought to discover the contents of the tapes, or have indicated their desire to do so in order to prepare their summary judgment briefs <u>at the first phase</u> of the bifurcated discovery schedule.  That fact alone justifies the production of the tapes.

The case law in this area is clear.  The tapes are required to be produced, and the remedy, if any, for the City's concerns is a protective order preventing the parties or counsel from disclosing the contents of the tapes publicly.  The City is without standing to raise privacy concerns on behalf of the "532" Plaintiffs who, by their Complaint, have put the tapes and their privacy rights at issue.  Moreover, the City cannot be deemed to have waived its arguments as the Plaintiff in the "475" case merely because it is under an obligation to produce the tapes to the parties.  The litigation exception that is judicially recognized in the wiretap statute protects the City against any such claim, and it would be frivolous of any party to make that argument.

ARGUMENTS

**Argument 1:  The Adjudicatory/Defense Exception Requires Production of the Tapes**

In interpreting the Federal Wiretap statute 18 U.S.C. § 2510 *et seq*, courts have routinely addressed the issue raised in the City's Motion for Protective Order, and have applied the Adjudicatory or Defense Exception to mandate production of the recorded information, in order to allow the defendant, in both civil and criminal proceedings, to prepare his defense.   See, *McQuade v. Michael Gassner Mech. & Elec. Contractors, Inc.,* 587 F. Supp. 2d 1183 (D.Conn. 1984), (recognizing "defense exception" allowing

2

disclosure of tapes to a defendant's attorney for purposes of investigating and defending

against a Title III claim).  See also, *Nix v. O'Malley*, 160 F. 3d 343 (6th Cir. 1998),

(extending defense exception not only to being allowed to hear contents of tapes, but also

to using the tapes in discovery), *Massaro v. Allington Fire Dist.* Westlaw Citation: No.

Civ. 3:02CV537 (PCD) (D.Conn. 2003), (court refusing to issue protective order that

would prevent defendant's use of tapes in deposition in civil wiretap case, reasoning that

by filing suit, the plaintiffs placed the tapes directly at issue), *In re Aftermarket Filters*

*Antitrust Litigation,* Unpublished, Westlaw Citation 263669 (N.D.Ill. 2012) (held that

even illegally obtained tape recordings, inadmissible under 18 U.S.C.  2515, can be used

in discovery), *Lewton v. Divingnazza*, 772 F.2d 1046 (D.Neb. 2011), (defense exception

allows disclosure of contents of tapes to counsel preparing for and investigating claims of

Title III violations), and *Goodspeed v. Harman*, 39 F. Supp. 787 (N.D.Tex. 1999)

(recognized adjudicatory/defense exception to enable parties to prove their claims and

affirmative defenses.)

**Argument 2:  Production of the Tapes is Not Premature**

Boykins is allowed to prepare both his defense and his counterclaims.  With

regard to the contents of the tapes, there are a multitude of possible scenarios that would

aid Boykins in that process in the first phase of discovery, thereby negating any

suggestion that an abeyance is appropriate.  Two obvious examples come quickly to

mind.  If one of the "475" Plaintiffs is heard to have said "I know this line is taped, and I

couldn't care less," or "Watch what you say because all of the lines at the police

department are taped," both of those statements effectively determine the litigation's

outcome.  To be sure, there are probably many statements or conversations that would not

run to the issue of knowledge taping or consent to the same, or of the propriety of the line
recording question in general, but the litigants are entitled to listen to the tapes in order to
make that determination.  Better said, it might constitute ineffective assistance of counsel
or malpractice for counsel to do otherwise, and it would certainly offend fundamental
principles of due process to deprive, or even hold in abeyance, a litigant's right to prepare
his case.

