UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
SOUTH BEND DIVISION

| | |
|---|---|
| CITY OF SOUTH BEND, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | CAUSE NO. 3:12-cv-475-JVB-CAN |
| ) | |
| HOLDER, *et al.*, ) | |
| ) | |
| Defendants. ) | |

**ORDER**

Pending before the Court are two motions for protective orders.  The first motion was filed on July 8, 2013, by the City of South Bend, Brian Young, Sandy Young, Timothy Corbett, David Wells, and Steve Richmond and was styled "Joint Motion for Entry of Protective Order." [Doc. No. 63].  On July 19, 2013, Karen DePaepe and Scott Duerring filed their Response in Opposition to Joint Motion for Protective Order.  On July 22, 2013, Darryl Boykins filed his Response in Opposition to Joint Motion for Protective Order.  On July 29, 2013, the City of South Bend filed its Reply in Support of the Joint Motion for Entry of Protective Order.

The second Motion for Protective Order was filed on July 15, 2013, by the City of South Bend. [Doc. No. 66].  Boykins filed his Response in Opposition to the City of South Bend's Motion for Protective Order on July 23, 2013.  On August 5, 2013, the City filed its Reply in Support of the City of South Bend's Motion for Protective Order.  Both motions are now ripe.  For the reasons stated below, the Court now grants both motions.

I.     **RELEVANT BACKGROUND**

This consolidated case involves claims arising from recordings made of South Bend police officer telephone conversations that led to a Department of Justice investigation of the

legality of the recordings followed by the termination of Darryl Boykins, the South Bend Chief of Police, and Karen DePaepe, the Communications Director.  Subsequently, the South Bend Common Council served a subpoena on the Mayor demanding release of the recordings at issue.  Concerned that release of the recordings could result in civil or criminal liability under the Federal Wiretap Act ("FWTA"), the City filed a complaint seeking a declaratory judgment as to whether the recordings were legally intercepted and the legal extent to which these recordings may be used or disclosed.  In addition,  Brian Young, Sandy Young, Corbett, Wells, and Richmond ("the 532 Plaintiffs") filed a separate complaint seeking a declaratory judgment regarding the City's liability as to the recordings under 42 U.S.C. § 1983 for violations of the Fourth Amendment and personal privacy rights and under Indiana state law for tortious conduct.  The 532 Plaintiffs also sought an injunction preventing release of the recordings.

Following the consolidation of the two cases, the Court established a bifurcated discovery schedule allowing discovery only as to the legality of the recorded phone conversations under the FWTA until after anticipated dispositive motions regarding the legality question are resolved.  As of this date, one dispositive motion has been filed but is not yet ripe.  Discovery as to the issues under the FWTA closed on July 1, 2013 and discovery remains stayed on all other issues in this case.

During the course of the first phase of discovery, the parties conducted depositions and written discovery that led to discussions among counsel for the parties as to the relevance of the content of the recordings at this stage of the litigation.  Generally, counsel agreed that content was not relevant and even redacted certain deposition testimony to prevent inadvertent disclosure of such content that arose unexpectedly.  After counsel discussed the possibility of an

agreed protective order to address concerns about any further inadvertent disclosure of content of the recordings, Boykins served its Second Request to Product Documents on the City requesting only the tapes. Subsequently, both motions for protective orders were filed, as were oppositions to those motions, and are addressed below.

## II.     APPLICABLE STANDARDS

The court may issue a protective order to protect a party from annoyance, embarrassment, oppression, or undue burden or expense. Fed. R. Civ. P. 26(c)(1). Protective orders can take many forms, including but not limited to forbidding the disclosure of discovery; specifying terms, including time and place, for the disclosure of discovery; and forbidding inquiry into certain matters, or limiting the scope of disclosure or discovery to certain matters. Fed. R. Civ. P. (26)(c)(1)(A), (B), (D).

When granting a proposed protective order, the court must independently determine whether "good cause" exists to seal the requested information from the public record. Fed. R. Civ. P. 26(c); *Citizens First Nat'l Bank of Princeton v. Cincinnati Ins. Co.*, 178 F.3d 943, 944 (7th Cir.1999). In doing so, the court must not grant parties *carte blanche* to seal or protect whatever they desire. *Citizens,* 178 F.3d at 944; *See also Pierson v. Indianapolis Power & Light Co.*, 205 F.R.D. 646, 647 (S.D. Ind. 2002) ("Independent and careful evaluations of protective orders are especially important because '[t]he judge is the primary representative of the public interest in the judicial process....'") (quoting *Citizens,* 178 F.3d at 945). In other words, the court cannot serve as a rubber stamp whenever parties wish to seal public records, but must review all requests to seal documents in light of the public interest in the judicial process. *Citizens,* 178

3

F.3d at 945 (citing *In re Krynicki*, 983 F.2d 74 (7th Cir.1992); Miller, Arthur M., *Confidentiality, Protective Orders, and Public Access to the Courts*, 105 Harv. L.Rev. 427, 492 (1991)).

