UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
SOUTH BEND DIVISION


| | | |
|---|---|---|
| CITY OF SOUTH BEND, BY ITS | ) | |
| CORPORATION COUNSEL ALADEAN M. | ) | |
| DEROSE. | ) | |
| | ) | |
| Petitioner, | ) | |
| | ) | |
| v. | ) | 3:12-CV- 475 |
| | ) | |
| UNITED STATES OF AMERICA, ERIC H. | ) | |
| HOLDER, JR., IN HIS OFFICIAL CAPACITY AS | ) | |
| ATTORNEY GENERAL OF THE UNITED | ) | |
| STAES, SOUTH BEND COMMON COUNCIL, | ) | |
| TIM CORBETT, DAVE WELLS, STEVE | ) | |
| RICHMOND, BRIAN YOUNG, AND SANDY | ) | |
| YOUNG, | ) | |
| | ) | |
| Respondents. | ) | |


## SOUTH BEND COMMON COUNCIL'S MEMORANDUM IN SUPPORT OF ITS MOTION FOR SUMMARY JUDGMENT


Comes now Defendant, the South Bend Common Council, by counsel, pursuant to

F.R.C.P. 56 and files its Memorandum in Support of its Motion for Summary Judgment. The

undisputed evidence establishes that the recorded telephone conversations at issue were recorded

in the ordinary course of the business of the South Bend Police Department and, therefore, are

not subject to the Federal Wiretap Act. The South Bend Common Council is therefore entitled to

such a declaratory judgment on the City of South Bend's Complaint for Declaratory Judgment.

The Common Council also requests that the summary judgment be made a final judgment

pursuant to Rule 54(b).

## PROCEDURAL BACKGROUND

The City of South Bend was informed at the end of July 2012 that the South Bend Common Council would serve it with a subpoena for copies of tapes and/or digital recordings recorded at the South Bend Police Department. The actual subpoena was issued pursuant to Ind.Code 36-4-6-21(b)(2) on August 14, 2012. This subpoena requested the recordings within seven days. The City failed to respond within seven days. Instead of responding, or filing objections to the subpoena, the City, on August 30, 2012, filed a complaint for declaratory judgment in this Court. After the City's actions made it clear that it was refusing to comply with the lawfully-issued subpoena or timely object thereto, the Common Council was forced to file its motion to compel in the St. Joseph Circuit Court on September 14, 2012. Thereafter, on September 20, 2012, the City filed a motion to stay in the state court action. The motion to stay was granted.

### Case No. 3:12-CV-475 (Declaratory Judgment Action)

The named Respondents in the City's Complaint for Declaratory Judgment included the United States of America, Eric H. Holder, Jr., in His Official Capacity as Attorney General of the United States, South Bend Common Council, Tim Corbett, Dave Wells, Steve Richmond, Brian Young, and Sandy Young. The Complaint for Declaratory Judgment, in essence, requested a declaratory judgment with respect to whether recordings made by the South Bend Police Department were legally made pursuant to the Federal Wiretap Act, 18 U.S.C. § 2511. (Complaint at ¶ 9.) With respect to the South Bend Common Council, the complaint for declaratory judgment alleges that the Council exercised its statutory authority to issue a subpoena to the City to produce certain recordings made by the Police Department. With respect to the individual Respondents, the City alleges that the individual Respondents have notified the

2

City of their intent to file a tort claim action against the City pursuant to the Indiana Tort Claims Act for, among other things, a violation of the Federal Wiretap Act. Eric Holder was named as a Respondent, and subsequently dismissed as the Attorney General of the United States who is charged with enforcing the Federal Wiretap Act.

The South Bend Common Council filed a motion to dismiss the Complaint for Declaratory Judgment for lack of subject matter jurisdiction. Specifically, the Common Council asserted that the City was raising the Federal Wiretap Act only as a defense to the Council's motion to compel which was filed in state court and, as such, there was no federal question jurisdiction as alleged by the City.

### Case No. 3:12-CV-532 (Tort Action)

On September 19, 2012, several individuals filed a complaint and jury demand. The Plaintiffs are Brian Young, Sandy Young, Timothy Corbett, David Wells and Steve Richmond. All of the Plaintiffs are Respondents in the City's declaratory judgment action. The only Defendant in the tort action who is also a party to the declaratory judgment action is the City of South Bend. Other Defendants, who are not parties in the declaratory judgment action, are Darryl Boykins, individually and in his official capacity as Chief of Police; Karen DePaepe and Scott Duerring. The South Bend Common Council is not a named party in the tort action.

