UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
SOUTH BEND DIVISION

| | | |
|---|---|---|
| CITY OF SOUTH BEND, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Cause No. 3:12-cv-475-JVB-CAM |
| | ) | |
| HOLDER, *et al.,* | ) | |
| | ) | |
| Defendants. | ) | |

### DEFENDANT DePAEPE AND DUERRING'S BRIEF IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT

### FACTS

The practice of recording incoming telephone lines to the South Bend Police Department dates back to at least 1995. As technology advanced so did the recording systems used by the Department.  The predecessor to the device that intercepted the complained of telephone conversations was installed by the South Bend Police Department, (hereinafter the Department) in and around 1998/1999.[1] The system was a Dynamics Instrument Reliant Recording System, which replaced a previous reel to reel recording system.[2] This system was subsequently upgraded to a Dynamic Instrument Reliant 48 channel recording system, (hereinafter recording system) in 2004 which was sold to the Department by Stephen Campbell & Assoc. Inc.[3] This upgraded system had the capacity to record forty eight separate channels, with each channel having the capacity to handle one individual phone line or one individual base station.[4] This is the system that was operating at the time of the complained of interceptions.

---

[1] DePaepe Affidavit pp.1-2, Downer Affidavit p.2
[2] DePaepe Affidavit pp.1-2
[3] Campbell Affidavit p.1
[4] Downer Affidavit p.2, Campbell Affidavit p.2

1

The procedure to place a particular telephone line on the recording system required that the line be hardwired into the recording system. A wire had to be run from a punch block location of the Department's phone system to the location of the recording system which was approximately 75 to 100 feet in distance.[5] If a phone line was not hardwired into the recording system the recording system would not record the conversations on that phone line.[6] The act of hardwiring a phone line into the system required substantial technical knowledge; in fact the procedure required the expertise of a trained technician.[7] Once a particular phone line was wired into the recording system the recording system would record everything it "heard" on that line at any time regardless of who was speaking on the line, the content of the conversation, or the time of day of the conversation. Anything so recorded would be stored on the recording system's hard drive and it would be downloaded after a time automatically to a disc for back up and storage purposes.[8] It was the Director of Communications responsibility to maintain the recording system and insure it was operating properly and as designed.[9]

The authority to direct that a phone line be placed on the recording system was vested in the Chief of Police.[10] From time to time and Chief to Chief, DePaepe would be directed to place one or more lines on the recording system[11]. The reasons given to DePaepe were so that the recording system would preserve any information received from anonymous sources; in addition the recording system would preserve information received from the public regarding complaints about police personnel.[12] The last Chief of Police who directed DePaepe to place a telephone line

---

[5] Downer Affidavit p.2, Campbell Affidavit p.1
[6] Downer Affidavit p.2
[7] Downer Affidavit p.2, Campbell Affidavit p.1
[8] Downer Affidavit p.2, DePaepe Affidavit p. 3, Campbell Affidavit p.2
[9] DePaepe Affidavit p.3, Boykins Affidavit p.1, Scott Deposition p. 28
[10] Holleman Deposition p. 14, Fautz Deposition p. 9
[11] DePaepe Affidavit pp.1,2,3
[12] DePaepe Affidavit p.2, Fautz Deposition p. 15, 16

on the recording system was Thomas Fautz.[13] One of the lines that Fautz directed DePaepe to have wired into the recording system was the phone line that is now the subject of this action.[14] Fautz specifically told DePaepe when he directed her to place these lines on the recording system that the reason was to preserve and document citizen complaints and the Department's response to those complaints.[15] While apparently not the Department's entire incoming phone lines were recorded a significant number of phone lines were wired into the recording system at the time Darryl Boykins was appointed Chief of Police.[16] After Fautz stepped down as Chief of Police and Boykins replaced him in 2007, no additions or deletions of the phone lines that were being recorded under Fautz's administration occurred.[17]

During DePaepe's tenure as Director of Communications she was never ordered to place a particular individual's phone line on the recording system. The phone lines placed on the recording system were assigned to a particular office and once placed on the recording system, all calls placed on that phone were recorded regardless of the individuals who were assigned to that office.

