UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
SOUTH BEND DIVISION

| | |
|---|---|
| CITY OF SOUTH BEND, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Cause No. 3:12-cv-475 |
| ) | |
| SOUTH BEND COMMON COUNCIL, ) | |
| *ET AL.,* ) | |
| ) | |
| Defendants. ) | |

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

| | |
|---|---|
| BRIAN YOUNG, SANDY YOUNG ) | |
| TIMOTHY CORBETT, DAVID WELLS, ) | |
| And STEVE RICHMOND ) | |
| ) | |
| Plaintiffs, ) | |
| ) | |
| v. ) | Cause No. 3:12-cv-532 JVB-CAN |
| ) | |
| THE CITY OF SOUTH BEND, Acting ) | |
| Through its Police Department, DARRYL ) | |
| BOYKINS, Individually and in his Official ) | |
| Capacity as Chief of Police, KAREN ) | |
| DEPAEPE, and SCOTT DUERRING, ) | |
| ) | |
| Defendants. ) | |

**BRIEF IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT**

Come now Tim Corbett, Dave Wells, Steve Richmond, Brian Young, and his wife, Sandy Young ("South Bend Officers"), and submit their Brief in Support of their Motion for Summary Judgment.

## I. INTRODUCTION

The South Bend Officers respectfully request that this Court grant summary judgment, ruling as a matter of law that audio cassettes containing recordings of the officers' phone conversations were obtained illegally under the Federal Wiretap Act, 18 U.S.C. § 2510 *et seq.* ("Federal Wiretap Act"), and that those tapes must not under any circumstances be released, listened to, or otherwise disseminated.

## II. STATEMENT OF MATERIAL FACTS

The South Bend Officers join in the City of South Bend's "Statement of Undisputed Material Facts," which accurately relates the deposition testimony necessary for this Court to make a ruling as a matter of law. The City's statement of the facts is incorporated here by reference. Any citation in this Brief to depositions, affidavits, and other documents refer to those designated by the City.

## III. STANDARD OF REVIEW

Summary judgment is appropriate when "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). This Court construes all facts and reasonable inferences in the light most favorable to the non-moving party. *Edgewood Manor Apartment Homes, LLC v. RSUI Indem. Co.,* 733 F.3d 761, 768-69 (7th Cir. 2013).

## IV. ARGUMENT

The cassettes at issue should under no circumstances be released from the South Bend Mayor's Office because they were obtained in violation of Federal law. The Federal Wiretap Act provides that it is unlawful to intentionally intercept any wire communication:

2

>   **(1)** Except as otherwise specifically provided in this chapter any person who--
>       **(a)** intentionally intercepts, endeavors to intercept, or procures any other person to intercept or endeavor to intercept, any wire, oral, or electronic communication;
>       **(b)** intentionally uses, endeavors to use, or procures any other person to use or endeavor to use any electronic, mechanical, or other device to intercept any oral communication when--
>           **(i)** such device is affixed to, or otherwise transmits a signal through, a wire, cable, or other like connection used in wire communication;
>                           ****
>       **(c)** intentionally discloses, or endeavors to disclose, to any other person the contents of any wire, oral, or electronic communication, knowing or having reason to know that the information was obtained through the interception of a wire, oral, or electronic communication in violation of this subsection; [or]
>       **(d)** intentionally uses, or endeavors to use, the contents of any wire, oral, or electronic communication, knowing or having reason to know that the information was obtained through the interception of a wire, oral, or electronic communication in violation of this subsection;
>                           ****
>   shall be punished as provided in subsection (4) or shall be subject to suit as provided in subsection (5).

18 U.S.C. § 2511.  It is not a violation of the statute if the person intercepting the communication if the party whose communications are recorded gave prior consent. 18 U.S.C. § 2511 (2)(a)(iii)(d).

>   **A.   The cassettes at issue were obtained illegally because Karen DePaepe intentionally recorded Captain Young's 6031 Number without Young's consent and disclosed the contents of her recordings to Chief Boykins.**

Intent is the key element that made the wiretapping here illegal. It was not inadvertent or a mistake. Intentionality requires that an person's act must have been the product of her conscious objective rather than the product of a mistake or an accident. *United States v. Townsend,* 987 F.2d 927, 930 (2d Cir. 1993). In February of 2011, Karen DePaepe realized that Captain Young's phone line was recorded, and she proceeded to intentionally listen to his recorded phone conversations, inform Chief Boykins of the contents of those phone conversations, and hand over to Chief Boykins

3

cassettes that contained the recorded phone conversations. These activities were illegal under the Wiretap Act.

