UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
SOUTH BEND DIVISION

| | |
|---|---|
| CITY OF SOUTH BEND,<br>　　　　Plaintiff,<br>　vs<br><br>SOUTH BEND COMMON COUNCIL, TIM CORBETT, DAVE WELLS, STEVE RICHMOND, BRIAN YOUNG, and SANDY YOUNG,<br>　　　　Defendants.<br>------------------------------<br>BRIAN YOUNG, SANDY YOUNG, TIMOTHY CORBETT, DAVID WELLS, and STEVE RICHMOND,<br>　　　　Plaintiffs,<br>　vs<br><br>THE CITY OF SOUTH BEND Acting through its Police Department, DARRYL BOYKINS, Individually and in his Official Capacity as Chief of Police, KAREN DePAEPE, and SCOTT DUERRING,<br>　　　　Defendants.<br>------------------------------ | Case No.<br>3:12-CV-475 |

The Videotaped Deposition of DARRYL BOYKINS

Date:　　　Monday, April 15, 2013

Time:　　　9:12 a.m.

Place:　　　Pfeifer, Morgan & Stesiak
　　　　　　53600 North Ironwood Drive
　　　　　　South Bend, Indiana 46635

Called as a witness by the Defendants/Plaintiffs in accordance with the Federal Rules of Civil Procedure for the United States District Court, Northern District of Indiana, South Bend Division, pursuant to Notice.

Reported by
Angela J. Galipeau, RPR, CSR
Notary Public, State of Indiana

EXHIBIT B

1   MR. DIXON:  If you know the answer.
2   MR. STESIAK:  He should only answer any question
3   he knows the answer to.
4   MR. DIXON:  Well, that's fine.  We're getting
5   back to --
6   MR. PFEIFER:  He doesn't need coaching from you,
7   Tom.
8   THE WITNESS:  Repeat it again so I make sure
9   we're understanding, we're doing the right question
10  again.
11  MR. PFEIFER:  Sorry, brain freeze.  Can you
12  repeat it?
13  (Read back.)
14  A.  I can't answer that for you.  Karen would have to answer
15      the question.
16  BY MR. PFEIFER:
17  Q.  Did Karen ever tell you why she was listening to the
18      conversations?
19  A.  She said the line -- there was a malfunction in the line.
20  Q.  Okay.  And was it this particular line that there was a
21      malfunction in, or was there a malfunction in all of the
22      lines?
23  A.  I can't tell you that.  Karen would have to testify on
24      that.
25  Q.  Okay.  But at least there was a malfunction in this line,

1     and that's why she was listening to the tapes?
2 A. What I was told.
3 Q. That's what she told you?
4 A. Yes.
5 Q. Okay. At any point in time while you were the Chief of
6     Police, did you ever order her to listen to phone
7     conversations that were recorded?
8 A. No.
9 Q. At any point in time while you were the Chief of Police,
10     did you ever order her to listen to recordings of phone
11     conversations where the phone lines were being recorded?
12 A. No.
13 Q. As the Chief of Police, you said that you were told that
14     there was some type of malfunction or breakdown in the
15     phone lines, or words to that effect, correct?
16 A. Yes.
17 Q. Okay. But as the Chief of Police, what, if anything, was
18     ever done to repair any malfunction that had taken place
19     on these phone lines?
20 A. Again, that's not my expertise, and that was Karen's
21     division.
22 Q. As the Chief of Police, didn't you want to know what was
23     going on?
24 A. Yes, I do. But I do not have the knowledge to answer that
25     question the way you're asking me.

1  recorded went into Bishop's office, and that Officer Young
2  took over Bishop's office?
3  A. Yes.
4  Q. Okay. Is it my understanding then when you took over, you
5  indicated that whatever lines were previously being
6  recorded by Chief Fautz that you wanted to continue to
7  record?
8  A. Yes.
9  MR. PFEIFER: Object. That mischaracterizes his
10 testimony. He said the policy that had been followed
11 by Chief Fautz is the policy that he followed.
12 MR. WALTON: I'm asking the questions my way.
13 You can have your objection noted.
14 BY MR. WALTON:
15 Q. Is it my understanding that you indicated when you took
16 office that the same lines that were being recorded by
17 Chief Fautz you wanted to continue to record?
18 A. Yes.
19 Q. Okay. And did you assume in making that decision that
20 Chief Fautz had in place a system of recording telephone
21 calls that were necessary for legitimate business purposes
22 by the South Bend Police Department?
23 A. Yes.
24 Q. And to your knowledge, the same lines continued to be
25 recorded by Chief Fautz as were being recorded under your

1   tenure as Chief of the department?
2   A.  Yes.
3   Q.  Did that ever change, to your knowledge?
4   A.  No.
5   Q.  When you read Chief Fautz' statement, did you believe that
6       his decision making with regard to which lines would be
7       recorded, that he would record certain lines in the
8       ordinary course of business by the South Bend Police
9       Department for purposes of obtaining -- investigative
10      purposes and for purposes of also handling things such as
11      complaints to the office?
12          MR. SULLIVAN:  Objection, lack of foundation.
13          You can go ahead.
14  A.  I believe, yes.  I believe -- you're talking about his
15      following -- back and forth, yes.
16  BY MR. WALTON:
17  Q.  You were asked some questions about a statement being made
18      by Phil Trent.  Have you ever read that statement?
19  A.  No.
20  Q.  Did Officer Young ever request of you that his line not be
21      recorded?
22  A.  Not that I remember, no.
23  Q.  Did he request it of anybody else, to your knowledge?
24  A.  I don't know.
25  Q.  No one else that you know of?