IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF INDIANA
SOUTH BEND DIVISION

| | |
|---|---|
| BRIAN YOUNG, SANDY YOUNG, TIMOTHY CORBETT, DAVID WELLS, and STEVE RICHMOND, <br><br>Plaintiffs,<br><br>v.<br><br>THE CITY OF SOUTH BEND Acting through its Police Department, DARRYL BOYKINS, Individually and in his Official Capacity as Chief of Police, KAREN DEPAEPE, and SCOTT DUERRING,<br><br>Defendants. | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) Cause No. 3:12-cv-475 JVB-CAN<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) |

**PLAINTIFFS' BRIEF IN OPPOSITION TO THE COMMON COUNCIL AND SCOTT DUERRING'S MOTION FOR SUMMARY JUDGMENT**

Plaintiffs Brian Young, Sandy Young, Timothy Corbett, David Wells, and Steve Richmond, by counsel, respectfully submit this memorandum of law in opposition to the separate but similar Motions for Summary Judgment filed by Karen DePaepe and Scott Duerring and the South Bend Common Council.

**STATEMENT OF MATERIAL FACTS IN DISPUTE**

Steve Richmond was the chief of the Detective Bureau of the South Bend Police Department ("SBPD") on January 3, 2012 when he attended the departmental general role call. (Deposition of Steve Richmond, "Richmond Dep.," p. 61.) After role call the command staff stayed behind to discuss the issues before the Department and the Chief of

Police, Darryl Boykins, asked the several senior officers present if they had interviewed with Mayor-elect Peter Buttigieg for the job of Chief of Police. (*Id.*) The tone in which Boykins asked the question indicated that Boykins knew that Richmond had indeed interviewed for the job, which left Richmond astonished. (*Id.*)

Fearing that the job interview had poisoned his relationship with his boss Richmond attempted to schedule a meeting with Boykins and, after being sent away several times, met with Boykins in his office on January 6, 2012. At that meeting Boykins told Richmond that he no longer considered Richmond a loyal employee and that he was instead a "backstabber." (*Id.* at p. 62.) Boykins told Richmond that he had requested tape recordings of Ricmond's and other seinor officers' telephone conversations, and that based on what he heard on those recordings he would demote, discipline, and perhaps even fire Richmond. (*Id.* at pp. 66-68.)

Shortly thereafter another officer of SBPD, Capt. Brian Young, told Richmond that his telephone line had been recorded. (*Id.* at p. 34.) Before these reports Richmond had no knowledge that any of the Bureau's phone lines were recorded. (*Id.*) In fact, when Richmond once needed to record his calls in the course of a criminal investigation, he purchased recording equipment at his own expense and installed it on his office phone himself. (*Id.* at p. 59.) Eager to get to the bottom of the rumors of recorded phone lines he met with Karen DePaepe, who was SBPD's Director of Communications, and asked her on January 17, 2012 at approximately 11:00 to 11:15 in the morning what lines in his Bureau were being recorded. (*Id.* at p. 34.) DePape told him that several lines that were being recorded, including his own. (*Id.* at p. 35.) DePaepe told Richmond that Boykins ordered Richmond's line to be recorded the day he was promoted to a division chief.

(*Id.*)  Due to a mix-up Brian Young's line was recorded instead of Richmond's. (Depositon of Karen DePaepe, "DePaepe Dep.," pp. 43-44.)  When Richmond asked if anyone had actually listened to his recorded calls, DePaepe told Richmond that she was forbidden to disclose that information to him on the express order of Chief Boykins.  (*Id.*)

Richmond and Young believed themselves to be the victim of an illegal wiretap and after Richmond's January 17th meeting with DePaepe he promptly scheduled a meeting at the U.S. Attorney's office for the Northern District of Indiana to report the crime.  Agents from the Federal Bureau of Investigation interviewed Boykins. (Deposition of Darryl Boykins, "Boykins Dep.," pp. 139-40.)  The U.S. Attorney's office communicated concerns about the wiretapping to Mayor Buttigieg, and threatened Boykins with criminal charges if changes were not made.  (City's Answer to Amended Complaint, ¶39; City's Answer to Plaintiffs' Interrogatory No. 14.)  Boykins subsequently resigned as Chief of Police.  (City's Answer to Amended Complaint, ¶41.) The City also fired DePaepe for committing potentially illegal acts related to the tape recordings.  (City's Answer to Amended Complaint, ¶42.)

