

1 of 7 DOCUMENTS

CYNTHIA FIRST; MARCIA WRIGHT, Plaintiffs-Appellants, v. STARK COUNTY BOARD OF COMMISSIONERS, et al., Defendants-Appellees.

No. 99-3547

UNITED STATES COURT OF APPEALS FOR THE SIXTH CIRCUIT

2000 U.S. App. LEXIS 25469

October 4, 2000, Filed

**NOTICE:** [*1] NOT RECOMMENDED FOR FULL-TEXT PUBLICATION. SIXTH CIRCUIT RULE 28(g) LIMITS CITATION TO SPECIFIC SITUATIONS. PLEASE SEE RULE 28(g) BEFORE CITING IN A PROCEEDING IN A COURT IN THE SIXTH CIRCUIT. IF CITED, A COPY MUST BE SERVED ON OTHER PARTIES AND THE COURT. THIS NOTICE IS TO BE PROMINENTLY DISPLAYED IF THIS DECISION IS REPRODUCED.

**SUBSEQUENT HISTORY:** Reported in Table Case Format at: *2000 U.S. App. LEXIS 35212.*

**PRIOR HISTORY:** ON APPEAL FROM THE UNITED STATES DISTRICT COURT FOR THE NORTHERN DISTRICT OF OHIO AT AKRON. 97-02702. Polster. 3-22-99.

**DISPOSITION:** AFFIRMED.

**COUNSEL:** For CYNTHIA FIRST, MARCIA WRIGHT, Plaintiffs - Appellants: Bruce B. Elfvin, Barbara Kaye Besser, Amy S. Glesius, Elfvin & Besser, Cleveland, OH.

For STARK COUNTY BOARD OF COMMISSIONERS, Defendant - Appellee: Scott R. Piepho, Kristen Bates Aylward, Stark County Prosecutor's Office, Canton, OH.

For JAMES SHANNON, Defendant - Appellee: Bradley R. Iams, Canton, OH.

**JUDGES:** Before: BOGGS and RYAN, Circuit Judges; and DUGGAN, * District Judge.

* The Honorable Patrick J. Duggan, United States District Judge for the Eastern District of Michigan, sitting by designation.

**OPINION**

On October 21, 1997, Plaintiffs-Appellants Cynthia L. First and Marcia Wright filed suit against Defendants-Appellees, Stark County [*2] Board of Commissioners, W. Bruce Umpleby, Timothy A. Swanson, and James Shannon, alleging that the Stark County Sheriff's Department illegally intercepted Plaintiffs' oral communications while on duty as dispatchers for the Sheriff's Department in violation of Plaintiffs' *First, Fourth,* and *Fourteenth Amendment* rights as protected by *42 U.S.C. § 1983, 18 U.S.C. § 2520,* and *OHIO REV. CODE ANN. § 2933.52.* All parties filed cross-motions for summary judgment. On March 19, 1999, the United States District Court for the Northern District of Ohio granted Defendants' motion for summary judgment. On appeal, Plaintiffs challenge the district court's grant of summary judgment on several grounds. For the following reasons, the district court's grant of summary judgment in favor of Defendants shall be affirmed.

Background

Plaintiffs are employed by the Stark County Sheriff's Department as dispatchers for the "911" emergency communications department. At the time complained of by Plaintiffs, the Sheriff's Department recorded all incoming and outgoing dispatch radio and telephone communications through a system known as "*COM." The *COM equipment [*3] was originally installed in

the mid-1970's and was designed such that each track of the system recorded a different "instrument," *e.g.,* a different radio or telephone. However, it was subsequently discovered that the system, through the telephone headsets and radio consoles, was recording conversations that were not coming over the telephones or radios. The effect of this design was to create "open mikes" within the dispatch room that recorded all conversations and activities through the microphones on the dispatchers' headsets and some radio console equipment.

