UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
SOUTH BEND DIVISION

CITY OF SOUTH BEND,          )
                                  )
              Plaintiff,        )
                                  )
         v.                       )       Cause No. 3:12-cv-475
                                  )
HOLDER, et al.               )
                                  )
             Defendants.     )

## DEPAEPE'S CONSOLIDATED REPLY TO THE PLAINTIFFS' AND CITY'S RESPONSE TO MOTION FOR SUMMARY JUDGEMENT

Having filed her own Motion for Summary Judgment and Response to the motions for summary judgment filed by the Plaintiffs, and the City, DePaepe would incorporate her arguments from such motion and response into her reply herein. This matter has been the subject of multiple briefs, and voluminous submissions of designated materials. It would appear that while the material facts are undisputed, there is a great amount of dispute on how those facts should be interpreted in determining whether the recording device employed by the Police Department qualifies as a "wiretapping device" under *18 U.S.C. § 2510(5)(a)(ii)*.

It is critical to the analysis that the law is absolutely clear that the first question that needs to be answered, is whether or not the interception of the subject conversation violates Title III. If, of course, the interception is not a violation, then the analysis is over as far as the application of Title III. *High Fructose Corn Syrup Antitrust Litigation,* 216 F.3rd 621 (7th Cir 2000), *United States v. Hammond,* 286 F.3rd 189 (4th Cir. 2002). (Both cases discussing and holding that if the interception of the conversation was not a violation of Title III, then the listening and disclosure of such cannot be a violation of Title III). A very important fact in this case is that none of the conversations at issue were "live" conversations. They had already been intercepted by the recording system used by the Department. As such, DePaepe's actions in listening to these already intercepted conversations are completely and totally irrelevant to the analysis regarding

1

whether the recording device qualifies as a "wiretapping device". The relevant timeframe occurred during the period when the subject phone line was placed on the recording system. The undisputed facts establish that the subject phone line was placed on the recording system sometime in and around 2004-2005. (Fautz dep. p. 10). While the Plaintiffs and the City seem to adopt that only those lines assigned to officers who "consented" or asked for their line to be recorded were actually recorded, that in fact is a "fact that is in dispute" (See affidavit of Hassig, see also Trent Dep. p. 40)[1]. But this disputed fact is not a "material fact" in the context of determining if the recording system is a "wiretapping" device under the law enforcement exception. *Amanti v. City of Woodstock,* 176 F.3rd 952 (7th Cir. 1999). (Holding consent not required in law enforcement exception).

Perhaps some of the most important evidence regarding what was happening at the time the subject phone line was placed on the recording system came from Captain Phil Trent's deposition testimony. Trent testified;

> A. …. the recording of phones had always been discussed at command staff where individuals had input as to the logic of the recording which numbers, only because we had such limited resources. So it was trying to do things in the most logical possible way as opposed to simply dictating what was going to be done.

Trent Dep. p. 33.

And further;

> A. Whenever there was a discussion of recording phone lines, because we had such limited resources for recording, there was a lot of care taken in choosing which lines were going to be recorded. So previously that had always been done in a staff meeting, does this make sense, does this not make sense to record this phone

---

[1] Trent testified specifically:
Q: The impression that I've gotten is that under the Fautz administration, he felt it was important police to allow officers to consent to lines—or their own personal lines being recorded; is that a fair statement?
A.: I don't know whether it was – I would characterized it as consent as opposed to be – just simply being advised.

> number. ... but I had never been in a meeting in which we discussed surreptitious
>
> recording at all.

Trent Dep. p. 24.

And further:

> Q. So base upon the conversations you were privy to with respect to recording the
>
> division chiefs' line, was it you understanding that there were law enforcement
>
> purposes behind capturing those conversations?
>
> A. Yes, yes.
>
> Q. And that was the sole reason for recording those lines?
>
> A. Yes.

Trent Dep. 37.

