UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
SOUTH BEND DIVISION

| | | |
|---|---|---|
| CITY OF SOUTH BEND, BY ITS CORPORATION COUNSEL ALADEAN M. DEROSE. | ) ) ) ) | |
| Petitioner, | ) ) | |
| v. | ) ) | 3:12-CV- 475 |
| UNITED STATES OF AMERICA, ERIC H. HOLDER, JR., IN HIS OFFICIAL CAPACITY AS ATTORNEY GENERAL OF THE UNITED STAES, SOUTH BEND COMMON COUNCIL, TIM CORBETT, DAVE WELLS, STEVE RICHMOND, BRIAN YOUNG, AND SANDY YOUNG, | ) ) ) ) ) ) ) ) | |
| Respondents. | ) | |

**SOUTH BEND COMMON COUNCIL'S REPLY TO THE CITY OF
SOUTH BEND AND TIM CORBETT, STEVE RICHMOND, DAVE WELLS,
BRYAN YOUNG, AND SANDY YOUNG'S RESPONSES TO THE
<u>SOUTH BEND COMMON COUNCIL'S MOTION FOR SUMMARY JUDGMENT</u>**

Comes now Respondent, the South Bend Common Council, by counsel, and files its reply to the separate responses of the City of South Bend and Tim Corbett, Steve Richmond, Dave Wells, Bryan Young, and Sandy Young to the South Bend Common Council's motion for summary judgment. Although the City and the individual parties filed separate responses, the issues raised in those responses are essentially the same and will be addressed jointly in this reply. Furthermore, some of the issues raised in the responses are the same issues raised in the City and the individual parties' motions for summary judgment and are addressed in the Common Council's response to those motions. (Docket No. 108.) The South Bend Common Council incorporates that response by reference.

**ISSUES RAISED IN RESPONSES TO THE SOUTH BEND
COMMON COUNCIL'S MOTION FOR SUMMARY JUDGMENT**

The responses to the South Bend Common Council's motion for summary judgment essentially raise two issues. The first issue is whether the recordings were made in the ordinary course of the police department's business. This issue is broken down into whether a written policy is required to exclude recordings from the Wiretap Act and whether the recordings are routine and non-investigative recordings despite a mistake in assigning a recorded telephone line to a police captain. A second issue, raised for the first time in the responses, is whether the recordings were made by an investigative or law enforcement officer. The City also raises an issue as to whether final judgment under Federal Rule of Civil Procedure 54 is premature if the Court grants the South Bend Common Council's motion for summary judgment.

**ARGUMENT**

**The Recordings Are Excluded From The Wiretap Act By The Ordinary
Course Exclusion, 18 U.S.C. § 2510(5)(a)(ii).**

There are two misconceptions in the responses which need to be clarified to understand the application of the Federal Wiretap Act. The first misconception is that the Ordinary Course Exclusion is an exception to the warrant requirements of the Wiretap Act. The individuals' response repeatedly refers to the ordinary course "exception." Although the City properly refers to it as an "exclusion," it reverts to the "exception" rationale in arguing that there is an issue as to whether information from recordings excluded from the Wiretap Act can be disclosed pursuant to 18 U.S.C. § 2517(1). (City's response at 21-22.) As noted in the Common Council's memorandum in support of its motion for summary judgment (Memorandum at pp. 14-15), the Federal Wiretap Act makes it illegal for a person to intentionally use, endeavor to use, or procure any other person to use or endeavor to use any electronic, mechanical, or other device to

intercept any oral communication. 18 U.S.C. § 2511(1)(b). The phrase "electronic, mechanical, or other device" is defined to exclude devices being used by an investigative or law enforcement officer in the ordinary course of his duties. 18 U.S.C. § 2510(5)(a)(ii). Therefore, if the recordings fall within the exclusion, they are not simply an exception to warrant requirements, they are excluded from the Wiretap Act for all purposes. If the recordings excluded from the Act for all purposes, any disclosure to anyone is not barred by the Wiretap Act.

