UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
SOUTH BEND DIVISION

| | | |
|---|---|---|
| CITY OF SOUTH BEND, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Cause No. 3:12-cv-475 |
| | ) | |
| SOUTH BEND COMMON COUNCIL, | ) | |
| *ET AL.,* | ) | |
| | ) | |
| Defendants. | ) | |

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

| | | |
|---|---|---|
| BRIAN YOUNG, SANDY YOUNG | ) | |
| TIMOTHY CORBETT, DAVID WELLS, | ) | |
| And STEVE RICHMOND | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| v. | ) | Cause No. 3:12-cv-532 JVB-CAN |
| | ) | |
| THE CITY OF SOUTH BEND, Acting | ) | |
| Through its Police Department, DARRYL | ) | |
| BOYKINS, Individually and in his Official | ) | |
| Capacity as Chief of Police, KAREN | ) | |
| DEPAEPE, and SCOTT DUERRING, | ) | |
| | ) | |
| Defendants. | ) | |

### REPLY IN SUPPORT OF THE CITY OF SOUTH BEND'S
### MOTION FOR SUMMARY JUDGMENT

The plaintiff, the City of South Bend (the "City"), by counsel, respectfully submits this Reply in Support of the City of South Bend's Motion for Summary Judgment.

### ARGUMENT

This case boils down to a single issue: whether the interception of Capt. Young's private telephone conversations occurred in the ordinary course of the South Bend Police Department's law enforcement activity. It did not. To establish the ordinary course exclusion under the

Wiretap Act, the capture of telephone calls must have occurred in the *ordinary course* of police business by a *law enforcement officer*.  Here the capture initially occurred without any action by a law enforcement officer; instead it occurred due to the inadvertent actions of the Chief of Police's administrative assistant.  Moreover, all parties agree that the Police Department had no routine pursuant to which it recorded all calls on the telephone lines assigned to individual officers in the ordinary course of their duties.  Accordingly, the recordings are not excluded from the coverage of the Wiretap Act.  Furthermore, because DePaepe learned of the error and did nothing to stop the continued recording of Young's assigned line, which resulted in the capture of all of the recordings at issue in this case, the recordings constitute a violation of the Wiretap Act.  And because neither the Council nor DePaepe raise any other exception or exclusion to justify the recordings, the City is entitled to summary judgment.

> **I.   The undisputed facts establish that no routine noninvestigative purpose for the recordings existed that would support the application of the law enforcement ordinary course exclusion.**

The law enforcement ordinary course exclusion excludes recordings from the coverage of the Wiretap Act when the recording system is "*being used* . . . by an investigative or law enforcement officer in the ordinary course of his duties."  18 U.S.C. § 2510(5)(a) (emphasis added).  To qualify for the exclusion, the recordings must have been made by an investigative or law enforcement officer as part of "routine noninvestigative recording" of communications.  *Amati v. City of Woodstock*, 176 F.3d 952, 955 (7th Cir. 1999).  Neither the Council nor DePaepe have designated any facts which establish that the Police Department had a policy, practice, or routine that in the normal course of law enforcement allowed the Chief of Police's administrative assistant to inadvertently record an individually assigned telephone line of a Captain of the

Investigative Division. Thus, the exclusion is inapplicable here, and the City is entitled to summary judgment.

> a. *The recordings of Young's assigned line do not fall within any Police Department recording routine.*

