UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
HAMMOND DIVISION

| | | |
|---|---|---|
| CITY OF SOUTH BEND, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Cause No. 3:12-CV-475 |
| | ) | |
| SOUTH BEND COMMON COUNCIL, ET AL., | ) ) | |
| | ) | |
| Defendants. | ) | |

**************************************************************************

| | | |
|---|---|---|
| BRIAN YOUNG, SANDY YOUNG TIMOTHY CORBETT, DAVID WELLS, And STEVE RICHMOND | ) ) ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | Consolidated |
| v. | ) | Cause No. 3:12-CV-532 |
| | ) | |
| THE CITY OF SOUTH BEND, Acting Through its Police Department, DARRYL BOYKINS, Individually and in his Official Capacity as Chief of Police, KAREN DEPAEPE, and SCOTT DUERRING, | ) ) ) ) ) ) | |
| | ) | |
| Defendants. | ) | |

## PRETRIAL ORDER

Pursuant to the order of the Court, the attorneys for the parties to this action appeared before the United States District Judge at Hammond, Indiana, at 3:00 p.m. on July 9, 2014 for a telephonic conference under Fed. R. Civ. P. 16.  The plaintiff, City of South Bend (the "City"), was represented by Edward A. Sullivan III and Ryan G. Milligan of Faegre Baker Daniels.  Defendants Brian Young, Sandy Young, Timothy Corbett, David Wells, and Steve Richmond (the "532 Plaintiffs") were represented by Daniel H. Pfeifer of Pfeifer, Morgan & Stesiak.   Defendants Karen DePaepe and Scott Duerring were represented by Marielena

Duerring of Duerring Law Offices.  Defendant South Bend Common Council (the "Council") was represented by Robert J. Palmer of May Oberfell Lorber.

Thereupon, the following proceedings were had and the following engagements and undertakings arrived at:

A. Jurisdiction was found by the Court to be present in its January 14, 2013 Opinion and Order [Doc. No. 51] and is conceded by the City and 532 Plaintiffs, but is not conceded by the Council or DePaepe.

B. The case at issue is the City's Complaint for Declaratory Judgment and the answers of the Council and the 532 Plaintiffs to the Complaint as well as a consolidated action filed by the 532 Plaintiffs under Cause Number 3:12-CV-532.

C. There are pending motions for summary judgment that the Court has indicated it will deny.  There is also a pending Motion to Strike a portion of the City's summary judgment evidence that the Court has indicated will be rendered moot by its denial of the parties' motions for summary judgment.  There are no other pending motions at this time, but the 532 Plaintiffs will be dismissing DePaepe and Duerring as defendants in the consolidated case no. 3:12-cv-532.  The Council may file a motion regarding its demand for a jury trial.

D. The City seeks a declaratory judgment regarding the legal status of recordings of certain phone conversations (the "Recordings") that were captured by the South Bend Police Department (the "Police Department").  The Council has issued a subpoena to the South Bend City Administration (the "Subpoena"), requesting copies of the Recordings, which were the subject of a Department of Justice investigation into whether certain recording practices of the Police Department violated federal law.  The City, faced with multiple requests for production of the Recordings, including the Subpoena, as well as civil litigation, seeks a

declaration pursuant to the Declaratory Judgment Act, 28 U.S.C. § 2201 and Fed. R. Civ. P. 57 to determine its obligations with respect to the Recordings and a determination of whether the Recordings violated the Federal Wiretap Act, 18 U.S.C. § 2511, and whether disclosure of the Recordings by the City pursuant to a valid subpoena would violate the Federal Wiretap Act.  The City and the 532 Plaintiffs contend that the Federal Wiretap Act applies to the Recordings because the underlying conversations placed on the Recordings were intercepted "through the use of any electronic, mechanical, or other device."  The statutory definition of "electronic, mechanical, or other device" contains an exclusion for any interception which utilizes an electronic, mechanical or other device *other than* a device "being used by a . . . a law enforcement officer in the ordinary course of his duties."  *See* 18 U.S.C. § 2510 (5)(a)(ii).  The City contends that the Recordings were not captured in the ordinary course of the Police Department's law enforcement duties because (a) the Recordings were captured mistakenly  as a result of inadvertent actions taken by an administrative assistant and (b) the Recordings were not captured pursuant to any routine, practice, or policy of the Police Department.