**Argument 3:  The City has no Standing to Raise Privacy Objections**

The City does not have standing to assert a claim that the "532" plaintiffs' privacy
rights need protecting.  The City is being sued by the "532" Plaintiffs who allege, *inter
alia,* invasion of their privacy rights.  Ostensibly, the City is defending against those
claims.  Ostensibly, the City simply wants to know whether or not the recording system
of the South Bend Police Department constituted a violation of the federal wiretap
statute.  In any case, by filing suit, the "532" Plaintiffs have waived any privacy rights
they otherwise believe they had in the phone line in question.

**Argument 4:  It's About Production, Not Disclosure**

In its Motion, the City sites rules and cases dealing with protective orders that
prevent, or delay, **disclosure, but not production**, of tapes.  The issue in *U.S. v.
Dorfman*, 690 F.2d 1230 (7th Cir. 1982) was whether the press would be entitled to
disclosure of the tapes in advance of the criminal trial.  The court determined that
disclosure of the tapes on the heels of trial might compromise the defendant's right to a
fair trial, and therefore denied the request for their immediate release to the press.  The
*Dorfman* court did not even address the issue of production of the tapes to the defendant

4

and his counsel, because it was not an issue.  The tapes were produced to the defendant and his counsel.

**Argument 5:  Mandatory Production Does not Constitute Waiver**

Perhaps the primary reason for the City's Motion is to make sure it has protected its position as the Plaintiff in the "475" litigation.  Even at that, however, it has always been the City's stated position that it simply wants to know whether the tapes can be disclosed.  Indeed, Mayor Buttigieg gave at least one television interview wherein he stated that he wanted to listen to the tapes if it were deemed legally permissible to do so. In point of fact, the Mayor, and all of the parties involved in this litigation, have the authority under the defense exception, and indeed the duty, to listen to the tapes, and that authority does not inform or even touch on the question of whether the statute was violated.  The two issues are completely inapposite.

**Argument 6:  A Protective Order Preventing or Delaying Disclosure is Appropriate**

Boykins is not unmindful of the concerns expressed by the City in wanting to make sure no one inadvertently violates the Wiretap Act.  Indeed, counsel for Boykins has been the most protective of this concern and the strongest advocate for avoiding unnecessary inquiries at this first phase of the court's discovery schedule.  However, protecting against **disclosing content** that, per the court's discovery schedule, might properly be explored and possibly disclosed at the second phase of discovery, is completely different from **withholding content** that might be applicable to the first phase of discovery.  The City has said it has not listened to the tapes.  Taking the City at its word, it cannot then argue that there is nothing on the tapes that will inform the first

phase of discovery.  The only way to know if there is anything on the tapes that informs the first phase of discovery is to listen to the tapes.

The City can argue that a protective order should be in place that protects against the disclosure of the content of the tapes before the court has ruled on the propriety of disclosure.  And undersigned counsel agrees in principle with that notion, as the courts have frequently and uniformly said the same.  The City's proposed Protective Order, however, is overly broad, and needs to be narrowly tailored to address the tapes and their contents only.  If the court rules in Boykins' favor on this issue, counsel for the City and Boykins will most likely be able to present an agreed protective order for the court's approval.

CONCLUSION

Based on the foregoing, Defendant Boykins opposes the City's Motion for Protective Order and requests the court to deny the same, and order the City to produce the tapes in question, pursuant to the Adjudicatory/Defense Exception that is judicially recognized in the Wiretap Act.

Respectfully submitted,


/s/ Thomas M. Dixon_____
Thomas M. Dixon, Esq. (18611-71)
Dixon, Wright & Associates, P.C.
Attorney for Darryl Boykins
55255 Birchwood Court
Osceola, IN  46561
(574) 315-6455
(574) 675-7783 fax
email:  tdixon3902@comcast.net

6

## <u>CERTIFICATE OF SERVICE</u>

I certify that a true and accurate copy of the foregoing has been served upon all counsel of record at their addresses of record by email using the CM/ECF system, this 23rd day of July, 2013.


/s/ Thomas M. Dixon_____
Thomas M. Dixon, Esq. (18611-71)