When reviewing a proposed protective order seeking to seal documents produced in discovery, the court must ensure that "(1) the information sought to be protected falls within a legitimate category of confidential information, (2) the information or category sought to be protected is properly described or demarcated, (3) the parties know the defining elements of the applicable category of confidentiality and will act in good faith in deciding which information qualifies thereunder, and (4) the protective order explicitly allows any party and any interested member of the public to challenge the sealing of particular documents." *Pierson*, 205 F.R.D. at 647 (citing *Citizens,* 178 F.3d at 946).

### III.   ANALYSIS

#### A.   Joint Motion for Entry of Protective Order, Doc. No. 63

In this motion, the City and the 532 Plaintiffs ("the movants") ask the Court to adopt their proposed protective order created to control incidental disclosure of content of the recordings that could allegedly cause irreparable harm to the movants by violating their privacy rights or subjecting them to civil or criminal liability.  DePaepe, Duerring, and Boykins ("the non-movants") oppose entry of the proposed protective order claiming that it is (1) unnecessary because of the content-neutrality of the FWTA, which makes the content of the recordings irrelevant to the single issue before the Court at this time; (2) too vague and overbroad because it does not specify documents or types of statements; (3) against public policy because it allows conduct of these proceedings in secret; and (4) inaccurate, overly broad, and unworkable.

4

Despite their listed concerns, the non-movants appear to believe that the instant motion demonstrates that the movants intend to explore the content of the recordings prematurely.

The Court reiterates that the content of the recordings is not at issue in this first phase of the litigation. The Court refuses to comment on any perceived sense that any party or counsel intends to explore the content of the recordings. The Court, however, cautions the parties and their counsel against any exploration of the content of the recordings during this first phase of the litigation. The only issue currently before the Court is whether the South Bend Police Department had authority to make the recordings. The content of those recordings cannot establish the needed authority retroactively.

Yet the Court is persuaded that incidental references to the content of the recordings could arise during the discovery process. In fact, Boykins confirmed just such an occurrence in his response when he noted that counsel had redacted an officer's report used as an exhibit during Boykins' own deposition on April 15, 2013. Doc. No. 68-3. Similarly Boykins reported that during his deposition, counsel disagreed about whether a line of questioning was related to the content of the tapes and marked two pages of the transcript "For Attorneys' Eyes Only" to avoid inadvertent disclosure of the content of the recordings. *Id.* With evidence that discovery has already led to incidental references to the content of the recordings, the Court agrees that a prophylactic protective order would be appropriate.

The question remains, however, as to whether the movants' proposed protective order meets the Seventh Circuit's requirements under *Citizens*. It does. The proposed order defines "Confidential Information" as "[c]ertain materials obtained through discovery in this matter [that] may disclose information related to or contained in recordings that may be prohibited from

5

disclosure by the [FWTA]." While the definition does not specifically demarcate specific documents that are confidential, it cannot. Clearly, the parties cannot pre-determine in what instances incidental references to the content of the recordings may arise. Moreover, the goal of the protective order is to address inadvertent disclosure, which is by definition "inadvertent" and inherently unpredictable such that defining when and how such references to content will arise is impossible. Therefore, the proposed protective order sufficiently narrows the scope of the protected material to the content of the recordings—a concept familiar to all parties and their counsel as evidenced by the discussions among counsel that have already occurred in their efforts to prevent inadvertent disclosure during this content-neutral phase of the litigation.

The proposed order also properly addresses the public's interest in the litigation and any sealed filings by stating that:

> A party or interested member of the public has a right to challenge the sealing of particular documents that have been filed under seal, and the party asserting the confidentiality will have the burden of demonstrating the propriety of filing under seal.

Doc. No. 63-1 at 6. And despite Boykins' concern, the proposed protective order does allow the parties access to any identified Confidential Information; otherwise, the parties need not be named as persons who can only disclose the Confidential Information to third-parties identified in paragraph 6(b) of the proposed order. *See id.* at 3. In addition, the proposed order protects the Confidential Information by requiring the parties' attorneys to make a good faith determination of the reasonable necessity of an employee's assistance in the aspect of this litigation in which the Confidential Information is disclosed. This could be viewed as an additional layer of protection because the employees of counsel are often included as third-parties to whom protected material may be disclosed without such a good faith determination.