Plaintiffs subsequently filed an amended complaint naming the same parties. The amended complaint alleges:

> This lawsuit seeks to redress the violations of Plaintiffs' rights under the Fourth Amendment and federal statutes against City officials who surreptitiously intercepted their telephone calls. Plaintiffs also seek declaratory and injunctive relief as well as redress under Indiana law.

3

The amended complaint alleges that the City, through the actions of Darryl Boykins and Karen DePaepe, illegally recorded telephone conversations on the lines of the South Bend Police Department and that Darryl Boykins used the recordings to determine whether his division chiefs were personally loyal to him and to punish anyone who might seek the job of Chief of Police. Plaintiffs allege that they have been damaged by the loss of their privacy and incurred damage to their professional reputation through false accusations of racism and professional disloyalty. Plaintiffs also allege that Defendants' actions constitute an illegal search in violation of the Fourth Amendment and also violate the Federal Wiretap Act, 18 U.S.C. § 2510, *et seq.* The amended complaint further asserts that Scott Duerring, Karen DePaepe's attorney, violated the Federal Wiretap Act by disclosing the contents of the recorded conversations. Plaintiffs also allege that the actions of Boykins and DePaepe constitute violations of Ind.Code § 35-33.5-2 *et seq.* Specific theories of liability as alleged in the amended complaint against Boykins, DePaepe and Duerring include: negligence, defamation, invasion of privacy, and intentional infliction of emotional distress under Indiana law. Plaintiffs claim that the City of South Bend is liable under the principle of respondeat superior for the acts and omissions of Boykins and DePaepe. Plaintiffs seek compensatory and punitive damages, costs and attorney's fees. Plaintiffs also seek a declaratory judgment declaring that the recordings, and disclosure of the content thereof, violated the Federal Wiretap Act and Ind.Code § 35-33.5-2 *et seq.*

Karen DePaepe filed a counterclaim against the Plaintiffs. The counterclaim raises claims for defamation and intentional infliction of emotional distress.

Darryl Boykins also filed a counterclaim against the Plaintiffs. Boykins' counterclaim alleges fraud, defamation, intentional interference with a business relationship/employment contract, and intentional infliction of emotional distress.

As noted above, the South Bend Common Council was not named as a party in the tort action. Jury demands have been filed in the tort action.

### Consolidated Case

The City filed a motion to consolidate the pending actions on November 20, 2012. The South Bend Common Council filed a memorandum in opposition to the motion to consolidate on the basis that the South Bend Common Council was not named as a defendant or third-party defendant in the tort action brought by the individual officers or in any of the counterclaims filed by the Defendants in the tort action. The South Bend Common Council asserted that there was no reason that the South Bend Common Council should incur the time and expense of becoming a part of a consolidated lawsuit that includes numerous issues far beyond the legal issue raised by the City's complaint for declaratory judgment against the Common Council. The Common Council also asserted that it would be prejudiced by consolidation with the tort action and the counterclaims by Darryl Boykins and Karen DePaepe because the Common Council would be involved in the alleged acts and omissions of Darryl Boykins and Karen DePaepe which had no relevance to the declaratory judgment action against the Common Council. Consolidation would also be a waste of the Common Council's limited resources. This Court granted the motion for consolidation over the Common Council's objection.

As noted previously, the Common Council filed a motion to dismiss the federal complaint for declaratory judgment for lack of subject matter jurisdiction. This Court denied the motion to dismiss based on the federal claims that the police officers filed against the City. The Court ruled that the federal lawsuit established that the Defendants could file a separate claim to establish federal-question jurisdiction.

On February 12, 2013, Magistrate Judge Nuechterlein entered a scheduling order which provided in relevant part:

> Because all parties agree that staged discovery would be helpful and appropriate in this case, the Court now **ORDERS** that all discovery concerning the legality of the recorded phone conversations as that issue relates to the Federal Wiretap Act shall be completed by **June 1, 2013**. Thereafter, discovery as to all issues is **STAYED** pending the Court's ruling on anticipated dispositive motions concerning the Federal Wiretap Act. If however, the continuation of the discovery stay becomes prejudicial to any party, such party may file a motion to lift the stay.
>
> Any dispositive motion concerning the issues relating to the Federal Wiretap Act must be filed no later than **July 1, 2013**.
>
> Upon the Court's resolution of anticipated dispositive motions or upon the lifting of the stay of discovery and the Court shall have further status conference to determine what additional discovery is needed to establish appropriate deadlines.