During DePaepe's tenure as Director of Communications she was routinely requested by the Department's police officers, South Bend City Attorneys, and outside law enforcement agencies to listen and to look for certain recorded conversations that were recorded by the recording system for a wide variety of reasons, including criminal investigations, internal affairs investigations, citizen complaints regarding Department personnel, as well as FOIA[18] requests[19]. In and around October 2010 to January 2011, the recording system began to have multiple DVD

---

[13] DePaepe Affidavit pp.2,3, Boykins Affidavit p.1,2
[14] DePaepe Affidavit p.2
[15] DePaepe Affidavit p.2 , Fautz Deposition p.15, 16
[16] See Exhibit A of the DePaepe Affidavit.
[17] DePaepe Affidavit p.3
[18] Freedom of Information Act.
[19] DePaepe Affidavit p.3

drive failures. As a result of these malfunctions audio recordings were lost and the system was not operating as designed. In furtherance of her duties to properly maintain the recording system, DePaepe had to check the entire recording system after the final replacement of a DVD drive in January 2011.[20] In order to properly check if the recording system was operating as designed DePaepe was required to access each individual recorded line and listen to various portions of the recorded conversations on those lines to insure that particular phone line was being recorded correctly and data was being preserved.[21] It was while DePaepe was performing this duty that she discovered some of the recorded conversations that are the subject of this action.[22]

In July 2011, while responding to a directive from the City Attorney pursuant to a FOIA request DePaepe was required to look for telephone recordings that might satisfy the FOIA request. While looking for such recordings DePaepe located some additional recorded conversations that she subsequently reported to Chief of Police Darryl Boykins and which are the subject of this action.[23] A total of nine recorded telephone conversations and one recorded voicemail were re-recorded and given to Boykins by DePaepe.[24]

## SUMMARY OF ARGUMENT

The South Bend Police Department's recording of incoming telephone lines fit squarely within the law enforcement exception as delineated by the Wiretap Act. (Title III). The recording system was used by the Department in the ordinary course of its investigative duties. The recording system recorded all calls on any line that was wired into it. The recording system was not selective as to who was involved in the conversation, the content of the conversation or the time of the conversation. Every phone line wired into the recording system was done so to

---

[20] DePaepe Affidavit p.3,4
[21] Scott Deposition p.28,33,34,40
[22] DePaepe Affidavit p.4 Scott Deposition p.40
[23] DePaepe Affidavit p.4
[24] Id.

further the Department's ability to function efficiently and effectively. Phone lines were not being recorded to secretly spy on any particular officer or individual, nor was the reason to record a line base upon a desire to embarrass or blackmail any person. The specific reason to place the complained of telephone line on the recording system was to preserve and record complaints by the public and how the Department was responding to such complaints. This reason falls well with the "ordinary course of law enforcement duties" exception to Title III. Since the interception of the telephone conversations by the Department's recording system did not violate Title III, any disclosure of such conversations did not violate Title III. DePaepes listening to and subsequent disclosure of several recorded phone conversations intercepted by the Department's recording system did not violate Title III.

## ARGUMENT

This case comes before the court on a motion for summary judgment. On a motion for summary judgment the underlying facts "must be viewed in the light most favorable to the party opposing the motion". *United States v. Diebold, Inc.,* 369 U.S. 654,655 (1962). The moving party bears the initial burden of demonstrating the absence of evidence in support of the nonmoving party's claims. *Celotex Corp. v. Catret,* 477 U.S. 317,325 (1986).

Once the moving party has sustained this burden, the nonmoving party must come forward with sufficient evidence to establish a genuine issue of material fact. The nonmoving party, however, "is required to do more than simply show that there is some 'metaphysical doubt as to the material facts.'". *Pierce v. Commonwealth Life Ins. Co.,* 40 F.3rd 796,800 (6th Cir. 1994). "There must be evidence on which the jury could reasonably find for the nonmoving party". *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242,252 (1986).