The *Townsend* case offers a helpful definition for the element of intent. In that case, Townsend was sheriff of Orange County who came under investigation by the FBI after complaints were filed by a former deputy sheriff accusing Townsend of routinely taping phone conversations of his employees without their knowledge or consent. He was indicted for violating the Wiretap Act. Evidence was presented that included an ex-wife's testimony that Townsend played for her a conversation of an employee that he recorded in the effort to "find out who might be in the office that was betraying him." *Id.* at 928. The Second Circuit affirmed Townsend's conviction over his argument on appeal that the trial court erred by allowing a "knowing" standard jury instruction for the *mens rea* element of the offense. *Id.* at 931.

Here, Karen DePaepe discovered on February 4, 2011, that Young's number was being recorded. (DePaepe Dep. Tr. 43, 44.) Up to that date, any recording of Young's phone line was inadvertent. But subsequent to that date, each act that was performed was intentional. DePaepe took it upon herself to listen to recordings of conversations from that number from October through February. (DePaepe Dep. Tr. 44:23-45:1-2; 47:21-22; 51:22-52:3.) She did not alert Young that his number was tapped. (Affidavit of Brian Young ¶ 7.) She instead informed Chief Boykins of the fact in March of 2011. (DePaepe Dep. Tr. 68:19 - 67:3.)

Additionally, DePaepe decided to listen to more recorded conversations between the months of May and July of 2011. (DePaepe Dep. Tr. 61:11-25.) In December of 2011, Chief Boykins asked DePaepe to prepare a memo on what information she had learned through listening to the phone conversations. (DePaepe Dep. Tr. 61:11-25.) He received that memo on January 4, 2012, and he

4

listened to a cassette of the taped conversation that DePaepe provided on January 10, 2012. (Boykins Dep. Tr. 48:19-23; 59:22-25; 67:24-68:4; Walters Dep. Tr. 11:24.)

This fact scenario closely resembles the scenario in the *Townsend* case. Like Townsend, Chief Boykins asked DePaepe to prepare a memo summarizing the contents of recorded phone conversations, and he listened to at least one cassette conversation under the pretext that he was concerned with "people within the department trying to undermine [Boykins'] position of authority." (Walters Dep. Tr. 20:11-20; 25:19-26:21.) Both Townsend's and Boykins' activities came to light after the FBI began investigations of their conduct. There is no denying that there was intent to listen, record, and disseminate the illegally recorded phone conversations at issue.

> **B.  From the outset, the City of South Bend admitted that these phone recordings were not acquired in the ordinary course of business, and the evidence has supported the City's admission.**

The elements under the Wiretap Act are satisfied for a *prima facie* showing that the recordings at issue in this case were illegally obtained. The Common Council in its Answer to the Complaint for Declaratory Judgment did allege that the recordings fall within the statutory exclusions from the Federal Wiretap Act under 18 U.S.C. § 2510(5). (Common Council's Answer at ¶ 17.) However, the pleadings and the evidence demonstrate that no exclusions apply in this case.

The statute recited by the Common Council is the definitions section under the Act. It states that "electronic, mechanical, or other device" means any device or apparatus which can be used to intercept a wire, oral, or electronic communication other than:

> [A]ny telephone or telegraph instrument, equipment or facility, or any component thereof, (i) furnished to the subscriber or user by a provider of wire or electronic communication service in the ordinary course of its business and being used by the subscriber or user in the ordinary course of its business or furnished by such subscriber or user for connection to the facilities of such service and used in the

5

> ordinary course of its business; or (ii) being used by a provider of wire or electronic communication service in the ordinary course of its business, or by an investigative or law enforcement officer in the ordinary course of his duties.

18 U.S.C. § 2510(5). In other words, the Common Council's Answer alleged that the recordings at issue fell under the "ordinary course of business" exclusion.

From the filing of its Answer, the City of South Bend admitted that the interception and recording of the telephone lines was not authorized by a court order, nor conducted in the ordinary course of business. In the City's Answer to the Officers' Complaint, the City admitted the following:

> 28.     The interception and recording of these telephone lines was not authorized by a court order.
>         **Response:    If interception and recording of the telephone lines occurred as alleged by plaintiffs throughout this Complaint, the City admits this was not authorized by court order as alleged in paragraph 28 of the Complaint.**
>
> 29.     The interception and recording of Plaintiffs' calls was not part of any law enforcement investigation and was not conducted in the ordinary course of SBPD's business.
>         **Response:    If interception and recording of telephone lines occurred as alleged by plaintiffs throughout this Complaint, the City admits it would not have been part of law enforcement investigation nor in the ordinary course of SBPD's business as alleged in paragraph 29 of the Complaint.**

(City's Answer at ¶¶ 28, 29.) The Common Council's stance that the recordings fell under the ordinary course of business exclusion under the definition section of the Wiretap Act conflicted with the City's Answer. The City, of course, was in a better position to know whether the exclusion applied.