After DePaepe was fired, she and her attorney, Scott Duerring, gave numerous interviews to newspapers and local television stations in which they discussed the circumstances that led to DePaepe's termination and Boykins' resignation. (Declaration of David Wells, "Wells Decl.," ¶4.) In these interviews they described the contents of Plaintiffs' recorded conversations.  (Wells Decl., ¶6.)  In an interview with the tv station ABC57, DePaepe stated that she heard rumors that officers of the SBPD engaged in illegal conduct and she listened to the recordings in order to confirm these rumors. (Wells Decl., ¶8.)

**ISSUE**

Whether Karen DePaepe's interception of conversations on Brian Young's telephone line falls within the Act's exception for "an investigative or law enforcement officer in the ordinary course of his duties" when DePaepe is not a law enforcement officer and conducted a criminal investigation on her own initiative and outside her duties.

**DISCUSSION**

Plaintiffs Brian Young, Sandy Young, Timothy Corbett, David Wells, and Steve Richmond initially brought this action seeking monetary damages from the City of South Bend (the "City") and two of its employees for the illegal wiretapping of their telephone calls.  In light of a Subpoena issued by the South Bend Common Council (the "Council") seeking production of the illegally recorded conversations, Plaintiffs amended their complaint to seek declaratory and injunctive relief to prevent future disclosures of the recorded conversations.  Plaintiffs' claim for monetary damages against the City and Boykins are not at issue in the pending Motion for Summary Judgment.  Rather, the separate but similar Motions filed by the Council, DePaepe, and her attorney Duerring assert that the interception of Plaintiff's conversations falls within the law's "ordinary course" exception so that interception of the calls, and Defendants' subsequent use and public disclosure of them, was not illegal.  Their argument is erroneous.

Title III of the Omnibus Crime Control and Safe Streets Act of 1968, 18 U.S.C. § 2510 *et seq.,* commonly called the Federal Wiretap Act (the "Act"), makes it illegal to intercept, use, or disclose the contents of other people's telephone conversations.

"Intercept" means listening to or recording the telephone conversation. 18 U.S.C. § 2510(4). The Act subjects violators to civil and criminal penalties and also gives victims a private cause of action. 18 U.S.C. § 2520. The Act makes "interception," "use," and "disclosure" separate and distinct violations. 18 U.S.C. §§ 2511(b), (c), and (d). The Act contains several exceptions to the prohibitions, the most important of which is that law enforcement officers may obtain a court order to intercept calls based upon a showing of probable cause that a crime has been committed. 18 U.S.C. §1516.

I. BOYKINS REQUESTED THE RECORDINGS FOR PURPOSESES OF INTIMIDATION AND SUPRESSION OF CRITICISM.

In the present case no one suggests that any Defendant obtained a court order to intercept Plaintiffs' telephone conversations. (City's Answer to Plaintiffs' Interrogatory No. 7; Boykins Dep., pp. 66-67.) Rather, Defendants contend that they fall within one of the Act's two 'ordinary course of business' exceptions.[1] One of these exceptions specifically applies to law enforcement agencies and it excepts interception "by an investigative or law enforcement officer in the ordinary course of his duties." 18 U.S.C. § 2510(5)(a)(*iii*). In *Amati v. City of Woodstock,* 176 F.3d 952, 955 (7th Cir. 1999) the court noted that this exception can't cover all the duties of law enforcement officials because the exception would swallow the warrant requirement. Rather, the court defined the exception as applying to the routine, non-investigative recording of telephone conversations. In other words, this exception permits the recording of all—rather than a select few of—a police department's own telephone lines. The court further noted that

---

[1] The other 'ordinary course' exception contained in 18 U.S.C. § 2510(5)(a)(*i*) applies to all business. Court's do not normally apply this exception to law enforcement agencies because the specific exception in 5(a)(*iii*) covers them. *Amati* at 954. In any event, the Council, DePaepe, and Duerring have not argued that they fall within this exception.