Evidence of this open mike scenario first surfaced in the early 1990's, when Defendant Shannon discovered that a conversation between two individuals in the dispatch room had been recorded by the system. Defendant Shannon ultimately concluded that the conversation had been recorded by an open mike in one of the headsets used by the dispatchers.

When the system was first installed, the dispatchers were provided with headsets containing mute switches that would disable the recording device when activated, thereby preventing the dispatchers' personal conversations from being recorded. In 1993, however, the original headsets [*4] were replaced with headsets that did not contain mute switches. Without the mute switches, the microphones on the dispatchers' headsets acted as open mikes, recording all activity within the dispatch room. When this fact was discovered, the dispatchers were informed that they needed to disconnect their headsets to prevent personal conversations from being recorded by the microphones on their headsets.

In November of 1996, Defendant Shannon, investigating an "emergency" call he suspected was mishandled by Plaintiff First, ordered that the archive tapes containing the call be reviewed. In reviewing the tapes, it was discovered that a personal conversation between Plaintiff First and another dispatcher within the dispatch room had been recorded in addition to the emergency call. According to Defendants, Plaintiff First was ultimately suspended for thirty days because she failed to dispatch an ambulance in a timely manner, and then lied about her conduct in subsequent disciplinary conferences. Plaintiff First contends that the only way Defendants could have gained the information used to discipline her was by listening to the personal conversation that had been recorded.

In January of [*5] 1997, Plaintiffs "tested" the *COM system and discovered that a rear console microphone had been recording all activity within the dispatch room. On February 20, 1997, counsel for Plaintiffs wrote Defendants, accusing them of violating federal and state wiretap laws by unlawfully intercepting Plaintiffs' oral communications and failing to provide Plaintiffs with an unrecorded line for their use. This letter, however, did not identify the open mike created by the rear console.

On June 11, 1997, counsel for Defendants responded to Plaintiffs' accusations. Under the belief that counsel for Plaintiffs' letter was referring to the open mike created by the new headsets, counsel for Defendants explained that new headsets with mute buttons had been ordered and that all employees had been informed they could unplug their headsets to avoid being recorded. Counsel for Defendants' letter also stated that "the Sheriff [did] not conduct any other tape recording in the radio room."

On October 21, 1997, Plaintiffs filed suit against Defendants alleging various violations of federal and state wiretapping laws, as well as Plaintiffs' constitutional rights. Approximately two months after Plaintiffs [*6] filed suit, the *COM system was replaced.

Discussion

This Court reviews a district court's grant of summary judgment *de novo. Butler v. Ohio Power Co., 91 F.3d 143 (6th Cir. 1996).* On a motion for summary judgment, the underlying facts "must be viewed in the light most favorable to the party opposing the motion." *United States v. Diebold, Inc., 369 U.S. 654, 655, 82 S. Ct. 993, 994, 8 L. Ed. 2d 176 (1962); accord Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp., 475 U.S. 574, 587, 106 S. Ct. 1348, 1356, 89 L. Ed. 2d 538 (1986).* Therefore, the moving party bears the initial burden of demonstrating the absence of evidence in support of the nonmoving party's claims. *See Celotex Corp. v. Catrett, 477 U.S. 317, 325, 106 S. Ct. 2548, 2554, 91 L. Ed. 2d 265 (1986).*

Once the moving party has sustained this burden, the nonmoving party must come forward with sufficient evidence to establish a genuine issue of material fact. The nonmoving party, however, "is required to do more than simply show that there is some 'metaphysical doubt as to the material facts.'" *Pierce v. Commonwealth Life Ins. Co., 40 F.3d 796, 800 (6th Cir. 1994)* [*7] (quoting *Matsushita, 475 U.S. at 586, 106 S. Ct. at 1356*). "There must be evidence on which the jury could reasonably find for the [nonmoving] party." *Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 252, 106 S. Ct. 2505, 2512, 91 L. Ed. 2d 202 (1986).*