The undisputed facts show that in and around 2004-2005, the Department was in a period of remodeling and expansion. It was during that time the Department purchased an "upgraded" model of the Dynamic Reliant Recording system. (DePaepe Affidavit, Downer Affidavit). It was during this time, under former Chief Fautz's administration that the decision was made to place the subject line, along with a number of other lines on the recording system. Choices of which lines to place on the recording system had to be made, due to the fact even the upgraded system could not record all incoming phone lines. These choices were made at command level meetings based upon what was felt to be careful and logical consideration in order not to waste the limited resource that the department had with respect to recording phone lines. Further the undisputed facts show that the purpose for placing these phone lines on the recording system was to preserve important information involving, complaints on officers, investigations, and the like. There is absolutely no information to conclude that purpose ever changed the entire time the subject phone line was on the recording system.[2]

---

[2] Interestingly, the plaintiffs, and the City seem to make much ado about the fact that the subject phone line had been "switched" from a division chief's office to a Captain's office. Somehow this event figures

Perhaps it is helpful to review the undisputed evidence in this case to determine what the subject recording device is NOT, in order to see if such device fits into the description of a "wiretapping device":

    a.   The recording device does not record a conversation based upon content.

    b.   The recording device does not record a conversation based upon the identity of the participants of the conversation.

    c.   The recording device does not record any specific 'kind" of conversation.

    d.   The recording device does not record a conversation based upon time of day.

    e.   The recording device does not record a conversation to blackmail any participant.

    f.   The recording device does not record a conversation to embarrass any participant.

## CONCLUSION

The undisputed facts in this case reflect that the subject conversations were already intercepted and recorded before DePaepe ever heard them. She had nothing to do with the interception of these conversations, other that by following the orders of her then Chief Thomas Fautz. The purpose of the interception of the conversations on the subject phone line clearly falls within the recognized purposes contained within the law enforcement exception to Title III. The recording device used by the Department routinely, and completely recorded everything that it "heard" on the subject line for a number of years. There is nothing contained within the facts that even remotely suggest

---

prominently in their rationale that DePaepe somehow engaged in illegal wiretapping "after" she realized the phone line was no longer assigned to a Chief's office. These parties are extremely silent as to recognizing the circumstances on how that situation came into being. In fact one of the plaintiffs, Steve Richmond was the sole person responsible for his fellow plaintiff, Brian Young, ending up with a recorded phone line assigned to his office. In addition, Captain Trent testified that Steve Richmond attended the meetings where the recordings were discussed and would have had full knowledge that this particular phone line was recorded. (Trent Dep. p. 37). Apparently, Richmond never told his fellow plaintiff that he had given him a recorded line. So, as it turns out, it was neither Karen DePaepe, nor Darryl Boykins that had anything to do with why Young's phone line was being recorded. It would indeed strain all bounds of logic to hold them responsible for the condition that Richmond caused. But indeed, even the switch did not change the purpose for which the line was being recorded, nor did it change the methodology. Richmond's knowing switch of this line did not change the recording system into a "wiretapping device" and is therefore irrelevant to the ultimate question before the court presently.

that the recording device or the purpose for which it was being used was to blackmail,

embarrass or otherwise "spy" on any individual officer for any reason whatsoever.

The interception of the complained of phone conversations did not violate Title

III. As such, any listening or disclosure of those conversations do not violate Title III.


Respectfully submitted,


*/s/Marielena Duerring*
Marielena Duerring #19835-71
Attorneys for Scott H. Duerring and Karen DePaepe
DUERRING LAW OFFICES
61191 US 31 South
South Bend, IN 46614
Phone: (574) 968-0250
Fax: (574) 968-1256
Email: attymduerring@aol.com

### CERTIFICATE OF SERVICE

I certify a copy of the foregoing was served upon all attorneys of record via the Court's ECF system on February 13, 2014.


/s/Marielena Duerring
Marielena Duerring #19835-71