The distinction between an *exclusion* and an *exception* is evident in 18 U.S.C. § 2517, cited by the City as a reason for not entering a final appealable judgment in favor of the South Bend Common Council. That statute deals with "authorization for disclosure and use of intercepted wire, oral, or electronic communications." If communications are *excluded* under 18 U.S.C. § 2510(5)(a)(ii), they are not subject to 18 U.S.C. § 2517. Such communications are simply not intercepted through the use of "electronic, mechanical, or other device" as defined in 18 U.S.C. § 2510(4) and (5) and are not covered by the Wiretap Act.

The Seventh Circuit clarified this point in *In re High Fructose Corn Syrup Antitrust Litigation*, 216 F.3d 621 (7th Cir. 2000). The specific issue before the Court was whether recordings exempted by the Wiretap Act because one party consented to the recording is nevertheless subject to 18 U.S.C. § 2517. In ruling that exempted communications are not subject to 18 U.S.C. § 2517, the Court stated:

> The courts (including our own) have repeatedly held this in civil suits under Title III, *Thomas v. Pearl*, 998 F.2d 447, 451-53 (7th Cir. 1993); *Griggs-Ryan v. Smith*, 904 F.2d 112, 119 (1st Cir. 1990); *Smith v. Cincinnati Post & Times – Star*, 475 F.2d 740 (6th Cir. 1973) (per curium); *Meredith v. Gavin*, 446 F.2d 794, 799 (8th Cir. 1971) – which the present case is. Section 2511 exempts the conversations covered by it from the entirety of Title III. 'Since . . . the interception in the case was not obtained in violation of the Act, its subsequent use and disclosure was not a violation of the Act.' *Id.*; *see also Obron Atlantic Corp. v. Barr*, 990 F.2d 861,

> 863-64 (6th Cir. 1993); *Leitman v. McAusland*, 934 F.2d 46, 50 (4th Cir. 1991); *United States v. Shields*, 675 N.E.2d 1152, 1157 n. 2 (11th Cir. 1982); *United States v. Howell*, 664 F.2d 101, 105 (5th Cir. 1981); *United States v. Head*, 586 F.2d 508, 513 (5th Cir. 1978). As the case last cited put it, '18 U.S.C. § 2511(2)(d) exempts *from the operation of the entire chapter*, of which Section 2518 is a part, consensual recording such as made here.' *Id.* (Emphasis added.)
>
> * * *
>
> To subject interceptions made lawful by Sections 2511(2)(c) and (d) to Section 2517(3) would have absurd consequences. It would mean that Whitacre had violated the statute by turning his recordings over to the FBI, since on the district court's reading of that section the only permissible disclosure of the contents of an interception made lawful by Sections 2511(2)(c) or (d) is to play a tape of, or testify to, those contents *in court*. Section 2517(3) reflects a traditional sensitivity about wiretapping and related methods of electronically eavesdropping on other people's conversations. As is implicit (and sometimes explicit) in the cases that hold that such eavesdropping violates the Fourth Amendment but that recording your own conversations does not, there is just not the same sensitivity about the latter practice. Title III does not require a warrant for such recording or regulate its use in any way. The matter has been left to the states, except for the flat prohibition of consensual recording for improper purposes.
>
> So if Whitacre's recordings were made lawful by either of these subsections, Title III does not restrict the use by the plaintiffs.

216 F.3d at 625.

Although the Seventh Circuit's analysis was based on the exemption of recordings under 18 U.S.C. § 2511, that same rationale was employed by the Fourth Circuit involving recordings excluded from the Federal Wiretap Act by the Ordinary Course Exclusion in 18 U.S.C. § 2510(5)(a)(ii). In *United States v. Hammond*, 286 F.3d 189 (4th Cir. 2002), *citing In re High Fructose Corn Syrup Antitrust Litigation*, the Court ruled that recordings excluded under the Ordinary Course Exclusion are excluded for all purposes under the Wiretap Act. Specifically, the Court stated:

> However, we are persuaded by the reasoning of the Seventh Circuit in *In re High Fructose Corn Syrup Antitrust Litigation*, 216 F.3d 621 (7th Cir. 2000). There, the court was asked to consider whether the limits on the use and disclosure of intercepted communications imposed by Title III, 18 U.S.C. § 2517, applied to conversations that had been recorded by one of the participants. In analyzing this issue, the court read Sections 2516 to 2519 as a self-contained unit within Title III to finding and implementing the regime for interceptions pursuant to a judicial interception order. *See Id.* at 624-625. Under this reading, Section 2517 only limits the uses of communications permitted by means of such an order. *Id.* Since Title III imposes no other limitations on intercepted communications outside the warrant regime, the Seventh Circuit concluded that 'Section 2511 exempts the conversation covered by it from the *entirety* of Title III.' *Id.* at 625 (emphasis in original). Agreeing with this mode of analysis, we conclude that the FBI was free to use the intercepted conversations once they were excepted under either Section 2510(5)(a)(1) or Section 2511(2)(c).