The record of undisputed facts reveals that the only lines which were recorded without regard to the assigned user within the Police Department were general use lines, such as the front desk and the communications center where 911 calls were received. Hammerlein Dep. Tr. 11:15-12:5; Fautz Dep. Tr. 5:22-6:3; 7:7-21; DePaepe Aff. ¶ 3. Beyond that, additional lines were recorded only at the specific direction of the Chief of Police in an *ad hoc* manner that failed to constitute any routine or general policy. Fautz Dep. Tr. 13:3-19; 24:17-24; Horvath Dep. Tr. 56:17-57:4; Boykins Dep. Tr. 52:16-21; DePaepe Aff ¶¶ 3, 5-6.[1] Neither the Council nor DePaepe meaningfully dispute that no policy, routine, or practice existed that called for the recording of Young's assigned line.[2] Rather, they contend that the recordings were made pursuant to the ordinary course of police work because "[t]he phone lines placed on the recording system were the lines assigned to a particular office" and that those "particular phone line[s] were recorded regardless of the individuals who were assigned to that office." Council's

---

[1] The lack of any formal Police Department policy passed by the Board of Public Safety further underscores that no routine existed that would permit the Police Department to intercept the conversations of an individual officer's assigned line without his or her knowledge or consent. For this reason alone, the exclusion does not apply. *Abraham v. City of Greenville*, 237 F.3d 386, 389 (4th Cir. 2001) (holding defendant violated the Act when it "did not have an established policy of monitoring the plaintiffs' calls.").

[2] DePaepe asserts that former police officer James Hassig's testimony that he did not ask to have his line recorded creates a dispute as to whether individual officers were able to choose to record their assigned lines. DePaepe Resp. Br., at ¶ 1. This purported dispute is immaterial because it fails to establish that any other type of policy or existed to permit the recording of individually assigned lines. Indeed, accepting Hassig's testimony only provides yet another example of an *ad hoc* approach and it underscores that no policy or routine existed that would permit the recording of Young's assigned line.

3

Resp. Br., at 14; DePaepe Aff., ¶ 12.  This conclusory assertion by DePaepe, masquerading as testimony, fails multiple times over.

As an initial matter, DePaepe's "particular line" theory lies in a vacuum of supporting evidence.  While general use lines, such as the front desk and communications center, were recorded regardless of the individual using the line, there exists no evidence at all to conclude that the Police Department had a policy or practice to record all individually assigned lines.  In fact, the evidence establishes the opposite—that individually assigned lines were recorded on an *ad hoc* basis at the request of the officer and direction of the Chief of Police.  Fautz Dep. Tr. 13:3-19; 24:17-24; Horvath Dep. Tr. 56:17-57:4; Boykins Dep. Tr. 52:16-21; DePaepe Aff ¶¶ 3, 5-6.  The line assigned to Bishop was recorded in this manner when he requested that Chief Fautz have it recorded.  <u>Exhibit O</u>:  Bishop Dep. Tr. 20:8-10; 27-29.  But the facts establish that, when the line was assigned to Young, no law enforcement officer ever made *any* decision to record *Young's conversations*.  DePaepe Dep. Tr. 44:2-8; Boykins Dep. Tr. 51-52 (stating that Young's line was recorded due to a "mixup somewhere in the lines.").  Accordingly, DePaepe's conclusory testimony is not entitled to be credited.  *Butts v. Aurora Health Care, Inc.*, 387 F.3d 921, 925 (7th Cir. 2004) ("[S]elf-serving statements in affidavits without factual support in the record carry no weight on summary judgment.").[3]

Moreover, DePaepe's assertion that lines were recorded by virtue of the physical office "regardless of the individuals who were assigned to that office" contradicts her own

---

[3] Even if the undisputed facts did not actually contradict this argument (including DePaepe's own testimony), the argument fails on its face.  If the Police Department had an ordinary course which recorded the " physical office" no matter who used it, the circumstances of this case reveal that they recorded the *wrong office!*  Thus, unless the ordinary course was to record *all offices all the time* (akin to *Amati's* "all calls"), the inadvertent recording of