    E. The Council contends that the Federal Wiretap Act does not apply to the Recordings pursuant to the Ordinary Course Exclusion and therefore the Recordings were not captured in violation of the Federal Wiretap Act.  The Council also contends that all telephone calls that were intercepted by the Police Department were done in the ordinary course of the business of the Police Department because any telephone line being recorded was being recorded indiscriminately 24 hours a day, seven days a week, 365 days a year and that the interceptions were only done for the purposes of preserving evidence of citizen complaints against officers or evidence from anonymous tips that would assist in law enforcement investigations.

F.  The facts established by admissions in the pleadings or by stipulation of counsel are:

1. The practice of recording certain, but not all, incoming telephone lines to the Police Department, dates back to at least 1998--1999.

2. The underlying recordings at issue in this case were made by the Police Department's Dynamic Instruments Reliance ("DIR") recording system, a server-based analog recording system installed by Police Department in 1998.

3. The predecessor to the DIR system at the Police Department was a Reel-to-Reel Recording System.

4. The upgraded system had the capacity to record 48 separate channels with each channel having capacity to handle one individual phone line, one individual base station, or one radio channel. The DIR system did not have the capacity to record all incoming telephone lines to the Police Department.

5. To record a particular telephone line, the Police Department would have to contact a third-party vendor to connect the line to the DIR recording system. The particular line to be recorded had to be hardwired in the recording system. If a line was not hardwired into the system, the system would not record any conversations on that phone line.

6. Once a particular phone line was wired into the recording system, the recording system would record everything it "heard" on that line

regardless of who was speaking on the line, the content of the conversation, or the time of day of the conversation. Anything so recorded would be stored on the recording system's hard drive and would be downloaded automatically to a disk for backup and storage purposes.

7. All of the conversations at issue were automatically intercepted by the DIR and recorded on its hard drive prior to any subsequent listening or recording of the conversations.

8. The DIR system was maintained by Police Department Communications Director Karen DePaepe, who began serving in that position on July 1, 1998.

9. Any adding or deleting recorded lines would be coordinated through DePaepe and the Chief of Police who instructed DePaepe on any changes to the system that had been determined.

10. DePaepe was not an officer of the Police Department. Nor was she an "investigative or law enforcement officer" as that term is defined under 18 U.S.C. 2510(7).

11. At all relevant times, the Board of Public Safety had not promulgated and did not have any written policy regarding the recording of telephone lines within the Police Department.

12. The Police Department never adopted a procedure, practice, or routine of recording all of the incoming and outgoing lines into the Police Department.

13. In 2007, when Chief Darryl Boykins was appointed Chief of Police to succeed Chief of Police Thomas Fautz, the same phone lines being recorded under Chief Fautz continued to be recorded on the DIR system.

14. Within his first year of becoming Chief of Police, Boykins learned of the prior decisions on recording.

15. Boykins made no changes to any of the lines that were recorded, specifically adopted the approach of Chief Fautz, and issued no written or oral directive to create a policy, procedure, practice or routine and none was implemented during his tenure.

16. DePaepe believed she was only permitted to intercept and record a telephone line or remove a line from the DIR recording system at the direction of the Chief of Police.

17. Around February 12, 2010, during Boykins tenure as Chief of Police, Steve Richmond was promoted from a Captain in the Investigative Division to Chief of the Investigative Division. Richmond succeeded Rick Bishop in the position, who had succeeded Gene Kyle. Both of the prior Investigative Division Chiefs were aware that their lines were connected to the DIR system.