Therefore, because the movants have demonstrated good cause and because the proposed protective order complies with the requirements set forth in *Citizens*, the Court now **GRANTS** the movants' motion. [Doc. No. 63]. The Court **ORDERS** the parties to comply with the terms of the movants' proposed protective order as attached to their motion and is now **DEEMED** filed. [Doc. No. 63-1].

### B.     The City of South Bend's Motion for Protective Order, Doc. No. 66

In this motion, the City of South Bend asks the Court to enter a protective order holding in abeyance Boykins' Second Request to Produce Documents, which asked the City to produce the recordings at issue in this case. The City bases the motion on the content-neutrality of this phase of the litigation in which discovery has been limited to the issue of whether the Police Department had authority to make the recordings. The City acknowledges that it will willingly produce the recordings after the stay of discovery established by this Court is lifted.

In its scheduling order establishing the bifurcated discovery plan that now governs case management in this consolidated case, the Court stayed discovery as to all issues besides "the legality of the recorded phone conversations as that issue relates to the Federal Wire Tap Act." Doc. No. 60 at 1. That stay remains in effect because the Court has not yet ruled on anticipated dispositive motions concerning the Federal Wire Tap Act. *See id.* The Court, however, did provide that any party to whom the continuation of the discovery stay becomes prejudicial may file a motion to lift the stay. *Id.* at 1–2.

In his response brief, Boykins contends that the recordings themselves are a legitimate focus of discovery during the first phase of litigation, and are therefore not subject to the stay. Ironically, Boykins makes this argument after objecting to the City and 532 Plaintiffs' motion for

7

protective order addressed above because the content of the recordings is not at issue during the first phase of litigation.  *See* Doc. No. 68 at 5 ("The first phase of discovery . . . is supposed to be a content neutral discovery process designed to answer the questions of what lines were recorded and for what purposes.  That is why counsel for the parties have, almost *ad absurdum*, sought to avoid getting into the contents of the tapes.").  Boykins, however, argues that production of the recordings is now appropriate because he is entitled to the recordings in order to prepare his defenses in this federal wiretap case.  He is apparently convinced that other parties have indicated an intent to explore the contents of the recordings and to use them in preparing a motion for summary judgment.

Specifically, Boykins argues that the Adjudicatory/Defense Exception under the FWTA requires production of the recordings even during this first phase of the litigation.  *See Nix v. O'Malley*, 160 F.3d 343, 350–52 (6th Cir. 1998) (analyzing whether the adjudicatory or defense exception to disclosure of the content of recordings in light of an FWTA charge applied to the facts of the case).  He cites multiple cases from multiple jurisdictions for the proposition that defendants in FWTA actions are entitled to hear and use the content of the recordings in order to prepare their defense.  *See* Doc. No. 71 at 2–3.  For instance, Boykins cites to the District of Connecticut, which found that disclosure of potentially illegal recordings was proper in an action where the defendant was accused of violating the FWTA.  *McQuade v. Michael Gassner Mech. & Elec. Contractors, Inc.*, 587 F. Supp. 1183, 1188–89 (D. Conn. 1984).

Unlike the situations in the cases cite, producing the recordings in this case now, before the legality of the recordings is determined, would undermine the City's declaratory judgment action completely by forcing it to potentially violate the FWTA, the result the City is explicitly

trying to avoid through this litigation.  Moreover, Boykins has only produced hypothetical allegations of what might be found in the recordings to affect the legality determination without any evidence to support such vague possibilities.  Indeed, the decision to make the recordings was based on facts that necessarily occurred prior to the initiation of the recordings.  Therefore, the content of the recordings, which did not exist when the decision to record the phone lines was made, is irrelevant to determining whether the South Bend Police Department had authority to make the recordings—the only issue currently before the Court.  As a result, Boykins has not convinced the Court that delaying the production of the recordings would be so prejudicial to his case and so necessary to his defense in this first phase of the litigation to warrant immediate production.  The risk of prejudice to the City, however, is clear in light of the potential for liability under the FWTA for illegal disclosure.

      Therefore, the Court now **GRANTS** the City's motion. [Doc. No. 66].  The Court **PROHIBITS** the production of the Police Department recordings at issue in this consolidated case until the stay of discovery on all issues besides the legality of the recordings under the FWTA is lifted.

      **SO ORDERED.**

      Dated this 6th day of September, 2013.

                                        S/Christopher A. Nuechterlein
                                        Christopher A. Nuechterlein
                                        United States Magistrate Judge