On April 18, 2013, the Court granted a motion to extend the discovery deadline concerning the legality of the recorded phone conversations as that issue related to the Federal Wiretap Act to July 1, 2013. The dispositive motion deadline was subsequently again extended to August 1, 2013. The dispositive motion deadline was again extended to September 30, 2013 on July 25, 2013 and again to December 13, 2013 by an order entered on October 1, 2013.

## ISSUE PRESENTED

Whether the recording of telephone conversations on lines of the South Bend Police Department were made by the police department in the ordinary course of business and are therefore excluded from the Federal Wiretap Act.

## STATEMENT OF MATERIAL FACTS

1.      Karen DePaepe was hired by the South Bend Police Department on January 25, 1987 as a Communications Specialist. She was promoted to Communications Supervisor in

1995. As the Communications Supervisor, Karen's duties included pulling tapes off of the Dictaphone reel-to-reel recording system. (Affidavit of Karen DePaepe, attached as Exhibit "A," at ¶ 1.)

2.      Karen was promoted to Director of Communications in 1998. At that time, Darrell Gunn was the Chief of Police and Rick Kilgore was Division Chief of Services. Gary Horvath was Captain of Planning and Research and replaced the Dictaphone reel-to-reel recording system with a Dynamic Instrument Reliant Recording System. The installation of the Dynamic Instrument Reliant Recording System occurred between July and December 1998. (Affidavit of Karen DePaepe at ¶ 2.)

3.      Between 1987 and through 1998 while the Dictaphone reel-to-reel system was in place, a number of telephone lines were being recorded on a 24-hour basis. These lines were the front-desk lines (three), the communication center lines (nine workstations), and the lines assigned to the uniform commander (three). The purpose for the recording of these lines was to insure that the calls being received were handled correctly and to be able to have a record of phone conversations if in fact a member of the public complained about not being treated appropriately, as well as preserving any information regarding ongoing investigations received from anonymous tips. (Affidavit of Karen DePaepe at ¶ 3.)

4.      The Dictaphone reel-to-reel recording system was replaced by the Dynamic Instrument Recording System between July and December 1998. (Affidavit of Karen DePaepe at ¶ 4.)

5.      After the Dynamic Instrument Reliant Recording System was installed in the second half of 1998, the Chief of Police, Darrell Gunn, directed that additional phone lines were to be added as lines to be recorded lines. These lines were the Chief of Police's, two incoming

lines, two incoming lines to the Detective Bureau and the line that was assigned to the Internal

Affairs Division. Karen was advised that the purpose of adding these additional lines was to

insure that calls were being handled correctly and also to be able to preserve any type of

anonymous information being received by the police department as well as to preserve

information received by the public regarding complaints referencing police personnel. (Affidavit

of Karen DePaepe at ¶ 5.)

      6.     The phone line for the Captain of the Records Bureau was added as a recorded

line in 1999. (Affidavit of Karen DePaepe at ¶ 6.)

      7.     Around 2003, Thomas Fautz became the South Bend Police Department's Chief

of Police. Police Chief Fautz directed Karen to add the above-stated lines to be recorded and

added the following lines to be recorded: The private line in the office of the Chief of Police, the

phone line assigned to the Uniform Division Chief, and the phone line assigned to the Detective

Bureau Chief. The reason again was to preserve information that was coming in through

anonymous tips as well as to preserve information received from the public to insure that any

complaints be made or handled correctly. (Affidavit of Karen DePaepe at ¶ 7.)

      8.     In approximately 2006, Chief Fautz directed Karen to add the incoming lines of

the Records Bureau to be recorded because of complaints by the public that they were getting

incorrect information regarding vehicular impounds. (Affidavit of Karen DePaepe at ¶ 8.)

      9.     In 2007, when Chief Darryl Boykins was appointed Chief of Police, the same

phone lines being recorded under Chief Fautz continued to be recorded. (Affidavit of Karen

DePaepe at ¶ 9, 10.)