The present Federal Wiretap Act has its origin in Title III of the Omnibus Crime Control and Safe Streets Act of 1968.  This precursor to the present Wiretap Act was enacted shortly after the United States Supreme Court's decision in, *Katz v. United States*, 389 U.S. 347 (1967), which extended Fourth Amendment protection against non-concessional government interceptions of private telephone conversations.

In 1986, Congress enacted the Electronic Communications Privacy Act, Pub.L. No. 99-508, 100 Stat. 1848 (ECPA).  The purpose of enacting the ECPA was to update and clarify federal privacy protections in light of the changes in new computer and telecommunications technology.  *Fraser v. Nationwide,* 135 F. Supp. 2d 623 (E.D.P.A. 2001).  The ECPA amended the original Wiretap Act in several important respects and created a new statute, the Stored Communications Act.  Generally, the amended Wiretap Act prohibits the unauthorized "interception" of oral, wire and electronic communications, while the Stored Communications Act prohibits unauthorized "access" to wire and electronic communications in temporary and backup storage.

The Wiretap Act protects the privacy of three types of communications which are statutorily defined as "oral communications", "wire communications", and "electronic communications".  *18 U.S.C. §2510.*  The Stored Communications Act provides some additional protection to wire and electronic communications in "electronic storage".  *18 U.S.C. §2701(a)* and *18 U.S.C. §2510(15).*  In the case at bar, the Plaintiffs have alleged that the act of wiretapping involved listening to recordings of telephone conversations.  As such, that would fall under the definition of "wire communication".  A "wire communication" is defined by *18 U.S.C. §2510(1)* as;

> Any aural transfer made in whole or in part through the use of facilities for
> the transmission of communications by the aid of wire, cable, or other like

> connection between the point of origin and the point of reception
> (including the use of such connection in a switching station) furnished or
> operated by any person engaged in providing or operating such facilities
> for the transmission of interstate or foreign communications or
> communications affecting interstate or foreign commerce and such term
> includes any electronic storage of such communication.

This definition includes all telephone conversations including cordless and wireless phone conversations which are now clearly within the definition of "wire communications." *Bartnicki v. Vopper,* 121 S.Ct. 1753, 1759 (2001).

The Wiretap Act prohibits, in certain circumstances, and permits in other circumstances, the interception, use and disclosure of protected communications. Particularly, *18 U.S.C. §2511(1)* provides that, except as authorized by the Wiretap Act itself no person may intentionally:

> Intercept, endeavor to intercept, procure any other person to intercept, any
> wire, oral or electronic communications, *§2511(1)(a),* or

> To use, or endeavors to use, the contents of any wire, oral or electronic
> communication knowing or having reasons to know that the information
> was obtained through the interception in violation of the act §2511(1)(d);

> Disclosed to any person the contents of any wire, oral, or electronic
> communication, knowing or having reasons to know that the information
> was obtained through the interception in violation of the act. *§2511(1)(c)*

The Act defines "interception" as the acquisition of the contents of any wire, electronic or oral communications through the use of any electronic, mechanical, or other device. *18 U.S.C. §2510(4).* As such, no interception can take place unless it is accomplished by an electronic, mechanical or other device, which is defined as:

> [A]ny device or apparatus which can be used to intercept a wire, oral, or
> electronic communication other than –
>
> (a) Any telephone or telegraph instrument, equipment or facility, or any
>     component thereof,
>     (i)  furnished to the subscriber or user by a provider of wire or

electronic communication service in the ordinary course of its business and being used by the subscriber or user in the ordinary course of its business or furnished by such subscriber or user for connection to the facilities of such service and used in the ordinary course of its business; or
(ii) be used by a provider of a wire or electronic communication service in the ordinary course of its business, or by an investigative or law enforcement officer in the ordinary course of his duties;
(b) a hearing aid or similar device being used to correct subnormal hearing to not better than normal. *18 U.S.C. §2510(5).*

The Wiretap Act prohibits the "use" of disclosed "the contents of any wire, oral or communications" "by any person", "knowing or having reasons to know that the information was obtained through interception in violation of the [wiretap] Act".   18 U.S.C. §2511(1)(d).