In addition to the pleadings, the evidence gathered to this point has shown that these recordings were not acquired in the ordinary course of business. Thomas Fautz, former South Bend Police Department chief, testified that it was not a practice of the police department to record certain lines, nor was there the intent to make that a practice:

6

>Q. That was under your authority to develop and establish practices and procedures?
>A. Yes. Yes.
>Q. Was it ever the practice of the South Bend Police Department, while you were the chief, to designate certain division chiefs as having telephone lines to be recorded at all times? That is, the position rather than the person who happened to be in the position? Was it ever the practice?
>A. No.
>Q. Did you ever intend to establish that practice?
>A. No.

(Deposition of Thomas Fautz at 24: 17-24.) Fautz testified further that it was not Karen DePaepe's position as Director of Communications to listen to private conversations. Such conduct on her part was outside her regular course of conduct. (Deposition of Thomas Fautz at 30: 3-8.)

Former Chief Fautz's testimony comports with Captain Young's understanding of policies and procedures in the police department. Young never received any indication in his years as an officer that it was the South Bend Police Department's practice to routinely record telephone lines. (Affidavit of Brian Young ¶ 11.) When he received telephone line of (574) 245-6031, nobody notified him that it was wired to the voice recording system. (Affidavit of Brian Young ¶ 4.) Young is adamant that recording phone conversations is not a practice in the course of the business of the South Bend Police Department. (Affidavit of Brian Young ¶ 12.)

That DePaepe intercepted these phone conversations outside the ordinary course of business places this case in contradistinction to the well-known Seventh Circuit case *Amati v. City of Woodstock,* 176 F.3d 952 (7th Cir. 1999). That appeal came following a verdict in favor of the defendant police department, which the jury determined was acting in the ordinary course of business by recording a particular department phone line. The Woodstock police department made it a policy to record all phone lines save one, and a memo was distributed to the employees explaining that the "line was intentionally left untapped to allow for personal calls, however, we request that you keep

7

those calls brief and to a minimum." *Id.* at 955.  Following what essentially was a customer service complaint lodged against the department following an unrecorded conversation on that phone line, the police department decided to make it a policy to record that line. *Id.* No memo stating such was disseminated to the employees, though "many of them may have known about it." *Id.*

The Seventh Circuit affirmed the jury verdict because it was the department's policy to record all phone lines.  The decision to change the previously unrecorded line to a line that was recorded made the practice one in the ordinary course of business. *Id.* at 956.  The court rejected the plaintiffs' argument that explicit consent was required notwithstanding the policy: "If the 'ordinary course' exclusion required proof of notice, it would have no function in the statute because there is a separate statutory exclusion for cases in which one party to the communication has consented to the interception." *Id.* at 955.

Here, it is undisputed that recording phone calls on line 6301 was not a routine practice of the South Bend Police Department.  As the Seventh Circuit explained: "The boundary is between [legal] routine noninvestigative uses of electronic eavesdropping and its use either as a tool of investigation (which requires a warrant) or as a [an illegal] device for intimidation, suppression of criticism, blackmail, embarrassment, or other improper purposes." *Id.* at 956.  Clearly, the recordings acquired in this case were not done as routine of the police department.  Instead, the evidence compels the conclusion that they were acquired and disseminated for improper purposes, including the purpose of suppressing criticism of Chief Boykins.

8

### C. Because the recordings were acquired illegally, this Court must grant the City's request for relief by prohibiting it from disseminating those recordings.

As the City recited in its Complaint for Declaratory Judgment, disclosing communications obtained in violation of the Federal Wiretap Act may constitute a civil or criminal offense punishable by fines and imprisonment. (Compl. for Decl. Judgment ¶ 16, citing 18 U.S.C. § 2511(1)(c).) Complying with the Common Council's subpoena would expose the City and the Mayor's Office to criminal and civil liability. Additionally, the City's compliance with the subpoena would violate the underlying claimants' privacy interests.