5

the exception would never apply to eavesdropping for purposes of "intimidation, suppression of criticism, blackmail, embarrassment, or other improper purposes." *Id.* at 956.

Intimidation and suppression of criticism describe precisely the purpose of the interception of Brian Young's telephone conversations. Young's line was recorded by accident but Chief Boykins intended to use recording's of Steve Richmond's conversations to punish him for aspiring to the job of Chief. Boykins told Steve Richmond that he had requested recordings of Richmond's and other SBPD senior officers' conversations because he was concerned that they criticized him to Mayor-elect Buttigieg while seeking appointment to the office of Chief of Police. (Richmond Dep., p. 68.) Boykins told Richmond that he would use those recordings to determine whether he would demote, discipline, or terminate Richmond for that criticism. (*Id.*) Boykins ordered Richmond's telephone line recorded the day he was promoted to a division chief. (Richmond Dep., p. 35.) That timing suggests that the purpose of the original interception was to monitor a potential rival for the job of Chief.

Such improper purposes are wholly outside the scope of the 'ordinary course' exception as interpreted by the Seventh Circuit. *Amati,* 176 F.3d at 956. The interception and use of the conversations violates 18 U.S.C. § 2511(1)(b) and the Court should deny Defendants' Motion for Summary Judgment.

   II.   DEPAEPE IS NOT AN INVESTIGATIVE OR LAW ENFORCEMENT OFFICER.

Boykins, and DePaepe, deny that Boykins ordered Richmond's line intercepted for any purpose. (Boykins Dep., p. 46, 81; Deposition of Karen DePaepe, "DePaepe

6

Dep.," p. 38.)   Rather, they contend that DePaepe stumbled upon Brian Young's conversations inadvertently while making repairs to the recording system's hard drive and again later when DePaepe was fulfilling a FOIA request.  (Brief of DePaepe and Duerring, p. 4).  The Council adopts DePaepe's version of events.  (Brief of the Council, p. 10.)   DePaepe, Duerring, and the Council argue that because she discovered the conversations while acting within the scope of her duties as Director of Communications, the interception and subsequent recordings fall within the 'ordinary course' exception for law enforcement.  Even if the Court accepts DePaepe's facts as true, this argument fails because DePaepe is not a law enforcement officer.

### A. DePaepe does not meet the statutory definition of a law enforcement officer.

The 'ordinary course' exception excludes from the definition of interception devices used by an "investigative or law enforcement officer in the ordinary course of his duties."  18 U.S.C. 2510(5)(a)(ii).  The Act defines law enforcement officers as follows:

> **(7)** "Investigative or law enforcement officer" means any officer of the United States or of a State or political subdivision thereof, who is empowered by law to conduct investigations of or to make arrests for offenses enumerated in this chapter, and any attorney authorized by law to prosecute or participate in the prosecution of such offenses.

18 U.S.C. § 2510(7)

The Act defines "investigative or law enforcement officer" as policemen and prosecutors.  It does not mention their support staff.  Two former Chiefs of the SBPD for whom DePape once worked agree that DePaepe is not a sworn police officer and that she had no authority to conduct criminal investigations.  (Deposition of Thomas Fautz, "Fautz Dep.," p. 27; Boykins Dep., p. 104; Richmond Dep., p. 80.)   Nor would it be

7

within the scope of her training or responsibility to investigate police misconduct; that is the function of Internal Affairs. (Fautz Dep., pp. 27-28.) DePaepe's duties as Director of Communication were to oversee the communications center, *i.e.,* the emergency dispatchers. (DePaepe Dep., p. 12.) She also supervised clerical personnel at the front desk and sent criminal histories to state and federal agencies. (*Id.* at p.13.) She has no training in law enforcement. (*Id.* at p. 64.) She has no understanding of what constitutes probable cause or what rights protect criminal suspects from unwarranted intrusion. (*Id.* at p. 65.)