1. Plaintiffs' Federal and State Wiretap Claims

Finding that the *COM system fell within the law enforcement exception to both the federal and state wiretap statutes, and that Plaintiffs had produced no evidence that Defendants "intentionally" or "purposely" recorded their personal conversations, as prohibited under *18 U.S.C. § 2511* and *OHIO REV. CODE ANN. §*

2933.52 respectively, the district court granted summary judgment to Defendants. On appeal, Plaintiffs contend that the law enforcement exception does not apply to Defendants' conduct, that a question of material fact exists regarding whether Defendants acted "intentionally," and that the district court erred by dismissing Plaintiffs' claims for unlawful use and disclosure of the recorded conversations. We are satisfied that the district court did not err with regard to these findings and therefore, the district [*8] court's grant of summary judgment to Defendants with respect to Plaintiffs' federal and state wiretap claims shall be affirmed.

A. Law Enforcement Exception

Title III of the Omnibus Crime Control and Safe Streets Act ("the Act"), *18 U.S.C. §§ 2510-2521*, which Ohio's wiretap statute essentially mirrors, prohibits the intentional interception and disclosure of wire and oral communications except under specifically defined circumstances. For liability to attach, however, there must be an "interception." As defined by the Act, the term "intercept" means "the aural or other acquisition of the contents of any wire, electronic, or oral communication through the use of any *electronic, mechanical, or other device." Id. § 2510(4)* (emphasis added).

The Act further limits the definition of "intercept" by specifically defining "electronic, mechanical, or other device" as:

> Any device or apparatus which can be used to intercept a wire, oral, or electronic communication *other than--*
>
> (a) any telephone or telegraph instrument, equipment or facility, or any component thereof, (i) furnished to the subscriber or user by a provider of wire or electronic communication [*9] service in the ordinary course of its business and being used by the subscriber or user in the ordinary course of its business or furnished by such subscriber or user for connection to the facilities of such service and used in the ordinary course of its business; or (ii) being used by a provider of wire or electronic communication service in the ordinary course of its business, *or by an investigative or law enforcement officer in the ordinary course of his duties.*

*Id.* at *§ 2510(5)* (emphasis added); *see also OHIO REV. CODE ANN. § 2933.51(D)(1)(c).* The district court found, and the parties do not dispute, that because the rear console microphone was "being used" as part of the overall *COM system, it fell within the exception as a "component" of a telephone instrument, equipment, or facility. The district court further found that because the rear console recorded all sounds and words spoken, rather than selectively recording only certain private conversations, the recordings made by the rear console fell within the law enforcement exception.

Plaintiffs argue that the district court erred in finding that the recordings were made within the ordinary course of [*10] Defendants' duties because Defendants' "ordinary course of business" does not include the recording of employees' personal, non-emergency related conversations.

In *United States v. Murdock, 63 F.3d 1391 (6th Cir. 1995)*, this Court, discussing the phrase "in the ordinary course of business" for purposes of the "business extension exception" contained in *18 U.S.C. § 2510(5)(a)(i)*, [1] found that a wife's recording of telephone calls for the purpose of "checking on her husband's business dealings related to their mutual funeral business and also to check on his possible marital infidelities" did not constitute conduct "within the ordinary course of the funeral home business in which she had an interest as part owner." *Id. at 1396.* The recording in *Murdock,* however, commenced only after the wife became suspicious of her husband's activities. *Id. at 1392.* Based upon the fact that the equipment was ultimately installed for a purpose unrelated to the funeral home, *i.e.,* to spy on the husband, the Court determined that the recording equipment was not used in the ordinary course of the funeral home business. [*11]

> 1 It should be noted that unlike the business extension exception contained in *18 U.S.C. § 2510(5)(a)(i)*, which requires *both* that the equipment be used in the ordinary course of business *and* that the equipment be furnished by, or connected to the facilities of, a provider of wire or electronic services, *see, e.g., Murdock, 63 F.3d at 1394-96, Sanders v. Robert Bosch Corp., 38 F.3d 736, 740-42 (4th Cir. 1994)*, the law enforcement exception contained in *§ 2510(5)(a)(ii)* requires only that the equipment be used in the ordinary course of law enforcement duties. Therefore, we need only to decide whether the equipment was being used in the ordinary course of law enforcement duties.