286 F.3d at 193. Therefore, if the recordings are excluded from the Wiretap Act by the Ordinary Course Exclusion, there are no limits under the Federal Wiretap Act on the recordings' subsequent use and disclosure.

The second misconception in the responses is that the exclusion is somehow dependent on what is done with the communications after recordings are made. Although the City acknowledges that the sole issue before the Court is the manner in which the recordings were made (City's memorandum at p. 20), both the City and the individuals focus large parts of their argument on the alleged actions of former Police Chief Boykins and Karen DePaepe long after the recordings were made. The Federal Wiretap Act simply has no application whatsoever if the recordings were lawful. Pursuant to the authorities cited above, if the recordings were legally made under the Ordinary Course Exclusion, the Wiretap Act itself imposes no limitations on the use of the recordings by either DePaepe or Boykins.

5

With these misconceptions clarified, the arguments made in the responses to the Common Council's motions do not create any genuine issues of material fact. The Common Council is therefore entitled to summary judgment.

The responses to the Common Council's motion for summary judgment assert that in order to fall within the exclusion, all, or nearly all, of the calls going into and out of the police department must be recorded. Although the facts of the cases cited, for the most part, indicate that all calls were recorded, none of the cases make the recording of all, or even nearly all, of the telephone conversations into and out of a police department a requirement for purposes of § 2510(5)(a)(ii). Instead, the issue of whether a recording is done in the "ordinary" course of a law enforcement officer's duties does not depend on whether all calls to and from the police department be recorded. Rather, whether the Ordinary Course Exclusion applies depends on whether the nature of the recordings at issue can be "reasonably interpreted to refer to *routine non-investigative recording of telephone conversations*." *Amati v. City of Woodstock*, 176 F.3d 952, 957 (7th Cir. 1999) (emphasis added).

In the present case, not all phone calls to and from the South Bend Police Department were recorded. In fact, the equipment used by the South Bend Police Department was not capable of recording all lines. The lines that were recorded, however, were recorded 24 hours a day, seven days a week. The lines were recorded in the ordinary business of the South Bend Police Department to document the calls for legitimate business purposes, including documenting complaints against the police department and police personnel; recording and preserving information from anonymous tips; and insuring that calls being received were handled correctly. Such recordings are commonplace among police departments nationwide and, as the Seventh Circuit noted in *Amati*, are well known and well established. The purpose of recording

the phone calls was not to trick people in making damaging admissions over the phone or as a device for intimidation, suppression of criticism, blackmail, embarrassment or other improper motives. If those things happened, it was the result of legally-recorded information being legally disclosed, but subsequently misused.  Any such misuse has no effect on whether the recordings fall within the Ordinary Course Exclusion.

The fallacy in the position that all phone calls must be recorded in order for the Ordinary Course Exclusion is evident in applying the argument to the reverse situation. Under that theory, unless every telephone call on every police phone line is recorded, no call falls within the Ordinary Course Exclusion. Not even the parties opposing the Common Council's motion for summary judgment take this extreme position. Instead, the opposing parties simply argue that only those calls on Bryan Young's phone line do not fall within the Ordinary Course Exclusion.