*Footnote continued on next page . . .*

testimony in the same affidavit.  *Compare* DePaepe Aff., ¶ 13 *with* DePaepe Aff., ¶¶ 6-8. Indeed, DePaepe confirms elsewhere in her affidavit that Chief Fautz directed to her to record "the phone line *assigned to* the Detective Bureau Chief [also known as Investigative Division Chief]."  DePaepe Aff., ¶ 7 (emphasis added).  This testimony reinforces other evidence that individual lines were recorded at the direction of the Chief of Police pursuant to an *ad hoc* decision-making process.  Fautz Dep. Tr. 13:3-19; 24:17-24; Horvath Dep. Tr. 56:17-57:4; Exhibit F: Boykins Dep. Tr. 52:16-21; DePaepe Aff ¶¶ 3, 5-6; Bishop Dep. Tr. 20:8-10; 27-29. Fautz further confirms that he added lines to the recording system, including Bishop's, at the request of the individual to be recorded.  Fautz Dep. Tr. 11:9-21; 35:6-9.  As noted, Bishop also confirmed that he asked for Chief Fautz to record his assigned line.  Bishop Dep. Tr. 20:8-10; 27-29.

In addition to the problems with DePaepe's testimony, the history associated with the physical line *before* it was assigned to Young is immaterial to whether the Police Department recorded Young's conversation in the ordinary course of police business.  This particular line was not only relocated to a *different* office, but also re-assigned to a *different* officer of a *different* rank several years after Bishop requested to have his own assigned line recorded.  *See* City's Resp. Br., at 7-9.  The arguments of Council and DePaepe simply ignore these different circumstances and motivations that existed at the time the line was assigned to Young.  The record shows clearly that the recording of Young's assigned line did not spring from the same so-called routine that led to the recording of Bishop's assigned line.  The Council and DePaepe

---

Brian Young's office when the alleged routine was to record Rick Bishop's old office, creates the exact same problem and gives no support to the notion that the exclusion applies.

5

cannot legitimately cleave off the rationale from the unique circumstances of Bishop and graft it onto the unique circumstances of Young and deem it the ordinary course of the Police Department.  The recording of Young must be considered separately for the purposes of applying the law enforcement exclusion.  *Abraham*, 237 F.3d at 390 ("[C]ourts 'have considered different categories of phone calls recorded by a single recording system separately for application of the law enforcement exception.'").

Similarly, the recording of Young's assigned line must be considered separately from the way the Police Department handled other lines connected to the DIR recording system.  See *id*.  "The law enforcement exception does not authorize all conversations to be recorded by a wiretapping device so long as the device captured some conversations in the ordinary course of a law enforcement officer's duties."  *Id.*  Otherwise, the law enforcement exclusion would swallow the rule by permitting "law enforcement agencies [to] record all of the telephone lines in a building so long as some lines were monitored in the ordinary course of the law enforcement officers' duties."  *Id.*  Thus, even if the Police Department properly recorded certain general use lines and even if its practice of adding additional lines in an *ad hoc* manner could comply with the Wiretap Act, such compliance in those situation cannot "bleed over" and create compliance for the recording of Young.

Neither the Council nor DePaepe can establish any policy, practice or routine which permitted the recording of Young's assigned line under the law enforcement exclusion and the City is entitled to summary judgment.  *Abraham v. City of Greenville*, 237 F.3d 386, 389 (4th Cir. 2001) (holding defendant violated the Act when it "did not have an established policy of monitoring the plaintiffs' calls.").

    b.  <u>The recordings were initially inadvertent and could not have been recorded pursuant to any routine even if one existed.</u>