18. Upon receiving his promotion, Richmond was assigned to the office that had been occupied by former Investigative Division Chief Bishop.

19. At the same time that Richmond was promoted to Division Chief, Young was promoted to replace Richmond's former position as a

Captain in the Investigative Division and assigned to occupy Richmond's former office. Young did not ask to have his prior assigned phone number follow him to his new office as Captain.

20. Richmond wanted to maintain his assigned phone number after his promotion and new office assignment.

21. Barbara Holleman, the administrative assistant to the Chief of Police, performed the task of switching the lines that were connected to Richmond's former office and new office. In the process of transferring Richmond's phone number (235-7473) to his new office, she transferred the phone number in the office that Richmond was going to occupy (245-6031) to the office that was now assigned to Young. Unbeknownst to Holleman and Young, that line had previously been wired into the DIR system.

22. No one was aware when Young took over his new office that his line was recorded. No one informed Young when he moved into his new office that his calls were being recorded.

23. Sometime around January of 2011, while performing troubleshooting on the DIR recording system, DePaepe discovered that Young's line was being recorded.

G. The contested issue of fact is whether the capture of the conversations on the telephone line assigned to Brian Young occurred in the ordinary course of the Police Department's law enforcement duties.

H. There are no contested issues of law that are not implicit in the foregoing

issue of fact.

I. The City and 532 Plaintiffs further make the following factual contentions, which are not stipulated to by the Council.

1. Telephone lines in the Police Department run from the point where the line initially enters the building into a small room containing a "punch block" and then from there to another small room containing the next punch block which controls the telephone lines in specific areas of the building and then from there to an individual office.

2. To connect a line to the DIR server, the vendor adds an additional copper wire to the initial punch block (in a slot for the line that is to be recorded) then runs that additional wire to a separate punch block located near the DIR server and then from that punch block directly to the DIR server.

3. The last punch block located near the offices where the lines are directed allows the Police Department to alter the path of a particular telephone line in that area of the building such that changing its location on the punch block would cause the line (and associated number) to be directed to a different office. However, that change would not affect the connection of that line to the DIR server because the wire connecting a line to the DIR server occurs "upstream" from the individual offices.

4. Once a line was hard-wired into the DIR system, the system would record every conversation that occurred on that line, twenty-four hours

a day, seven days a week, to a hard drive and a backup DVD system.

5. Over time, certain general use lines had been routinely recorded regardless of their user, including three front desk lines, the police chief's lines, the communications center lines, and 911 lines.

6. At no time did any Chief of Police order the recording of all calls of a specific type of rank or position on the command staff within the Police Department.

7. In 2007, when Chief Darryl Boykins was appointed Chief of Police to succeed Chief of Police Thomas Fautz, the same phone lines being recorded under Chief Fautz continued to be recorded on the DIR system.

8. DePaepe created a list of the lines recorded by the DIR system and either DePaepe or Holleman would ask Boykins each year if there were any changes to the lines to be recorded. Boykins never made any changes.

9. Because Richmond wanted to keep the individual phone number that had been previously assigned to him as Captain—574-235-7473 (the "7473 Number")—he contacted Barbara Holleman, Secretary to the Chief of Police, and asked her to ensure that the 7473 Number would follow him to the new office he would occupy as Division Chief.

10. At the same time that Richmond was promoted to Division Chief, Young was promoted to replace Richmond's former position as a Captain in the Investigative Division and assigned to occupy

Richmond's former office. Young did not ask to have his prior assigned phone number follow him to his new office as Captain.

11. To accomplish the task that Richmond requested, Holleman had to make changes in the punch block that was closest to the offices to be occupied by Richmond and Young. Because Holleman was moving Richmond's 7473 Number away from the office previously occupied by Richmond to the new office to be occupied by Richmond, she unplugged the line with the number of 574-245-6031 (the "6031 Number" which was previously used by Rick Bishop) from the punch block location that led to Richmond's new office so that she could plug into that punch block location Richmond's 7473 line. Holleman then had to re-direct the 6031 line to a different punch block location (and therefore to a different office location) and she chose to direct that line to Richmond's old office which was about to be occupied by Young as the new Captain of the Investigative Division.