      10.    As part of Karen's normal procedures, she advised Chief Boykins that the above-

stated lines were currently being recorded on a 24-hour basis. From the time Chief Boykins

assumed command to the date that Karen was terminated from the police department, there were no additions or deletions of the lines that were being recorded by the Dynamic Instrument Reliant recording system. (Affidavit of Karen DePaepe at ¶ 11.)

11.     Any telephone line that was designated as a recorded line was recorded continually, 24 hours a day, seven days a week. (Affidavit of Karen DePaepe at ¶ 12.)

12.     At no time during her tenure as Director of Communications was Karen ordered to place a particular individual's phone line on the recording system. The phone lines placed on the recording system were the lines assigned to a particular office and once placed on the recording system, all calls placed on that particular phone line were recorded regardless of the individuals who were assigned to that office. (Affidavit of Karen DePaepe at ¶ 13.)

13.     During Karen's time as Director of Communications, she was routinely requested by police officers, City attorneys, and outside law enforcement agencies to listen and look for certain recorded conversations that were recorded by the system for a wide variety of reasons, including criminal investigations, internal affairs investigations, citizen complaints regarding police personnel, as well as Freedom of Information Act requests. At no time were the recording practices questioned by anyone. (Affidavit of Karen DePaepe at ¶ 14.)

14.     At no time while he was Chief of Police did Chief Boykins order Karen to listen to phone conversations that were recorded. (Boykins dep., attached as Exhibit "B," p. 58, ll. 5-12.)

15.     From October 2010 to January 2011, the Dynamic Instrument Reliant Recording System began to have multiple DVD drive failures. It was discovered that some of the audio recordings were lost due to the system failures. As part of Karen's duties as Director of Communications, she was required to maintain the system. As part of those requirements, Karen

9

had to check the entire recording system after the final replacement of the DVD drive in January 2011. (Affidavit of Karen DePaepe at ¶ 15.)

16.     It was during the period in January 2011 when Karen was checking to see if the system was operating after numerous repairs that she discovered the first of the conversations which was subsequently recorded and given to Chief Boykins. (Affidavit of Karen DePaepe at ¶ 16.)

17.     In July 2011, the City attorney, Aladean DeRose, in response to a Freedom of Information Act request, advised one of the requestors, Nancy Bruce of ABC 57, to contact Karen at her office and that Karen was to cooperate with her in locating any recordings of telephone conversations concerning the request. Pursuant to the request from the City attorney, Karen began to look for the recordings that Nancy Bruce insisted existed. Karen checked all telephone lines looking for anything related to the information requested by the Freedom of Information Act request. It was during this search of the phone lines that Karen located additional conversations which she subsequently reported to Chief Boykins and which are the subject of the lawsuit. (Affidavit of Karen DePaepe at ¶ 17.)

18.     On December 30, 2011, Chief Boykins requested Karen to make copies of the recorded conversations that she had earlier advised him of, indicating that he might need to discuss them with the mayor. (Affidavit of Karen DePaepe at ¶ 18.)

19.     On January 6, 2012, Karen provided Chief Boykins with five cassette tapes containing nine recorded telephone conversations and one recorded voice mail. Karen also provided Chief Boykins with a document entitled "Tape 1, Tape 2, Tape 3, Tape 4, and Tape 5." The document had a short synopsis explaining each recording with the time, date, how many seconds of audio traffic and a brief narrative of what was discussed. The document was not an

actual transcript, but would provide Chief Boykins with enough information to determine if he wanted to discuss these individual recordings with the mayor. (Affidavit of Karen DePaepe at ¶ 19.)

20.     Karen informed Chief Boykins that she listened to some conversations because there was a malfunction in the system. (Boykins dep., p. 57, l. 17 – p. 58, l. 4, p. 58, ll. 13-16.)

21.     Karen DePaepe had the responsibility for maintaining the recording system. (Dep. of Thomas Fautz, attached as Exhibit "C," p. 8, ll. 16-18.).)

22.     Any adding or deleting recorded lines would have to be done through Karen and the Chief of Police would have the authority to approve or authorize the changes. (Dep. of Thomas Fautz, p. 8, l. 24 – p. 9, l. 11.)

23.     If Karen, as the Director of Communications, was listening to tapes within the scope of her employment and heard something that she believed was related to illegal conduct, it would be within the course and scope of her employment to inform someone higher up in the chain of command. (Dep. of Thomas Fautz, p. 64, ll. 6-16.)