Under this statute, a person who "uses" the "contents of an illegally intercepted communication may be prosecuted for a federal crime and may also be held liable for civil damages.  It is important to emphasize that a "user"[25] is not liable under the Wiretap Act unless he or she knows or has reason to know that the interception was illegal.  *McCann v. Iroquois Memorial Hospital* 622 F. 3rd 745 (7th Cir.  2010), *Nix v. O'Malley,* 160 F. 3rd 343 (6th Cir. 1998). As such, in a civil action, a plaintiff must demonstrate (1) the information used or disclosed came from an intercepted communication, and (2) sufficient facts concerning the circumstances of the interception such as the defendant could with presumed knowledge of the law determine that the interception was prohibited in light of the Wiretap Act.  At least one court has commented on the type of evidence that may be needed in order to show or infer that the defendant should have known that the interception was in violation of the Act.  The court in, *Thompson v. Dulaney*, F. Supp. 1535 (D. Utah 1993), stated "this will often require the plaintiff to prove that the defendant had notice that neither party consented to the wiretap, since consent would negate the requirement that the party had knowledge that the wiretap was in the illegal one." *Id*. At 1541

---

[25] At best this is what DePaepe would be described as since all of the conversations she listened to and disclosed to Chief Boykins were ones that had already been intercepted by the recording system being used by the Department.

through 1542.  As such, the law would require that in order to establish the "knowing"

requirement the plaintiffs would have to show that DePaepe would not reasonably have believed

that the recorded conversations fell within any recognized exception of the Wiretap Act.

Disclosing the contents of an illegally intercepted communication to another person is

also prohibited.  *18 U.S.C. §2511(1)(c)*.  *Rogers v. Wood*, 910 F. 2nd 444 (7th Cir. 1990).  As with

the prohibition on "use," the prohibition on "disclosure" applies only to persons who know or

should know the taped communication was illegally intercepted.  There are myriad of exceptions

and restricted definitions that were inserted by Congress into the Wiretap Act purposely leaving

certain wire communications unprotected.  *Griggs – Ryan v. Smith,* 904 F. 2nd 112, 116 (1st Cir.

1990).

Probably the largest exception is for one party consent section, *18 U.S.C. §2511(2)(d)*:

"It shall not be unlawful under this chapter for a person to intercept a wire, oral, or electronic

communication where such party is a party to the communication over one of the party the

communication is given prior consent to such interception unless such communication is

intercepted for the purpose of committing any criminal or tortuous act".

If a coveted communication is "intercepted" and such interception is not in violation of

the Wiretap Act, the Wiretap Act does not restrict use or disclosure.  *In re: High Fructose Corn

Syrup Antitrust Litigation,* 216 F. 3rd 621, 624 (7th Cir. 2000).  Holding "if by virtue of sections

2511(2)(c) or (d) an interception is not prohibited by Title III, there are no Title III restrictions on

its use."  As such, even if a person would eventually use such a communication in furtherance of

a tort or a crime, that use would not violate the Wiretap Act.  The other significant exception

important to the case at bar is that the act contains a number of very detailed exceptions which

permit law enforcement officers to make and use non-consensual in a variety of circumstances.

The Stored Communications Act has the same "definitional exception" to the Wiretap Act because both statute use the same statutorily defined terms.  18 U.S.C. §2711(1).