The Seventh Circuit dealt with a similar issue to the one presented here in *United States v. Dorfman,* 690 F.2d 1230 (7th Cir. 1982). The issue was whether district court erred in ordering sealed tapes of recorded phone conversations, which the judge found to be obtained *legally*, to be unsealed prior to the commencement of a criminal trial. Five individuals who were head of labor unions were indicted on federal charges including bribery of a United States Senator. The defendants moved to suppress certain evidence on the basis that it was fruit of the poisonous tree by virtue of being unlawfully gathered through illegal wiretapping under the Federal Wiretap Act. At the suppression hearing, the government submitted the wiretapped materials in its possession, and the district court ordered that it be sealed. Newspapers and other media subsequently clamored for the wiretapped material to be unsealed and disseminated.

In reversing the district court's unsealing the wiretapped evidence, the Seventh Circuit began its discussion by noting that "the strict prohibition in Title III [the Act] against disclosure of unlawfully obtained wiretap evidence would be undermined by public disclosure of wiretap evidence." *Id.* at 1233. The Court held that having ordered the exhibits sealed, the was not

9

authorized by any provision in the Act to release them to the public: "The government could not, after getting back the sealed wiretap evidence, hold a press conference and there release the evidence to the public, without violating Title III; no more are judges authorized to release it." *Id.*

The Court discussed further that the Wiretap Act did not authorize the district judge to make the determination whether privacy rights were outweighed by newsworthiness of the exhibits: "He unsealed the exhibits because he concluded that the harm of unsealing to the defendants' privacy would be outweighed by the newsworthiness of the exhibits. We cannot find in Title III any grant of authority to judges to make that particular judgment." *Id.* The discussion noted that legally obtained phone recordings that met the requirements of admissibility could be presented at trial, inherently diminishing the participants' privacy rights.

However, there was still a strong privacy interest in keeping sealed those phone recordings that would never be admitted at trial: "No law enforcement interest requires that this evidence be made public. There is public curiosity about it, but curiosity is just the opposing force to privacy; one of them has to yield; both have constitutional dignity." *Id.* at 1234. The Court concluded that the Act did not authorize wiretap evidence not made public in a trial to be made public another way without the consent of the people whose phone conversations were intercepted. *Id.* at 1234.

Here, the phone recordings at issue were acquired illegally. There will be no criminal trial at which legally wiretapped evidence will be admitted. The only interest in disseminating the tapes is the Common Council's, which sought to obtain "copies of any and all tapes and/or digital recordings related to the mayor's news release ... regarding demotion of former Police Chief Darryl Boykins; as well as the tapes and/or digital recordings cited by the Mayor in the termination of Communications Director Karen DePaepe." (Common Council's Answer at ¶ 13.)

Assuming that the Common Council's interest that drove its request has any constitutional dignity, the Seventh Circuit has already determined that the privacy interest of the Officers involved outweighs the Common Council's interest, if any (other than curiosity), in disseminating the recordings. Congress did not "authorize wiretap evidence not made public in this manner to be made public another way without the consent of the people whose phone conversations were intercepted." *Dorfman,* 690 F.2d at 1234. Therefore, having found that the tapes at issue were acquired illegally, this Court must prohibit the City from complying with the Common Council's subpoena and from otherwise disseminating the recordings at issue.

## V. CONCLUSION

For the foregoing reasons, the South Bend Officers respectfully request that this Court rule that there can be no further disseminating of the phone call recordings at issue, and the cause should continue as to the damages that apply to the Officers.

Respectfully submitted,

/s/ Daniel H. Pfeifer  
Daniel H. Pfeifer (5720-71)  
Attorney for Respondents  
PFEIFER, MORGAN & STESIAK  
53600 North Ironwood Drive  
South Bend, Indiana 46635  
(574) 272-2870

Dated December 13, 2013.

**CERTIFICATE OF SERVICE**

The undersigned hereby certifies that on the 13th day of December, 2013, I electronically filed the foregoing with the clerk of the court by using the CM/ECF system which will send a notice of electronic filing to the following:

Thomas M. Dixon
Dixon, Wright & Associates, P.C.
55255 Birchwood Court
Osceola, IN 46561

Jeffrey S. McQuary
Brown Tompkins Lory & Mastrian
608 East Market Street
Indianapolis, IN 46202

E. Spence Walton, Jr.
Christopher M. Lerner
Robert J. Palmer
May Oberfell Lorber
4100 Edison Lakes Parkway, Suite 100
Mishawaka, IN 46545

Aladean DeRose
City Attorney, South Bend, Indiana
227 W. Jefferson Blvd., Suite 1400
South Bend, IN 46601

Edward A. Sullivan, III
Ryan G. Milligan
Faegre Baker Daniels, LLP
202 South Michigan Street, Suite 1400
South Bend, IN 46601

Marielena Duerring
Duerring Law Offices
61191 US 31 South
South Bend, IN 46614

/s/ Daniel H. Pfeifer
Daniel H. Pfeifer