Karen DePaepe cannot avail herself of the 'ordinary course' exception. Nothing she did at any time constitutes an act "by an investigative or law enforcement officer in the ordinary course of his duties" because she was not a law enforcement officer.

> B. **DePaepe exceeded the scope of her duties by conducting a criminal investigation.**

In her brief DePaepe characterizes her interception of Brian Young's phone calls as inadvertent discoveries, once while she was making repairs and a second time when she was gathering information at the request of the City Attorney to respond to a FOIA request. (Brief of DePaepe, p. 4) This characterization is not accurate. DePaepe actively sought out conversations that she believed to be damaging to Plaintiffs. In the first instance, while listening to recordings of what she initially believed to be Steve Richmond's telephone line but later determined to be Brian Young's, DePaepe heard Young make statements that alarmed her (DePaepe Dep., p. 46.) because she considered what she heard to be potentially illegal or police misconduct. (DePaepe Dep., p. 55.) DePaepe didn't want to make an accusation against an officer unless it was properly

8

documented.  (*Id.* at p. 46.)  She therefore listened to up to a dozen additional conversations on Brian Young's line in order to find further evidence of misconduct.  (*Id.*)  In the second instance, she listened to multiple recorded conversations over a three month period.  (*Id.* at p. 61.)  In her interview with ABC57 News, DePaepe stated that she heard rumors of illegal conduct by policemen so she listened to more recordings to determine whether the rumors were true.[2]  After listening to additional conversations she reported to Chief Boykins that the problems were worse than she initially thought when she first raised the concern with him. (Affidavit of David Wells, "Wells Aff," ¶9.)  When DePaepe informed him about the conversations "He was crushed."  (DePaepe Dep., p. 67.)

This is not a case of inadvertent discovery, at least not after the DePaepe overheard the first of Brian Young's conversations.  Once alerted to what she considered illegal acts, DePaepe conducted an extensive investigation over a period of months on her own initiative.   It is not within the scope of DePaepe's duties to investigate rumors of police misconduct by listening to recorded telephone conversations.  (Fautz Dep., pp. 27-28.)  Any interpretation of the 'ordinary course' exception that includes listing to recorded conversations after being prompted by rumors of illegal conduct would, as the Seventh Circuit noted in *Amati,* 176 F.3d 952, 955, swallow the warrant requirement.  The Act sets out a procedure whereby government officials who suspect that a crime has been committed may obtain search warrants on a showing of probable cause. 18 U.S.C. §1516.  Had she followed this procedure her conduct would be exempt.  But she did not,

---

[2] The news broadcast can be viewed at this link: http://www.abc57.com/home/top-stories/DePaepe-Its-even-more-serious-I-think-you-need-to-deal-with-this-150088835.html

and her interception and disclosure of Plaintiffs' private conversations is illegal. Defendants' Motion for Summary Judgment must be denied.

### III. DEPAPE'S INTERCEPTION OF BRIAN YOUNG'S CONVERSATIONS WAS NEITHER ROUTINE NOR NON-INVESTIGATIVE.

In *Amati* the Seventh Circuit held that the 'ordinary course' exception for law enforcement means the routine, non-investigative recording of telephone conversations. The recording of all a police department's lines quintessentially meets the 'ordinary course' exception. *Amati,* 176 F.3d at 955. Other circuits have interpreted *Amati* to stand for the proposition that the 'ordinary course' exception permits a police agency to record all or nearly all of its own telephone lines. *See, e.g., Walden v. City of Providence,* 596 F.3d 38, 55 (1st Cir. 2010) in which the court stated that the practice of routinely and indiscriminately recording all telephone calls in and out of the police department is well known in the industry and to the general public.