This case, however, presents a much different scenario than *Murdock.* It is undisputed that the STARCOM system was installed for the legitimate purpose of recording all incoming and outgoing calls to the "911" center, not to spy on a particular dispatcher. The em-

ployer-employee [*12] cases discussed in *Murdock*, where employers indiscriminately recorded employees' calls based upon suspicions of employee wrongdoing, as well as the authority cited by Plaintiffs involving instances where employers or law enforcement agencies tapped specific telephone lines for the sole purpose of monitoring a particular employee's behavior, are also inapposite. It is undisputed that the STARCOM system, while being used in the ordinary course of the Sheriff's Department's duties, has indiscriminately and inadvertently recorded *all* conversations since its installation in the mid-1970's.

Plaintiffs essentially ask this Court to make a distinction based upon the "type" of conversation recorded by the STARCOM system. Under Plaintiffs' theory, the STARCOM system's recording of a dispatch call would not run afoul of the Act, but the STARCOM system's recording of a personal conversation or personal call would. The plain wording of the Act, however, does not draw this distinction. The pertinent question under the Act is whether the equipment itself is being used in the ordinary course of the law enforcement agency's duties; not whether the conversation recorded by the equipment relates [*13] to the law enforcement agency's duties.

If this Court were to adopt Plaintiffs' position, any business that legitimately recorded all telephone calls as a regular course of its business, or any law enforcement agency that legitimately recorded all telephone calls in the ordinary course of its duties, would, if the employees were unaware of the recording, be in violation of the Act every time they recorded a "personal" call. To avert such a result, the Act specifically focuses upon the intended use of the recording "equipment." If the recording equipment is used for a legitimate business purpose, it does not qualify as an electronic, mechanical, or other device under the Act. Therefore, we are satisfied that the district court did not err in finding that the STARCOM system fell within the law enforcement exception to the Act.

Because we have determined that the district court did not err in granting summary judgment to Defendants based upon the law enforcement exception, Plaintiffs' arguments regarding the district court's dismissal of their use and disclosure claims must fail by implication. *See 28 U.S.C. § 2511(1)(b)-(e)*. To prevail on a use or disclosure [*14] claim, there must be an illegal interception.

B. Plaintiffs' Evidence of Intent

The district court also found that Plaintiffs had produced no evidence that Defendants "intentionally" recorded their personal conversations. The Act prohibits a person from "intentionally" intercepting any wire, oral, or electronic communication. *See 18 U.S.C. § 2511*. Similarly, Ohio law prohibits a person from "purposely" intercepting such communications. *See OHIO REV. CODE ANN. § 2933.52*. Although Plaintiffs contend that Defendants knew for quite some time after the purchase of new headsets that personal conversations were still being recorded by the STARCOM system, it is undisputed that Defendants did not know until recently that it was the open mike created by the rear console that was recording such conversations.

Plaintiffs contend that the evidence presented to the district court created a question of material fact regarding Defendants' intent and therefore, summary judgment was improper. In support of their contention, Plaintiffs first assert that at the time the STARCOM system was designed, Defendant Umpleby knew that the system recorded live instruments, [*15] not telephone lines. According to Plaintiffs, a simple design choice to record telephone lines or radio frequencies, instead of instruments, would have alleviated any potential for open mikes. Such evidence, however, only supports a conclusion that Defendant Umpleby may have made a bad design choice, not that he "intended" to record personal conversations within the dispatch room, or "purposely" designed the STARCOM system to do so.

Plaintiffs next contend that the fact that Defendants had notice that personal communications within the dispatch room were being recorded and failed to modify the STARCOM system, or further investigate whether components other than the dispatchers' headsets were acting as open mikes, constitutes evidence of intent. However, once Defendants learned that the dispatchers' headsets were acting as open mikes, they specifically instructed the dispatchers how to avoid the open mikes created by their headsets and ultimately ordered new headsets that, like the original headsets, contained mute switches. Such conduct refutes any allegation that Defendants "intended" to record personal conversations within the dispatch room. Furthermore, the Act does not expressly [*16] require that remedial measures be taken.