Furthermore, courts sitting in the Seventh Circuit have ruled that the Ordinary Course Exclusion can apply regardless of whether all calls to and from a police station are being recorded.  In *Jandak v. Brookfield*, 520 F.Supp. 815 (N.D. Ill. 1981), Fred Jandak ("Fred") learned his wife, Susan ("Susan"), was having an affair with Officer Thomas J. Capaccio of the Brookfield Police Department. 520 F.Supp. at 817. Fred informed the police chief of the affair, and subsequently, the police chief initiated an investigation. *Id.* During the course of the investigation, the police chief listened to a telephone conversation between Officer Capaccio and Susan that had been recorded by the department's telephone recording system. *Id.* at 818. The department's telephone system consisted of ten lines total, only nine of which were recorded. *Id.* at 817-18. In ruling that the Ordinary Course Exclusion applied, the Court explained that:

> Police departments commonly have recording systems like that of
> defendants, due to the need to preserve and be capable of
> accurately recalling messages pertaining to emergencies or to
> official police business. To further these purposes, defendants

7

> engaged a communications common carrier to install a recording system, to record emergency and investigative calls, as an integral component of the communication system used by the police department in performing its duties to the public. Such a system indiscriminately and routinely records all activities *on established designated lines*, and is not comparable to the selective use of recording equipment to eavesdrop on a normally unmonitored telephone system in order to record specifically selected communications. There is little doubt that Congress did not intend the statute to apply to routine recording of emergency and investigative calls as an integral component of a police station telephone system like that of defendants. Accordingly, the Court concludes that the recording device used by defendants falls within the definition of telephone equipment or component as used in [the Ordinary Course Exclusion].

*Id.* at 822. Thus, similar to *Amati*, the Court's rationale in *Jandak* indicates that the issue of whether the Ordinary Course Exclusion applies depends on the police department's underlying reasons for recording the calls in the first place, not the number of lines being recorded. Just as the recording equipment in *Jandak* "indiscriminately and routinely records all activities on established designated lines," the system in the present case also indiscriminately and routinely records all activities on established designated lines. Those lines were established before former Chief Boykins became chief and never changed while he was chief.

The responses to the Common Council's motion for summary judgment also assert that the Ordinary Course Exclusion does not apply because the police department had no written policy, but rather, was an "ad hoc" practice and procedure. Again, there is no authority to support the proposition that the Ordinary Course Exclusion applies only if there is a formal written policy addressing the issue. Nothing in the Ordinary Course Exclusion contained in 18 U.S.C. § 2510(5)(a)(ii), *Amati*, *Jandak*, or any other case suggests that a formal written policy is a prerequisite to the applicability of the Ordinary Course Exclusion.

The City cites *Abraham v. County of Greenville*, 237 F.3d 386, 389 (4th Cir. 2001), as "holding defendant violated the Act when it 'did not have an established policy of monitoring the plaintiffs' calls." (City's response at p. 19.) As noted in previous summary judgment pleadings, the issue in *Abraham* was not whether recording of calls into and out of a police department fell within the Ordinary Course Exclusion. Instead, the issue was whether recording telephone calls into and out of judges' chambers was within the Ordinary Course Exclusion. Instead of holding that the exclusion did not apply because there was no established policy of monitoring the plaintiffs' calls, as the City selectively paraphrases (City's memorandum at p. 15), the Court actually looked to the nature of the recordings to rule that the exclusion did not apply. The Court stated:

> Greenville County claims that the law enforcement exception excuses its recording of plaintiffs' telephone calls. However, monitoring the judge's calls simply was not part of the 'ordinary course' of the county's law enforcement duties. *See* 18 U.S.C. § 2510(5)(a)(ii).

237 F.3d at 388. The Court then noted: "The county did not have an established policy of monitoring plaintiffs' calls.*" Id.*

Placed in the proper context, the Court ruled that the Ordinary Course Exclusion did not apply because recording all calls into and out of the judges' chambers was not within the ordinary course of the county's law enforcement duties. The issue might have been different, however, if the county had an established policy making the monitoring of those calls a part of its law enforcement duties. As the Seventh Circuit in *Amati* made clear however, recording calls into and out of police departments is recognized as being in the ordinary course of business for police departments. No formal written policy is necessary to make such recordings fall within the

9

ordinary course of police enforcement duties. The only relevant inquiry is whether the calls were "routine non-investigative recording of telephone conversations." *Amati*, 176 F.3d at 955.