Even if the Council and DePaepe could establish the existence of some routine for handling the recording of assigned lines, the undisputed facts still would not support the application of the law enforcement exception in this case. No party disputes that the switching of offices and relocation of phone lines by an administrative assistant caused Young's assigned line to be initially recorded inadvertently. It is unreasonable to suggest that an inadvertent and unintended act can also constitute the ordinary course of law enforcement. Indeed, recordings that are a product of a mistake are "not a legitimate surveillance activity because [they do] not occur in the ordinary course of the [interceptor's] law enforcement duties." *Abraham*, 237 F.3d at 391. Accordingly, the Fourth Circuit has expressly declined to "expand the scope of the law enforcement exception to cover [an] alleged good faith mistake." *Id.* No party to this lawsuit disputes the fact that no one had any *specific* intent to record *Young's conversations*. DePaepe Dep. Tr. 44:2-8; Boykins Dep. Tr. 51-52 (stating that Young's line was recorded due to a "mixup somewhere in the lines."). DePaepe's own testimony confirms that she believed the recorded line was assigned to Richmond and "somehow this line had been switched." DePaepe Dep. Tr. 44:2-8. This mistake plainly takes the recording of Young's assigned line outside of the ordinary course exclusion regardless of how the Police Department's recording routine is characterized. *Abraham*, 237 F.3d at 391.

To escape this result, the Council unconvincingly asserts that the mistaken assignment is "wholly irrelevant" because the decision to record the line several years earlier was "based on the *physical office* to which that line was routed, not the particular individual that would be using that line." Council's Resp. Br., at 14. As noted above, this argument contradicts the undisputed facts in the record. DePaepe was instructed by Chief Fautz to record "the phone line of the Detective Bureau Chief," which was Bishop. DePaepe Aff., ¶ 7. She was not told to record a

7

particular office regardless of who used it. No party can dispute that the original decision to record the line was not based upon considerations of recording *the physical office.* In the same vein, the recording of Young did not come about because some law enforcement officer determined that the "physical office" Young was moving into should be recorded. Quite simply, no evidence exists which indicates that the Police Department ever made a decision to record the "physical office" of Bishop, Richmond, or Young for the sake of recording indiscriminately whoever happened to be using that "physical office." The actions which led to assigning 6031 Number to Young are completely distinct from the original purpose for recording that line when it was assigned to a different officer of a different rank in a different office and cannot be conflated.

*Abraham* supports this conclusion and is not distinguishable merely because it involved the recording of judges. Like the instant case, the system of recording in *Abraham* was *intended* to be used in the ordinary course of law enforcement, did not record *all* lines, the users of some lines knew they were being recorded but others did not, and the recorded lines in question were recorded by mistake. *Id.* at 388. The County defendant in *Abraham* argued that the ordinary course of law enforcement exclusion removed these recordings from the Wiretap Act. The court declined to apply the exclusion because, as here, the police department "did not have an established policy of recording plaintiffs' calls" and because the law enforcement exception does not cover "an alleged good faith mistake." *Id.* at 390-91.

The County in *Abraham* also argued that the "pertinent" question was whether the recording *device* itself was installed for a "legitimate law enforcement purpose." But, the Court

rejected that argument as well and noted: "Under the exception, some uses of the recording device are excused, while others are not." *Id.* at 390, *citing Amati*, 176 F.3d at 955-56.[4] Concluding that Congress could not have intended to permit "law enforcement agencies [to] record all of the telephone lines in a building so long as some lines were monitored in the ordinary course of the law enforcement officer's duties . . ." the court noted it would not read the ordinary course exclusion "to allow a single recording device to deconstruct the whole system of separation of powers . . ." *Id.*[5]

The Court held that the "recording of the judges was not a legitimate surveillance activity because it did not occur in the ordinary course of the County's law enforcement duties." *Id.* at 391. The dispositive factors in *Abraham* closely parallel the dispositive factors in this case—the inadvertent recording of conversations that did not fall within any established police department policy—and the same result should be reached in this case. Because the recording of Young's conversations was inadvertent and not pursuant to any Police Department routine, the law enforcement exception is inapplicable.

    c. *Amati does not control the outcome of this case because it involved an entirely different factual scenario.*

In each of their responses to the City's Motion for Summary Judgment, the Council and DePaepe greatly rely on *Amati* and attempt to characterize the City's argument as

---

[4] The fact that the *Abraham* Court relies on the rationale in *Amati* gives added strength to the City's position. No conflict exists between the City's argument and the holding in *Amati*.