12. The 6031 Number (previously utilized by Bishop) had been previously wired to the DIR system at a point "upstream" from the punch block where Holleman had performed her task.

13. When Holleman made the switch, she was not aware of the fact that the line carrying the 6031 Number had previously been hard-wired into the DIR server and she did not detach the line carrying the 6031 Number from the DIR server.

14. This had the effect of continuing to have the 6031 line connected to

the DIR system, and therefore for the first time recording all calls on a line assigned to Young.

15. No one intended to record Young's assigned line. No one was aware when Young took over his new office that his line was recorded. No one informed Young when he moved into his new office that his calls were being recorded.

16. Sometime around January of 2011, while performing troubleshooting on the DIR recording system, DePaepe discovered that Young's line was being recorded in error.

17. Young did not consent to the recording of his assigned line and did not discover that the line was being recorded until October 2011 at the earliest.

J. Exhibits may include the following:

1. January 4, 2012 Officer's Report from Karen DePaepe, Director of Communications, to Darryl Boykins, Chief of Police

2. Sworn Statement of Thomas H. Fautz (October 23, 2012)

3. Federal Bureau of Investigation Receipt for Property Received/Returned/Released/Seized (June 4, 2012)

4. South Bend Police Department General Order, Office of Professional Standards (February 23, 2009)

5. Recorded Telephone Lines List

6. Position Description, Communications/IDACS Director

7. Sworn Statement of Brent Hemmerlein (November 20, 2012)

8. Email from Karen DePaepe to Gary Horvath including attachment of recorded audio lines (August 29, 2011)

9. Sworn Statement of Phillip Trent (November 1, 2012)

10. Sworn Statement of Robert Lanchsweerdt (November 1, 2012)

11. South Bend Police Department General Order, Internal Affairs Office Professional Standards, Employee Rights Section

12. Subpoena to Testify Before a Grand Jury to the South Bend Police Department (February 8, 2012)

13. Sworn Statement of Richard Bishop (January 15, 2013)

14. Letter from Aladean DeRose, Chief Assistant City Attorney, to Nancy Bruce, ABC 57 News (July 21, 2011)

15. South Bend Police Department Access to Public Records Request from Nancy Bruce (July 20, 2011)

16. Dynamic Instruments Reliance recording system screen shot, "Group Search Hard Drive" page.

17. Dynamic Instruments Reliance recording system screen shot, "Play Control" page.

18. Letter from David Capp, United States Attorney, to Aladean DeRose, Acting City Attorney (May 31, 2012).

19. South Bend Police Department Telephone Directory.

20. Any and all documents pertaining to the South Bend Police Department's communications systems, including but not limited to documents related to the telephone system and Dynamic Instruments

    Reliance recording system.

21. Photographs of the Police Department's communications systems.

22. All pleadings and other documents filed in the above-captioned matter, with any exhibits thereto.

23. All transcripts of any depositions taken in the above-captioned matter, with any exhibits thereto, including deposition transcripts for the depositions of the following persons:

    a. Karen DePaepe

    b. Darryl Boykins

    c. Richard Bishop

    d. Thomas Fautz

    e. Brent Hemmerlein

    f. Barbara Holleman

    g. Gary Horvath

    h. Robert Lanchsweerdt

    i. Steve Richmond

    j. Diana Scott

    k. Phil Trent

    l. Jeffrey Walters

    m. Sandra Young

24. Any documents produced or identified by any party in discovery.

25. Any written discovery exchanged by the parties in discovery.

26. Any documents used by any party in connection with pre-trial

motions.