24.     It would also be within the scope of the Director of Communications' employment to inform someone higher in the chain of command if she heard information regarding unethical conduct. (Dep. of Thomas Fautz, p. 64, ll. 17-20.)

25.     Chief Fautz testified that the purpose of the recording system was to document complaints and to use as a tool as a legitimate business purpose. (Dep. of Thomas Fautz, p. 20, ll. 19-22.)

26.     In Chief Fautz's opinion, the recording of lines into a police station is something that is ordinarily done by other police stations around the country. According to Chief Fautz, recording lines is just a good business practice and is common practice. In the South Bend Police

Department, recording telephone lines was to document complaints from the public and to be transparent with the public. (Dep. of Thomas Fautz, p. 20, l. 19 – p. 22, l. 25.)

27.      Under Chief Fautz, the recording system was never used to intimidate, embarrass or harass anyone, but rather, was used as a tool to gather evidence and to serve as a tool for the individuals who had their lines taped to either defend themselves or document what had taken place. (Dep. of Thomas Fautz, p. 20, ll. 4-18.)

28.      When Chief Boykins assumed command, he continued recording the same lines as had been recorded under Chief Fautz. (Boykins dep., p. 98, ll. 15-18.)

29.      In making the decision to record the same lines, Chief Boykins assumed that Chief Fautz had the system recording lines for legitimate business purposes of the South Bend Police Department. (Boykins dep., p. 98, ll. 19-23.)

30.      The same phone lines that were recorded under Chief Fautz continued to be recorded under Chief Boykins with no changes during Chief Boykins' entire time as Chief. (Boykins dep., p. 98, l. 24 – p. 99, l. 4.)

## ARGUMENT

The issue before this Court with respect to the South Bend Common Council originated when the Common Council issued a subpoena to the City for production of the recordings pursuant to Ind.Code 36-4-6-21. That statute gives the legislative body of a city the authority to issue subpoenas  to aid in its investigations of certain matters.  The same statute also gives the circuit court in the appropriate county jurisdiction to compel compliance with a subpoena lawfully issued by a legislative body. This statute provides:

**Investigative Powers of Legislative Body.**

(a)      The legislative body may investigate:

      (1)     The departments, officers, and employees of the city;

      (2)     Any charges against a department, officer, or employee of the city; and

      (3)     The affairs of a person with whom the city has entered or is about to enter into a contract.

(b)     When conducting an investigation under this section, the legislative body:

      (1)     Is entitled to access to all records pertaining to the investigation; and

      (2)     May compel the attendance of witnesses and the production of evidence by subpoena and attachment served and executed in the county in which the city is located.

(c)     If a person refuses to testify or produce evidence at an investigation conducted under this section, a legislative body may order its clerk to immediately present to the circuit court of the county a written report of the facts relating to the refusal. The court shall hear all questions relating to the refusal to testify or produce evidence, and shall also hear any new evidence not included in the clerk's report. If the court finds that the testimony or evidence sought shall be given or produced, it shall order the person to testify or produce the evidence.

As noted previously, instead of complying, or objecting to the lawfully-issued subpoena, the City of South Bend filed this federal declaratory-judgment action. Paragraph 18 of the complaint summarizes the City's position as follows:

Accordingly, the Council's use of its statutory authority to issue the subpoena under state law demanding the disclosure of the recordings places the City and Mayor Buttigieg in the untenable position of either withholding the recordings despite issuance of the subpoena or disclosing the recordings and risking potential civil and criminal liability for violating the Federal Wiretap Act and the privacy rights of the people whose conversations were recorded.

The issue in the present case is whether the recordings are excluded from Title III of the Omnibus Crime Control and Safe Streets Act of 1968 (the "Wiretap Act"). The purpose of the Wiretap Act is "to prohibit…all interceptions of oral and wire communications, except those specifically provided for in the Act." *United States v. Giordano*, 416 U.S. 505, 514 (1974). In that regard, the Wiretap Act provides that:

> (1) Except as otherwise specifically provided in this chapter any person who—
>
> (b) intentionally uses, endeavors to use, or procures any other person to use or endeavor to use any *electronic, mechanical, or other device* to intercept any oral communication when—
>
>> (i) such device is affixed to, or otherwise transmits a signal through, a wire, cable, or other like connection used in wire communication; or
>>
>> (ii) such device transmits communications by radio, or interferes with the transmission of such communication; or
>>
>> (iii) such person knows, or has reason to know, that such device or any component thereof has been sent through the mail or transported in interstate or foreign commerce; or
>>
>> (iv) such use or endeavor to use (A) takes place on the premises of any business or other commercial establishment the operations of which affect interstate or foreign commerce; or (B) obtains or is for the purpose of obtaining information relating to the operations of any business or other commercial establishment the operations of which affect interstate or foreign commerce; or
>>
>> (v) such person acts in the District of Columbia, the Commonwealth of Puerto Rico, or any territory or possession of the United States
>
> shall be punished as provided in subsection (4) or shall be subject to suit as provided in subsection (5).