As noted above, an exception to the Wiretap Act is known as the "law enforcement exception". This exception is found in *18 U.S.C. §2510(5)(a)(ii)*. This exception focuses on the equipment and why it is being employed to intercept conversations, not on the persons involved in the conversation. This is an important distinction and one of which specifically applies to the case at bar. In, *Abraham v. County of Greenville,* 237 F.2d 386 (4th Cir. 2001) the court stated: "…the law enforcement exception specifically focuses on whether the device is *being used*…by an investigative or law enforcement officer in the ordinary course of his duties. *18 U.S.C. §2510(5)(a)(ii)*(emphasis added)." *Id.* at 390. In, *Abraham,* the County of Greenville had installed a recording system during the construction of a facility which housed a detention center, law enforcement offices as well as courtrooms and associated chambers for city and county judges. The recording system recorded not only the phones going into the detention center and law enforcement offices but also the phones going to the judges. The court found that while the recording of phones at the detention center and law enforcement offices fell within the law enforcement exception, the court specifically found that the recording of the judges' phones did not. The court stated: "Rather, we hold simply that the County's recording of the judges was not a legitimate surveillance activity because it did not occur in the ordinary course of the County's law enforcement duties." *Id.* at 391.  It is critical to note that the court focused on the *County's use* of the device not on any particular person or event in its analysis. Therefore, the proper analysis under the law enforcement exception is to establish whether the entity that installed and configured the recording device did so in the ordinary course of that entity's law enforcement

duties. Put more directly, in the case at bar, the proper analysis to determine whether the device[26] installed by the South Bend Police Department to record telephone conversations was in the ordinary course of South Bend Police Department's law enforcement duties.

The court in, *Amati v. City of Woodstock,* 176 F.3rd 952 (7th Cir. 1999), dealt with the application of *18 U.S.C § 2510(5)(a)(ii).* In, *Amati,* the Woodstock police department began recording telephone calls on all of its incoming telephone lines except one. The department's personnel were advised per a memo that the unrecorded line was left intentionally untapped to allow for personal calls. The untapped line was used for both departmental business and personal calls. Apparently some time later a call was received on the untapped line that logged a complaint against the city. An investigation into how the department handled the complaint was frustrated because the line was not recorded. As such the department decided to add that line to the recording system. No notice went to the department's personnel that the previously untapped line was now being recorded. The taping was apparently discovered when one of the department's personnel had reviewed the tape[27] heard one of the plaintiffs making derogatory remarks about him and complained to the president of the local police union. *Id.* at 955. In bringing its action against the City, the plaintiffs argued that the law enforcement exception could not apply due to the fact that there was no notice given that the phone line was tapped. The court flatly rejected that argument. The court stated, "The statute does not say this, and it cannot be right. If there is actual notice, as in (citation omitted), there will normally be implied consent,(citations omitted). So if the "ordinary course" exclusion required proof of notice, it would have no function in the statue because there is a separate statutory exclusion for cases in which one party has consented to the interception." *Amati,* 176 F.3rd at 955.

---

[26] The Dynamic Instrument Reliant Recording System. (DePaepe Affidavit p.2.)
[27] No purpose was given for this review was given, nor was it apparently important to the court whether the person reviewing the recording was an officer or a civilian employee of the police department.

In, *United States v Donte Hammond,* 286 F.3rd 189 (4th Cir. 2002), the court also specifically delineated between the "consent" exception and the "law enforcement exception". In, *Hammond,* the court found that the recording of inmate phone calls not only fell within the law enforcement exception as set out in, *18 U.S.C. §2510(5)(a)(ii),* but since the facts showed that the inmates received actual notice in the form of multiple written warnings that calls are recorded, that the inmates consented to having their calls recorded pursuant to, *18 U.S.C.§2511(2)(c). Id.* at 192. Another important holding in, *Hammond,* was that once a recording was found to be excepted under *18 U.S.C. §2510(5)(a)(1)* that any use of those recorded conversations is exempted from the entirety of Title III. *Id.* at 193.

The court in *Amati,* supra, also helped define what an "investigation is within the ordinary course of law enforcement". *Amati,* 176 F.3rd at 955. The court held that "ordinarily" "is more reasonably interpreted to refer to routine noninvestigative recording of telephone conversations." *Id.* Importantly, the court defined that line between what is acceptable under the law enforcement exception and what is not. "The boundary is between the routine noninvestigative uses of electronic eavesdropping and its use as either a tool of investigation (which requires a warrant) or as a device for intimidation, suppression of criticism, blackmail, embarrassment, or other improper purposes." *Id.* at 956. Citing, *United States, v. Harpel,* 493 F.2d 346, 351-52 (10th Cir. 1974)[28].