But at SBPD it was never the practice to record all or nearly all of the Department's telephone lines. The City of South Bend had not at the time of the events complained of promulgated an official policy on recording SBPD's phone lines. (City's Answer to Plaintiffs' Interrogatory No. 11). But in practice only certain lines were selected for recording. Many of the recorded lines, such as those of the front desk, records bureau, and the communications center (*i.e.,* 9-1-1 calls) were associated with a function rather than an individual officer. (DePaepe Dep., p. 27) In his deposition Boykins expressly disavowed an intent to record all of SBPD's telephone lines:

> **Q:** I believe my question was this: as the Chief of Police, when you were the chief, did you believe that you had the authority to record any line coming in to the South Bend Police Department?

10

>    **A:** No. I never had that question, never thought of do I have the power to put everybody's phone on. No, I didn't even come across that.

(Boykins Dep., p. 39.)

Boykins testified that when he became Chief of Police he intended to follow the same practice of phone records that had been established by his predecessor, Chief Fautz. (Boykins Dep., p. 36.) Fautz testified that he selected individual officers' lines for recording on the basis that they were in both in positions of authority and were likely either to receive complaints about other officers or themselves be subjects of complaints from the general public. (Fautz Dep., p. 12.) He therefore selected for recording the detectives in Internal Affairs, the chiefs of the detective bureau and uniform division, and himself. (*Id.*) The person was always informed that his line was recorded. (Fautz Dep., p. 13.) Fautz intended that the recordings be listened to only by the person the line belonged to, for that person's own benefit. Fautz never listened to recordings of someone else's line. (*Id.*)

DePaepe's interception of Brian Young's telephone conversations does not fit within the 'ordinary course' exception as interpreted by the *Amati* and *City of Walden* courts as permitting the indiscriminate recording of all or nearly all of a police department's own lines. SBPD did not have a practice of recording all its telephone lines.

The interception was neither routine nor non-investigative. It was not routine because Brian Young's line was recorded not pursuant to any established policy or practice but rather by accident. (Boykins Dep., p. 51.) Although DePaepe may have initially listened to Young's recorded conversations while conducting routine

maintenance as part of her job duties, she listened to other conversations that day in order to confirm her suspicions of misconduct, and more conversations still over a period of months.  (DePaepe Dep. P. 46, p. 61.)  Listening to recorded conversations to find evidence of police misconduct was not her routine duty—or any part of her job duties.  (Fautz Dep., p. 28)  And the interception was anything but non-investigative.  DePaepe listened to the recordings in order to find evidence of what she suspected was a crime.  (DePaepe Dep., pp. 55-56.)  DePaepe on her own initiative conducted a criminal investigation.

DePaepe's interception of Brian Young's telephone conversations do not fit within the 'ordinary course' exception of 18 U.S.C. § 25105(a)(ii).  Because no exception applies, the interception violated 18 U.S.C. § 2511(1)(b).  Her actions were illegal, and her, Boykins', and Duerring's subsequent use and disclosure of the conversations is illegal.

## CONCLUSION

For the forgoing reasons, the separate but similar Motions for Summary Judgment of the Council and DePaepe and Duerring should be denied.

Respectfully submitted,

/s/ Jeffrey S. McQuary, 16791-49
BROWN TOMPKINS LORY
608 E. Market Street
Indianapolis, IN 46202
317/631-6866
jmcquary@btlmlaw.com

One of Plaintiffs' Attorneys

CERTIFICATE OF SERVICE

I certify that the foregoing was filed on January 27, 2014 using the Court's CM/ECF system and is available to all counsel of record using the same.

/s/ Jeffrey S. McQuary, 16791-49

BROWN TOMPKINS LORY
608 East Market Street
Indianapolis, IN 46202
Telephone: (317) 631-6866
Facsimile: (317) 685-2329
jmcquary@btlmlaw.com