As stated by Plaintiffs themselves, the word "intentional" refers to "an act that is being done on purpose." Although it is undisputed that Defendants "intended" to record all incoming and outgoing dispatch calls, none of the evidence presented by Plaintiffs supports a conclusion that Defendants "intended" to record personal conversations within the dispatch room. Accordingly, the district court did not err in finding that Plaintiffs were unable to establish that Defendants "intentionally" or "purposely" recorded their personal conversations.

2. Plaintiffs' *§ 1983* Claim

With respect to Plaintiffs' *§ 1983* claim, the district court found that the unique characteristics of the dispatch

room, including all of its recording equipment, together with the undisputed fact that the recording equipment frequently malfunctioned, "fatally diminished" Plaintiffs' "reasonable expectation of privacy" under *Katz v. United States, 389 U.S. 347, 88 S. Ct. 507, 19 L. Ed. 2d 576 (1967)*. Noting that Plaintiffs' § 1983 claim required a showing of more than negligent conduct on behalf of Defendants, the district court also found that because [*17] Plaintiffs had produced no evidence that Defendants "intentionally" recorded their personal conversations, their § 1983 claim failed as well.

On appeal, Plaintiffs contend that a question of material fact exists as to whether they reasonably expected that their conversations within the dispatch room were private and whether Defendants intentionally recorded their personal conversations. As previously discussed, we are satisfied that the district court did not err in finding that Plaintiffs failed to produce evidence that Defendants intentionally recorded their personal conversations. Furthermore, even assuming, *arguendo*, that Plaintiffs did possess a reasonable expectation of privacy, we nonetheless do not believe that Defendants' conduct in this case implicates the *Fourth Amendment*. Unlike the law enforcement officers in *Katz* and its progeny, Defendants did not "intentionally" install the STARCOM system for the sole purpose of recording or eavesdropping on Plaintiffs' personal conversations.

It is undisputed that the open mikes were not discovered until years after the STARCOM system was installed. Inadvertent recordings, which, for the most part, Defendants had no knowledge [*18] even existed, do not constitute a search within the meaning of the *Fourth Amendment*. Plaintiffs took no affirmative steps, beyond installation of the STARCOM system, to record such conversations.

Furthermore, Plaintiffs have cited no authority indicating that the inadvertent recording of an individual's conversations constitutes a search; nor are we willing to so declare today. Inadvertent discovery or procurement does not violate the *Fourth Amendment*. See *Horton v. California, 496 U.S. 128, 135, 110 S. Ct. 2301, 2307, 110 L. Ed. 2d 112 (1990)* (citing *Warden v. Hayden, 387 U.S. 294, 87 S. Ct. 1642, 18 L. Ed. 2d 782 (1967)* (evidence inadvertently discovered by police in hot pursuit); *Harris v. United States, 390 U.S. 234, 88 S. Ct. 992, 19 L. Ed. 2d 1067 (1968)* (police officer not searching for evidence against accused inadvertently discovered incriminating object); *see also United States v. Baranek, 903 F.2d 1068 (6th Cir. 1990)* (conversation overheard on wiretapped telephone that was inadvertently left off the hook); *Rice v. Gercar, 77 F.3d 483, 1996 WL 67907 (6th Cir. 1996)* [*19] (holding that police officer's inadvertent viewing of nonpublic events on videotape that also contained public events did not constitute violation of *Fourth Amendment* for § 1983 purposes). Accordingly, we are satisfied that the district court's decision granting summary judgment to Defendants on Plaintiffs' § 1983 claims should not be disturbed.

Conclusion

For the reasons stated above, the decision of the district court granting summary judgment in favor of Defendants on all claims is **AFFIRMED**.