The responses to the Common Council's motion for summary judgment also argue that the recording of Brian Young's line did not fall within the Ordinary Course Exclusion because Young's calls were being recorded as a result of a mistake. This argument fails, however, because the recordings at issue were not being recorded by mistake. The fact that Young, or anyone else at the South Bend Police Department, did not consent to having his telephone line recorded does not mean that the recording of his line was a mistake. Rather, the practice of recording telephone calls at the South Bend Police Department was well known and well established. When the decision was made to record a given telephone line at the South Bend Police Department, that decision was based on the physical office to which that line was routed, not the particular individual who would be using that line. (Affidavit of Karen DePaepe at ¶ 13.) "The phone lines placed on the recording system were the lines assigned to a particular office and once placed on the recording system, all calls placed on that particular phone line were recorded regardless of the individuals who were assigned to that office." (Affidavit of Karen DePaepe at ¶ 13.) This evidence establishes that the South Bend Police Department intended to record every call made on the telephone line assigned to Young's physical office. The fact that Young received that phone line as part of a reshuffling of positions and offices is wholly irrelevant. There is no dispute that the telephone line in Young's office was intended to be recorded.

The City again relies on *Abraham* for the proposition that a line recorded by mistake could not have been recorded in the ordinary course of police business. As noted previously, the recordings in *Abraham*, are distinguishable from the present case because the recorded phone

calls in *Abraham* involved phone lines of county judges, whereas the recordings at issue in the present case involve only calls into and out of the police department itself. The Court noted this distinction as follows:

> [C]ourts have considered different categories of phone calls recorded by a single recording system separately for application of the law enforcement exception. Such an approach is necessary to prevent the law enforcement exception from swallowing the rule. Very often, judges, attorneys, and other administrators who share the same facilities with law enforcement personnel. If the law enforcement exception is looked only to the wiretapping device, then law enforcement agencies could recall all of the telephone lines in a building so long as some lines were monitored in the ordinary course of the law enforcement officers' duties. This cannot be what congress meant. The law enforcement exception may not be read to allow a single recording device to deconstruct the whole system of separation of powers and permit law enforcement officers to routinely record the daily conversations of judges who may sit in cases to which law enforcement is a party.

237 F.3d at 390-391.

### The Ordinary Course Exclusion Applies Because The Recordings Were Made At The Direction Of The South Bend Police Chief, Not The Director Of Communications.

The City and the individuals also argue that the Ordinary Course Exclusion does not apply because Karen DePaepe, acting as Director of Communications, does not meet the statutory definition of a law enforcement officer. This argument is both factually and legally without merit.

Factually, DePaepe was not the individual who authorized or directed the recordings. DePaepe was directed to make recordings of specific telephone lines by the various chiefs of police. (Affidavit of Karen DePaepe at ¶¶ 7-10.) Although adding or deleting recorded lines would have to be done through Karen, the Chief of Police would have authority to approve or authorize changes. (Dep. of Thomas Fautz, p. 8, l. 24 – p. 9, l. 11.) Although DePaepe, as

11

Director of Communications, was charged with maintaining the recording system, the recordings themselves were directed by the Chief of Police and actually made by the automatic recording system. Therefore, Karen DePaepe's status as a law enforcement officer is irrelevant.

From the legal perspective, the Federal District Court for the Eastern District of Virginia ruled that the Ordinary Course Exclusion applies when recordings are "performed by government personnel or 'by individuals operating under contract with the government,' provided . . . that those individuals are properly authorized and supervised.' *United States v. Rivera*, 292 F.Supp. 2d 838, 843 (E.D. Va. 2003). The issue in *Rivera* arose because telephone calls going out of and into a prison were being recorded not by the prison itself, but by third-party private entities, Verizon and Global Tel*link. In rejecting the argument that the Ordinary Course Exclusion did not apply because Verizon and Global Tel*link were not investigative or law enforcement officers, the court stated:

> Caselaw interpreting the statute [definition of investigative or law enforcement officer] broadens this definition, holding that a prison official qualifies as an investigative or law enforcement officer such that calls intercepted directly by prison personnel…need not be judicially authorized pursuant to the law enforcement exception. Although circuit caselaw does not squarely address whether an entity acting as the agent of a prison pursuant to a government contract may qualify under § 2510(7) as an investigative or law enforcement officer, another section of the statute provides that:
>
>> an interception under this chapter may be conducted in whole or in part by Government personnel, or by an individual operating under a contract with the Government, acting under the supervision of an investigative or law enforcement officer authorized to conduct the interception.
>
> 18 U.S.C. § 2518. Title III's legislative history also confirms that monitoring and interception under the statute may be performed by government personnel or "by individuals operating under contract with the Government," provided, as occurred here, that those individuals are properly authorized and supervised.