[5] The court's brief mention of separation of powers, improperly characterized by the Council as "dispositive," occurred in the context of considering "different categories of phone calls recorded by a single recording system separately for application of the law enforcement exception." *Abraham*, 237 F.3d at 390.

inconsistent with its holding. But, the City's argument actually rests on a proper understanding of *Amati* and of the differences in the factual record between *Amati* and the case at bar.

As noted in the City's previous briefing, *Amati* involved a police department policy of recording *all* incoming and outgoing calls on *all* police department telephone lines. *Amati*, 176 F.3d at 956 (noting the police department "record[ed] all calls on all its lines" with a single exception for personal calls); *see also Jandak v. Village of Brookfield*, 520 F.Supp. 815, 817-818 (N.D. Ill. 1981) (noting the police department recorded calls on all of its lines with a single exception for personal calls). As an initial matter, the limited capabilities of the DIR recording system make factual comparison with *Amati* difficult. The DIR recording system had the capacity to record only forty-eight of the Police Department's approximately 200 lines. Diana Scott Dep. Tr. 98:20-99:6. Thus, the Police Department only routinely recorded a few specific general use lines and not lines assigned to individuals. By contrast, in *Amati* the "Woodstock police department began recording all calls on all its lines" except for a single line intentionally left untapped to allow for personal calls. *Amati*, 176 F.3d at 954-55; *see also Jandak*, 520 F.Supp. at 817-18 (noting the police department had "ten telephone lines" and "[t]he telephone company connected nine of the lines to a recording system" while the tenth line was for personal calls, and was "not monitored.").

The Council contends that the holding of *Amati* cannot be limited to policies involving the recording of all calls on all lines. But, clearly the *Amati* holding was built upon the principle that "[t]o record *all calls* to and from a police department is, for the reasons explained earlier, a *routine police practice*." *Amati*, 176 F.3d at 955 (emphasis added). But, even if that crucial distinguishing fact were set aside, *Amati* would still without question require the defendants to establish that the recordings at issue were captured pursuant to *some* regular and

acceptable routine.  *Id.* (noting ordinary course exclusion is "reasonably interpreted to refer to routine noninvestigative recordings of telephone conversations.").  As the City has established above, they were not.  Thus, the *Amati* case does not support the arguments of the Council or DePaepe.

The inadvertent nature of the interception in this case further distinguishes the recordings here from those in *Amati* and does not depend upon the key fact of all calls on all lines.  As noted above, in *Amati* a single line was left untapped for personal phone calls.  When an "investigation was stymied by the fact that the call had not been recorded . . . the *department* decided to tape record calls" on that line.  *Id.* (emphasis added).  The *Amati* Court, thus, analyzed whether eliminating the one exception to an established policy was consistent with the ordinary course of law enforcement exclusion.  As the *Amati* Court describes it:

> [T]he decision to tap [the unrecorded line] was precipitated by an official use of the line which showed it had been a mistake to leave it untapped. . . Rather than being outside the ordinary course of law enforcement, the decision *brought the line within that course*.

*Amati*, 176 F.3d at 956 (emphasis added).

Here, by contrast, no ordinary course existed and no law enforcement officer ever made a decision to record Young's assigned line at all, let alone to bring it within a Police Department routine.  In *Amati*, "the *department* decided" to record a previously unrecorded line.  In the instant case, the "*department"* never decided.  Rather, recording of Young's line occurred when Barb Holleman switched the lines from one office to another, inadvertently capturing Young's conversations.  Holleman, as an administrative assistant to the Chief of Police, is not a law enforcement officer as that term is defined in the Wiretap Act.  18 U.S.C.§ 2510(7) (defining "Investigative or law enforcement officer" as "any officer of the United States or of a State or political subdivision thereof, who is empowered by law to conduct investigations of or to make