27. Any documents identified on any disclosures and preliminary or final exhibit lists served and/or filed by any party.

28. The authenticity of exhibits used in depositions or exchanged in discovery, as well as deposition transcripts, is stipulated by the parties subject to objections, if any, by the opposing party at the trial.

29. The parties will exchange any exhibits that may be used at trial in accordance with the Court's July 1, 2014 Scheduling Order and Order for Bench Trial.

K. Witnesses:

1. The City's witnesses may include any or all of the following:

    a. Karen DePaepe
    b. Darryl Boykins
    c. Richard Bishop
    d. Thomas Fautz
    e. Brent Hemmerlein
    f. Barbara Holleman
    g. Gary Horvath
    h. Robert Lanchsweerdt
    i. Steve Richmond
    j. Diana Scott
    k. Phil Trent
    l. Jeffrey Walters

  m.  Sandra Young

  n.  Brian Young

  o.  Sal Parisi

  p.  Any witnesses identified on any disclosures and preliminary or final witness lists served and/or filed by any party.

  q.  Any and all witnesses who are in any way necessary for rebuttal or impeachment but unknown at this time.

  r.  Records custodians for any documents that the parties intend to introduce at the trial of this cause of action.

2. The 532 Plaintiffs' witnesses may include the following:

  a.  Any witness listed by the City

  b.  Darrel Gunn

  c.  Phil Trent

  d.  Professor G. Robert Blakey

  e.  Tim Terrio

  f.  Chuck Hurley

3. The Council's witnesses may include any or all of the following persons:

  a.  Stephen Campbell

  b.  James Hassig

  c.  Eugene Kyle

  d.  Any witnesses identified on any disclosure and preliminary or final witness lists served and/or filed by any party, including

but not limited to any witness identified in this pretrial order.

  e. Any and all witnesses who are in any way necessary for rebuttal or impeachment but unknown at this time.

  f. Records custodian for any documents that the parties intend to introduce at trial.

 4. In the event that there are to be other witnesses to be called at trial, their names and addresses and the general subject matter of their testimony will be reported to opposing counsel, with a copy to the Court, at least ten (10) days prior to trial. Such witnesses may be called at trial only upon leave of Court. This restriction shall not apply to rebuttal or impeachment witnesses, the necessity of whose testimony cannot reasonably be anticipated before trial.

L. The Council contends that it is entitled to a jury trial on the issues presented in this Pretrial Order and will file a brief to address the issue.

M. No amendments to the pleadings are anticipated.

N. Trial briefs shall be filed with the Court and exchanged among counsel by August 7, 2014 pursuant to the Court's July 1, 2014 Scheduling Order and Order for Bench Trial.

O. The following additional matters pertinent to the trial will be considered: Pursuant to the Declaratory Judgment Act, "Further necessary or proper relief based on a declaratory judgment or decree may be granted, after reasonable notice and hearing, against any adverse party whose rights have been determined by such judgment." 28 U.S.C. § 2202. The 532 Plaintiffs request that if the Court declares the Recordings were captured in violation of the

Wiretap Act, a permanent injunction be issued by the Court prohibiting disclosure of the Recordings without a further hearing.

P. This pre-trial order has been formulated after conference at which counsel for the respective parties have appeared. Reasonable opportunity has been afforded counsel for corrections or additions prior to signing by the Court. Hereafter, this order will control the course of the trial and may not be amended except by consent of the parties and the Court to prevent manifest injustice. The pleadings will be deemed merged herein.

Q. The parties have discussed settlement, but have been unable to reach an agreement. They will advise the Court immediately if settlement is reached.

R. The probable length of trial is two days. The cause is set down for a bench trial on August 12, 2014, at 11:00 a.m. in the United States District Court at South Bend, Indiana.

SO ORDERED on July 31, 2014.

　s/ Joseph S. Van Bokkelen　
JOSEPH S. VAN BOKKELEN
UNITED STATES DISTRICT JUDGE