18 U.S.C. § 2511(1)(b) (emphasis added).

14

The phrase "*electronic, mechanical, or other device*" as used in 18 U.S.C. § 2511(1)(b) is defined in 18 U.S.C. § 2510, which states:

> (5) "*electronic, mechanical, or other device*" means any device or apparatus which can be used to intercept a wire, oral, or electronic communication other than (a) any telephone or telegraph instrument, equipment or facility, or any component thereof…(ii) being used…*by an investigative or law enforcement officer in the ordinary course of his duties*.

18 U.S.C. § 2510(5)(a)(ii) (emphasis added).

Thus, 18 U.S.C. § 2510(5)(a)(ii) (referred to herein as the "Ordinary Course Exclusion") constitutes a "statutory exclusion of eavesdropping 'by an investigative or law enforcement officer in the ordinary course of his duties.'" *Amati v. City of Woodstock*, 176 F.3d 952, 954 (7th Cir. 1999). In *Amati*, the leading case on the Ordinary Course Exclusion, the Seventh Circuit examined the exclusion to the Wiretap Act. In that case, sixty-three employees and former employees of the Woodstock police department ("plaintiffs") filed suit under the Wiretap Act against the former police chief and other former members of the Woodstock police department ("defendants"). *Id*. The plaintiffs complained about the taping of one of the department's telephone lines…between February and October of 1992. *Id*. A jury trial resulted in a verdict for the defendants. *Id*. On appeal, the plaintiffs argued that the Ordinary Course Exclusion did not apply. 176 F.3d at 955. The Seventh Circuit squarely rejected this argument.

Specifically, in affirming the judgment in favor of the defendants, the *Amati* Court found that "[i]nvestigation is within the ordinary course of law enforcement." *Id*. In that regard, Judge Posner, writing for the Court, provided the following explanation of the term "*ordinary*" in the context of the Ordinary Course Exclusion:

> '[O]rdinary'…is more reasonably interpreted to refer to routine noninvestigative recording of telephone conversations…Such recording will rarely be very invasive of privacy, and for a reason

15

that does after all bring the ordinary-course exclusion rather close to the consent exclusion: what is ordinary is apt to be known; it imports implicit notice. *To record all calls to and from a police department is…a routine police practice. If 'ordinary course' of law enforcement includes anything, it includes that. The sparsity of case law on the question suggests not that the principle is dubious but that it is too obvious to have incited many challenges.*

What would not be routine would be if the police, in order to trick people into making damaging admissions over the phone, announced that calls to and from the police department were not being recorded, and then recorded them anyway…The boundary is between routine noninvestigative uses of electronic eavesdropping and its use either as a tool of investigation (which requires a warrant) or as a device for intimidation, suppression of criticism, blackmail, embarrassment, or other improper purposes.

176 F.3d at 955-56 (emphasis added) (internal citations omitted).

The Court concluded that "[t]he invasion of privacy was regrettable, but if all Congress had cared about was the protection of privacy it would not have written an exception for electronic eavesdropping in the ordinary course of law enforcement into the statute." 176 F.3d at 956. *See also United States v. Lewis*, 406 F.3d 11, 19 (1st Cir. 2005) (citing *Amati* in support of its holding that "a recording made pursuant to a routine prison practice of monitoring all outgoing inmate calls under a documented policy of which inmates are informed does not constitute an interception [under the Wiretap Act]."); *United States v. Paul*, 614 F.2d 115, 117 (6th Cir. 1980) (holding that "the monitoring took place within the ordinary course of the Correctional Officers' duties and was thus permissible under 18 U.S.C. § 2510(5)(a)" where the monitoring took place within the ordinary course of officer's duties; the monitoring took place in prison; and the prison inmates had reasonable notice that monitoring of conversations might occur).