In the case at bar, the recording system used by the Department, routinely recorded all calls placed on the phone lines connected to the system. As the lines were added to the system over the years and spanning several police chiefs, the reasoning for placing the lines clearly fell within the ordinary course of law enforcement. The purpose to have a line recorded was to

---

[28] See also, *Kelsey v. Sheehan,* 20 Fed. Appx. 538 (7th Cir. 2001), citing to *Amati,* supra, held that Federal law permits police stations to record calls on official lines, and that the legality of such recording do not depend on either the knowledge or consent of the participants of the conversation. *Id.* at 539.

preserve important information commonly used by police departments to evaluate citizen complaints and the department's response to such complaints, as well as to preserve possible information received that may constitute vital evidence or lead to the discovery of such evidence. Moreover, there is absolutely no evidence that the recording system used by the Department was being used as a device for intimidation, suppression of criticism, blackmail, embarrassment, or any other improper purpose. The recording procedure of the Department was not "person" specific so it could not be established that the recording of the phone lines was an attempt to target or secretly spy on any individual.

Since the interception of telephone conversations by the Department's recording system fall within the law enforcement exception under, *18 U.S.C. §2510(5)(a)(ii),* any subsequent use or disclosure of the recorded conversations is not prohibited by Title III. As such, DePaepe's listening to and reporting of the complained of conversations does not violate Title III.

## CONCLUSION

There is no genuine issue as to a material fact that would preclude the court from ruling on the issue of whether the Department's recording procedures violated Title III. The undisputed evidence establishes that the Department's recording procedures clearly fell within the law enforcement exception to the Wiretap Act. As such, the defendants' DePaepe and Duerring joint motion for summary judgment should be granted and the Plaintiff's claims pertaining to the allegations that such defendants violated the Wiretap Act should be dismissed.

Respectfully submitted,

*/s/Marielena Duerring*

Marielena Duerring #19835-71
Attorneys for Scott H. Duerring and Karen DePaepe
DUERRING LAW OFFICES
61191 US 31 South
South Bend, IN 46614
Phone: (574) 968-0250; Fax: (574) 968-1256
Email: attymduerring@aol.com

13

**CERTIFICATE OF SERVICE**

/s/ Thomas M. Dixon
Thomas M. Dixon, Esq. (18611-71)
Dixon, Wright & Associates, P.C.
55255 Birchwood Court
Osceola, IN  46561
(574) 315-6455
*Attorney for Darryl Boykins*

/s/ Daniel H. Pfeifer
Daniel H.Pfeifer (5720-71)
Jeffrey J. Stesiak (16876-46)
PFEIFER MORGAN & STESIAK
53600 N. Ironwood Drive
South Bend, IN  46635
(574) 272-2870
*Attorneys for Tim Corbett, Dave Wells, Steve Richmond, Brian Young and Sandy Young*

/s/ Jeffrey S. McQuary
Jeffrey S. McQuary (16791-49)
BROWN TOMPKINS LORY & MASTRIAN
608 East Market Street
Indianapolis, IN  46202
(317) 631-6866
*Attorney for Respondents, Tim Corbett, Steve Richmond, Dave Wells, Brian Young, and Sandy Young*

/s/ E. Spence Walton, Jr.
E. Spence Walton, Jr.
Christopher M. Lerner
Robert J. Palmer
May · Oberfell · Lorber
4100 Edison Lakes Parkway, Suite 100
Mishawaka, IN  46545
(574) 243-4100
*Attorneys for South Bend Common Council*

/s/ Aladean DeRose
Aladean DeRose (4495-71)
City Attorney, South Bend, Indiana
227 W. Jefferson Blvd., Suite 1400
South Bend, IN  46601
(574) 235-9241
*Attorney for City of South Bend*

/s/ Ryan G. Milligan
Ryan G. Milligan (28691-71)
FAEGRE BAKER DANIELS, LLP
202 South Michigan Street, Suite 1400
South Bend, Indiana 46601
(574) 234-4149
*Attorney for City of South Bend*

14