> It follows that Verizon's and Global Tel*link's recording of Rivera's calls pursuant to their contract with Arlington County comes within the law enforcement exception. Verizon and Global Tel*link acted exclusively under the direction of Arlington County prison officials. In essence, Verizon's and Global Tel*link's role was limited to providing the means and equipment used to record the calls. They did not listen to or monitor the calls; nor did they have any discretion concerning which calls to record. All monitoring of Rivera's calls was conducted by prison officials. In these circumstances, the law enforcement exception fits well.
>
> In sum…in the Arlington County facility, although all inmate calls were recorded by Verizon and Global Tel*link pursuant to a contract with the prison, Rivera's calls nonetheless fall within the law enforcement exception because Verizon and Global Tel*link recorded all inmate calls, including Rivera's, pursuant to Arlington County's contractual authorization and under the County's supervision.

292 F. Supp. 2d at 842.

Just like the recordings at issue in *Rivera*, the recordings at issue in the present case fall within the Ordinary Course Exclusion because, when DePaepe listened to the recordings, she was acting pursuant to her employment with the South Bend Police Department and she was acting under the supervision and direction of the chief of police. Moreover, the argument that the Ordinary Course Exclusion should apply is even more compelling in this case than in *Rivera* because in this case, the recording equipment was owned and operated by the South Bend Police Department.

Accordingly, the Ordinary Course Exclusion should apply in this case regardless of whether Karen DePaepe was an "investigative or law enforcement officer." The undisputed evidence shows that, at all relevant times, the recordings at issue were captured by recording equipment being used by the chief of police in the ordinary course of his duties (namely, to document complaints against the police department and police personnel; to record and preserve information from anonymous tips; and to insure that calls being received were handled

correctly). There is no question that the chief of police is an "investigative or law enforcement officer."

### Summary Judgment In Favor Of The South Bend Common Council Should Be Made A Final, Appealable Judgment.

As noted previously, the City argues that if summary judgment is entered in favor of the South Bend Common Council, the Court should not make the necessary findings to make that judgment a final, appealable judgment. The City relies on 18 U.S.C. § 2517 in arguing "even if the recordings could be considered to fall within the law enforcement ordinary course exclusion, it must be determined whether the Council may be considered an 'investigative officer' for purposes of disclosure of the contents of the recordings and whether the 'may disclose' language in the statute gives the City discretion on whether or not to disclose recordings." (City's memorandum at p. 22.) As discussed in greater detail above, if the recordings are *excluded* from the Federal Wiretap Act under the Ordinary Course Exclusion, they are excluded from the Federal Wiretap Act for all purposes. Section 2517 does not operate to put any limitations on recordings that are not subject to the Wiretap Act. Summary judgment in favor of the Common Council should therefore be deemed a final and appealable order because there is no just reason for delay in entering final judgment in favor of the South Bend Common Council on part of the issues involved in this consolidated lawsuit.

### CONCLUSION

For the foregoing reasons, the South Bend Common Council respectfully requests the Court to grant its motion for summary judgment and find that there is no genuine issue of material fact and that the undisputed material facts establish that the recordings of the phone lines of the South Bend Police Department are not illegal or barred by the Federal Wiretap Act. The Common Council also requests the Court to enter judgment on the City of South Bend's

complaint for declaratory judgment by declaring that the recordings at issue are excluded from the Federal Wiretap Act pursuant to 18 U.S.C. § 2010(5)(a)(ii).

/s/Robert J. Palmer
E. Spencer Walton, Jr. (1000-71)
Robert J. Palmer (6316-71)
Attorneys for South Bend Common Council
**MAY • OBERFELL • LORBER**
4100 Edison Lakes Parkway, Suite 100
Mishawaka, IN  46545
Phone: (574) 243-4100
Fax: (574) 232-9789
rpalmer@maylorber.com

### **CERTIFICATE OF SERVICE**

I certify that a copy of the forgoing was served upon all attorneys of record via the Court's ECF system on February 13, 2014.

/s/Robert J. Palmer
Robert J. Palmer

F:\Clients\S1060\12001\Pleadings - Fed Ct\2014-02-13 Reply to Response to MSJ.docx2/13/2014