11

arrests for offenses enumerated in this chapter . . .").[6]  The line she assigned to Young had originally been connected to the recording device as a result of a choice by a prior Division Chief for his own specific purpose.  Thus, the unilateral, random, and arbitrary act of Holleman cannot be equated with the official exercise of administrative judgment by the police department that occurred in *Amati*.  *See id.* at 955 ("So, the *department* decided to tape record calls on [that line].") (emphasis added).  Holleman's actions, without more, cannot be considered the "ordinary course" of the Police Department's duties.  *Abraham*, 237 F.3d at 389 (holding that the law enforcement exclusion does not apply to lines that were recorded by mistake).

Moreover, neither DePaepe nor the Council have designated any evidence to foreclose the possibility that the *Amati* boundary was crossed.  As set forth in *Amati*:

> The *boundary* is between routine noninvestigative uses of electronic eavesdropping and its use either as a tool of investigation (which requires a warrant) or as a device for intimidation, suppression of criticism, blackmail, embarrassment, or other improper purposes.

*Amati*, 176 F.3d at 956 (emphasis added).  Although the recordings were initially captured by mistake, DePaepe became aware of the mistake in early 2011 and did nothing to stop the recordings.  Rather, she continued listening to conversations captured from Young's assigned line for *several more months* without any instruction from a law enforcement officer that she

---

[6] To be clear, the City does not contend that some person who holds a badge had to physically accomplish the wiring required here.  No dispute exists with the Council or DePaepe that Barb Holleman acted within the scope of her job when she attended to the task of giving Division Chief Richmond the telephone number he wanted.  But, as a result, she provided to Young the line previously assigned to former Division Chief Bishop, which had the inadvertent and unintended effect of recording Young's calls.  And, since Young never requested that his calls be recorded and, more importantly, no *law enforcement* officer ever established a policy, practice or routine to record Young, or to record the *physical office* he occupied, or the *rank* he held, or all officers with assigned lines, or all officers on the command staff or any other category, then her actions cannot be held to be those of a "law enforcement officer" under 18 U.S.C. § 2510(7).

12

listen to Young's conversations.  City's Resp. Br., at 9-10.  Similarly, DePaepe informed Boykins of the recordings as early as March 2011, when Boykins already had been informed of the lines being recorded and he should have known Young's assigned line was not among them.  DePaepe Dep. Tr. 66:19-67:3.  Thus, the Police Department had notice that Young's line was being recorded but it was *not* being done pursuant to a non-investigative routine.  However, DePaepe (acting on her own) reviewed the recordings and eventually placed certain conversations on cassette tapes and provided them to Boykins, with neither of them having informed Young that his line was being recorded.  City's Resp. Br., at 10-11.  Thus, the undisputed facts show that an "investigation" occurred that was not pursuant to a warrant.  None of the "improper purposes" that concerned the *Amati* court have been disproven.

### II. There is no dispute that the capture of Young's telephone communications constitutes a violation of the Wiretap Act.

An intentional interception of a wire, oral, or electronic communication constitutes a violation of the Wiretap Act.  18 U.S.C. § 2511(1)(a). With its moving brief, the City has designated uncontroverted evidence that the recordings constitute a *prima facie* violation of the Act as a matter of law.  City's Summ. J. Br., at § II; *see also Amati*, 176 F.3d at 954 (recording of police department telephone calls fell within the scope of the Act).  Neither the Council nor DePaepe dispute this, instead contending that the recordings are excluded from the Wiretap Act by the law enforcement ordinary course exclusion.  *See, e.g.*, Council's Resp. Br., at 1.  Indeed, the Council concedes that the recordings were intentional for the purposes of the Act and DePaepe incorrectly asserts that her own actions were "entirely irrelevant." Council's Resp. Br., at 14.  As the City has explained, however, DePaepe's inaction upon discovering that the line assigned to Young was inadvertently being recorded establishes, as a matter of law, that the recordings were intentional.  *See* City's Summ. J. Br., at § II; *Narducci v. Moore*, 444 F. Supp.