The Seventh Circuit has not revisited the Ordinary Course Exclusion in depth in any published opinion since rendering its decision in *Amati*, although it has issued at least one order

16

addressing the issue. As stated by the Court in *Amati*, "The sparsity of case law on the question suggests not that the principle is dubious but that it is too obvious to have incited many challenges. 176 F.3d at 956. However, in a recent analogous case, the First Circuit, following the rationale set forth in *Amati*, held that "other circuits' precedents in a line of cases under [the Wiretap Act] would have led reasonable officials to conclude that recording all calls into and out of a police station was neither illegal nor unconstitutional." *Walden v. City of Providence*, 596 F.3d 38, 54 (1st Cir. 2010). In *Walden*, former employees of the police and fire departments of the City of Providence sued the city and several city employees in their personal capacities after learning that an automatic recording system at the city's public safety complex recorded all telephone calls into and out of the complex. 596 F.2d at 43. On appeal, the issue was whether two individual defendants were entitled to qualified immunity. 596 F.3d at 52. After summarizing *Amati*, the First Circuit noted that:

> Other courts had also taken the view before 2002 that 'the routine and almost universal recording of phone lines by police departments . . . as well as other law enforcement institutions is exempt from the [federal wiretap statute]' and the practice of 'routinely and indiscriminately record[ing] all phone activity in and out of the police department' is 'well known in the industry and in the general public.'

596 F.3d at 55 (internal citations omitted). Accordingly, the Court held that "the individual defendants are entitled to judgment on the basis of qualified immunity." *Id*. at 55.

Although *Amati* involved a jury verdict, courts have held that the issue of "whether the tape recording of a personal telephone call placed by an on duty police officer on regularly recorded police lines violates [the Wiretap Act]" may be properly disposed of on summary judgment. *Jandak v. Brookfield*, 520 F. Supp. 815, 817 (N.D. Ill. 1981). *See also Walden*, 596 F.3d at 55 (describing the application of the Ordinary Course Exclusion as "*an issue of law* on

which the district court erred") (emphasis added). In *Jandak*, Fred Jandak ("Fred") found out his

wife, Susan ("Susan"), was having an affair with Officer Thomas J. Capaccio of the Brookfield

Police Department ("Department"). 520 F.Supp. at 817. Fred informed the police chief of the

affair, and subsequently, the police chief initiated an investigation into the situation. *Id*. During

the course of this investigation, the police chief listened to a telephone conversation between

Officer Capaccio and Susan that had been recorded by the department's telephone recording

system. 520 F.Supp. at 818. Eventually, Susan filed a lawsuit against the police department

alleging violations of the Wiretap Act. *Id*. The Department filed a motion for summary judgment

in which it argued the recording of the phone call between Officer Capaccio and Susan was not

subject to the Wiretap Act by virtue of the Ordinary Course Exclusion. 520 F.Supp. at 821.

     In granting the Department's motion for summary judgment, the court cited the Ordinary

Course Exclusion and explained that:

> The recording in this case would not constitute an interception, and
> so would not violate the statute, if it was done through the use of a
> telephone instrument, equipment or facility, or any component
> thereof, and if the equipment was being used by a law enforcement
> officer in the ordinary course of his duties.

*Id*. Based on this language, the court concluded, as a matter of law, that the equipment used by

the police chief to listen to the telephone conversation between Officer Capaccio and Susan fell

within the Ordinary Course Exclusion. 520 F.Supp. at 824. The court reasoned that the

equipment was installed to improve police emergency and investigative services. *Id*. The court

further noted that the police chief listened to the call for a proper law enforcement purpose,

which was to ensure police regulations were being followed. *Id*. Accordingly, the court granted

the Department's motion for summary judgment and held that:

> [R]outine, nonsurreptitious, recording of a police investigative line
> which results in the recording of a conversation of an officer

> misusing the line for private purposes, where the officer should
> have known that the line was monitored, was in the ordinary
> course of the police chief's duties as a law enforcement officer, and
> is exempted from the [Wiretap Act] by [the Ordinary Course
> Exclusion].

*Id*. at 825.

Just like the defendants in *Amati*, *Walden*, and *Jandak*, the South Bend Police Department was engaged in the routine non-investigative recording of telephone conversations. The lines were recorded 24 hours a day, seven days a week. The lines were recorded in the ordinary business of the South Bend Police Department to document the calls for a legitimate business purpose of documenting complaints against the police department or recording information from anonymous tips. Such recordings are common place among the police departments nationwide and, as the Seventh Circuit noted in *Amati*, is well known and well established. The phone lines were not recorded in order to trick people in making damaging admissions over the phone or as a device for intimidation, suppression of criticism, blackmail, embarrassment or other improper motives.