2d 924, 935-936 (N.D. Ill. 2006) ("Nor is an affirmative act, rather than an omission, required. It is enough to be aware that such interception is occurring and to fail to stop it.") (emphasis added). Each of the recordings at issue in this case were captured by the DIR recording system *after* DePaepe learned of the error and failed to take any corrective action. *See* City's Summ. J. Br., at 16-17. The Council and DePaepe do not dispute these facts, or the inevitable conclusion that the recordings constitute a *prima facie* violation of the Act. And because no applicable exception or exclusion applies, the recordings constitute a violation of the Wiretap Act. *Cf. Amati v. City of Woodstock*, 176 F.3d 952, 954 (7th Cir. 1999).

## CONCLUSION

The undisputed facts establish that recordings at issue in this case are not excluded from the Wiretap Act under the law enforcement ordinary course exclusion. Furthermore, there is no dispute that the recordings constitute a violation of the Wiretap Act. Accordingly, and for all of the reasons set forth in the City's collective summary judgment briefing, the City's motion for summary judgment should be granted, and the motions filed by the Council and DePaepe should be denied.

Respectfully Submitted,

FAEGRE BAKER DANIELS LLP

                                       /s/ Edward A. Sullivan III
                                       Edward A. Sullivan, III (17577-71)
J.P. Hanlon (21230-71)
Ryan G. Milligan (28691-71)
FAEGRE BAKER DANIELS LLP
202 S. Michigan St., Suite 1400
South Bend, Indiana 46601
Phone:  574.234.4149
Facsimile:  574.239.1900

Aladean DeRose (4495-71)
City Attorney
227 West Jefferson Blvd., Suite 1400
South Bend, Indiana 46601
Phone:  574.235.9241
Facsimile:  574.235.7670

*Counsel for the City of South Bend*

## CERTIFICATE OF SERVICE

      I certify that on the 13th day of February, 2014, a copy of the foregoing was served upon the following parties and counsel of record through either the Court's electronic filing system or by U.S. Mail, postage prepaid:

dms.us.53653395.02

| | |
|---|---|
| Jeffrey S. McQuary<br>BROWN TOMPKINS LORY & MASTRIAN<br>608 East Market Street<br>Indianapolis, IN 46202<br>jmcquary@brown-tompkins-lory.com<br>*Counsel for Respondents Brian Young, Tim Corbett, Dave Wells, Sandy Young, Steve Richmond* | Daniel H. Pfeifer<br>Jeffrey J. Stesiak<br>PFEIFER MORGAN & STESIAK<br>53600 N. Ironwood Drive<br>South Bend, IN 46635<br>dpfeifer@pilawyers.com<br>jstesiak@pilawyers.com<br>*Attorney for Respondents* |
| Robert J. Palmer<br>E. Spencer Walton<br>Christopher M. Lerner<br>MAY · OBERFELL · LORBER<br>4100 Edison Lakes Parkway, Suite 100<br>Mishawaka, IN 46545<br>rpalmer@maylorber.com<br>ewalton@maylorber.com<br>Clerner@maylorber.com<br>*Counsel for South Bend Common Council* | Marielena Duerring<br>Duerring Law Offices<br>61191 US 31 South<br>South Bend, IN 46614<br>(574) 968-0250<br>attymduerring@aol.com<br>*Counsel for Karen DePaepe and Scott Duerring* |
| Thomas M. Dixon<br>Dixon, Wright & Associates, P.C.<br>55255 Birchwood Court<br>Osceola, IN 46561<br>574-315-6455<br>Fax: 574-675-7783<br>Email: tdixon3902@comcast.net<br>*Counsel for Darryl Boykins* | |

                                                    s/ Ryan G. Milligan

dms.us.53653395.02