Furthermore, the recordings were listened to by the Director of Communications within the ordinary course and scope of her employment in maintaining the phone lines and in responding to Freedom of Information Act requests. The subject of the recordings was disclosed to Chief Boykins by the Director of Communications in the ordinary course and scope of her employment in learning of possible illegal or unethical conduct. There is nothing about the recordings, or the disclosure thereof, outside of the ordinary course exclusion.

The fact that any individual police officer may or may not have had notice that the phone lines were being recorded is irrelevant to the determination that the recordings were not barred by the Wiretap Act. This argument was made by the unsuccessful plaintiffs in *Amati*. Specifi-

cally, in *Amati*, the plaintiffs argued that "wiretapping cannot be 'in the ordinary course of law enforcement' unless there is express notice to the people whose conversations are being listened to." 176 F.3d at 955. In rejecting this argument, the Court explained that "there is a separate statutory exclusion for cases in which one party to the communication has consented to the interception." *See Id*. (citing 18 U.S.C. § 2511(2)(c)). As such, the Court concluded that "if the 'ordinary course' exclusion required proof of notice, it would have no function in the statute" in light of the distinct exclusion contained in 18 U.S.C. § 2511(2)(c). *Id. See also Jandak v. Brookfield*, 520 F. Supp. 815, 824-25 (N.D. Ill. 1981) (holding that regardless of whether there was actual notice, there was sufficient notice under the circumstances because the recording "was not surreptitious; rather, it was routine monitoring of all calls on the investigative line, with more than adequate opportunity for [the recorded party] to know of the monitoring").

**The Court Should Enter Final Judgment Pursuant To Rule 54(b).**

The Common Council requests the Court to make the summary judgment declaring that the recordings are excluded from the Wiretap Act a final judgment pursuant to Rule 54(b). There is no reason for delay in entering final judgment in favor of the Common Council on the City's Complaint for Declaratory Judgment because that is the only issue in the case that involves the Common Council. It would be prejudicial to the Common Council to force it to continue to be involved in the consolidated case involving issues between the individual parties and the City. The Common Council would be subjected to a substantial waste of time and money in further participation in the lawsuit. Additionally, the Common Council will be prejudiced by any additional delay. As noted previously, the Common Council's involvement with the City originated with the Common Council seeking production of the recordings in order to conduct an investigation authorized under Indiana statute. That investigation has already been delayed for a

year and a half. If final judgment is not entered in favor of the Common Council, there is no

telling how long the Common Council will be delayed before beginning its investigation. For

these reasons, the Common Council requests the Court to find that there is no just reason for

delay and to direct the clerk to enter a final appealable judgment in favor of the Common

Council and against the City of South Bend on the City's Complaint for Declaratory Judgment,

declaring that the recordings are excluded from the Federal Wiretap Act.

## <u>CONCLUSION</u>

For the foregoing reasons, the South Bend Common Council submits that there is no

genuine issue of material fact and that the undisputed material facts establish that the recordings

of the phone lines of the South Bend Police Department are not illegal or barred by the Federal

Wiretap Act. The Court should therefore enter judgment on the City of South Bend's Complaint

for Declaratory Judgment declaring that the recordings at issue are exclude from the Federal

Wiretap Act pursuant to 18 U.S.C. 2010(5)(a)(ii).


/s/Robert J. Palmer
E. Spencer Walton, Jr. (1000-71)
Robert J. Palmer (6316-71)
Attorneys for South Bend Common Council

**MAY • OBERFELL • LORBER**
4100 Edison Lakes Parkway, Suite 100
Mishawaka, IN  46545
Phone: (574) 243-4100
Fax: (574) 232-9789
rpalmer@maylorber.com

## <u>CERTIFICATE OF SERVICE</u>

I certify that a copy of the forgoing was served upon all attorneys of record via the

Court's ECF system on December 13, 2013.


/s/Robert J. Palmer
Robert J. Palmer

F:\Clients\S1060\12001\Pleadings - Fed Ct\2013-12-13 Memo in Support of MSJ on City of South Bend's complaint for Declaratory Judgment.docx12/13/2013