UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
SOUTH BEND DIVISION

| | | |
|---|---|---|
| CITY OF SOUTH BEND, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Cause No. 3:12-cv-475 |
| | ) | |
| SOUTH BEND COMMON COUNCIL, ET AL., | ) ) | |
| | ) | |
| Defendants. | ) | |

## TRIAL BRIEF OF DEFENDANTS CORBETT, WELLS, RICHMOND, AND YOUNG

### INTRODUCTION

The City of South Bend filed its Complaint for Declaratory Judgment on August 30, 2012, requesting that the Court enter an order pursuant to the Declaratory Judgment Act, 28 U.S.C. § 2201, determining the rights and obligations of the City with respect to recordings of certain phone conversations that were made by the South Bend Police Department and former Director of Communications Karen DePaepe and former Chief of Police Darryl Boykins. These recordings were the subject of the Department of Justice investigation into whether certain recording practices of the Police Department violated federal law.

In March of 2012, City of South Bend Mayor Pete Buttigieg met with a United States Attorney representing the Department of Justice. The attorney recommended that the Mayor take corrective action in light of the federal investigation. The Mayor accepted the resignation of Boykins and relieved DePaepe of her duties.

The individuals whose telephone conversations were allegedly recorded and put onto cassettes were Respondents, Tim Corbett, Dave Wells, Steve Richmond, Brian Young, and his wife, Sandy Young. On June 11, 2012, these five individuals filed a Notice of Tort Claim

1

pursuant to Indiana Code § 34-13-3-8 against the City of South Bend, putting the City on notice that they intended to file suit for violation of their rights under the Fourth Amendment of the United States Constitution and under the Omnibus Crime Control and Safe Streets Act of 1968, 18 U.S.C. § 2510 *et seq.*—or, as it is more commonly known, the Federal Wiretap Act. Two months later, on August 14, 2012, the South Bend Common Council subpoenaed the Mayor's Office requesting that the City of South Bend produce copies of any and all tapes and digital recordings related to the Mayor's press release announcing Boykins' resignation and DePaepe's termination.

On September 19, 2012, Corbett, Wells, and Richmond, and the Youngs filed suit in this Court against the City of South Bend and Boykins and DePaepe alleging that the actions of Boykins and DePaepe in intercepting and disclosing Plaintiffs' telephone conversations constituted violations illegal search in violation of the Fourth Amendment and the Federal Wiretap Act and Ind. Code § 35-33.5-2 *et seq.* (Cause No. 3:12-cv-532 JVB-CAN.) According to the 532 Plaintiffs, the City of South Bend was liable under a theory of *respondeat superior*. The 532 Plaintiffs filed an amended complaint on October 25, 2012, which added Count II requesting declaratory judgment that the Common Council's subpoena is void because the telephone conversations were recorded in violation of the Federal Wiretap Act, and Count III requesting an order permanently enjoining the City of South Bend from disclosing the recorded conversations. The instant case and the 532 case were consolidated on January 17, 2013.

This case has two deciding questions:

(1)   Whether the telephone recordings constitute a violation of the Federal Wiretap Act;

(2)   If the recordings do constitute a violation, whether nonetheless the recordings were excepted under the federal statute because they were made in the ordinary course of business of the South Bend Police Department.

2

The evidence will show that Director of Communications Karen DePaepe, having discovered that police captain Brian Young's phone line was inadvertently recorded took no action to correct the mistake. The evidence will show further that Boykins did not intend to create a regular and routine, non-investigatory recording practice for Young's line, or Young's office, or Young's position. His line was inadvertently recorded because there was no procedure or policy in place at the South Bend Police Department regarding recording captains' phone lines.

Because the items requested in the Common Council's subpoena to the City of South Bend were created in violation of federal law, this Court should declare the Common Council's subpoena void, and permanently enjoin the City of South Bend from disclosing those items and their contents.

## I. FACTUAL BACKGROUND

The underlying recordings at issue in this case were made by the Police Department's Dynamic Instruments Reliance ("DIR") recording system, a server-based analog recording system installed by Police Department in 1998.

All of the conversations at issue were automatically intercepted by the DIR and recorded on its hard drive prior to any subsequent listening or recording of the conversations.

The DIR system was maintained by Police Department Communications Director Karen DePaepe, who began serving in that position on July 1, 1998.

Any adding or deleting recorded lines would be coordinated through DePaepe and the Chief of Police who instructed DePaepe on any changes to the system that had been determined.

DePaepe was not an officer of the Police Department. Nor was she an "investigative or law enforcement officer" as that term is defined under 18 U.S.C. 2510(7).

In 2004, the police department went through remodeling. Some officers were criticized the public, where they were accused of the manner in which they handled, documented, and responded to complaints. Chief of Police Thomas Fautz had a discussion among the command staff on how to improve this situation. The Investigative Division Chief and Uniform Division Chief asked that their phone lines be taped to ensure accuracy of future complaints.

The Police Department never adopted a procedure, practice, or routine of recording all of the incoming and outgoing lines into the Police Department.

In 2007, when Chief Darryl Boykins was appointed Chief of Police to succeed Chief of Police Thomas Fautz, the same phone lines being recorded under Chief Fautz continued to be recorded on the DIR system.

Within his first year of becoming Chief of Police, Boykins learned of the prior decisions on recording.

Boykins made no changes to any of the lines that were recorded, specifically adopted the approach of Chief Fautz, and issued no written or oral directive to create a policy, procedure, practice or routine and none was implemented during his tenure.

At no time did any Chief of Police order the recording of all calls of a specific type of rank or position on the command staff within the Police Department.

In January of 2010, during Boykins' tenure as Chief of Police, Steve Richmond was promoted from a Captain in the Investigative Division to Chief of the Investigative Division. Richmond succeeded Rick Bishop in the position.

Upon receiving his promotion, Richmond was assigned to the office that had been occupied by former Investigative Division Chief Rick Bishop.

Shortly after Richmond was promoted to Division Chief, Young was promoted to replace Richmond's former position as a Captain in the Investigative Division and assigned to occupy Richmond's former office. Young did not ask to have his prior assigned phone number follow him to his new office as Captain.

Richmond wanted to maintain his assigned phone number after his promotion and new office assignment.

Because Richmond wanted to keep the individual phone number that had been previously assigned to him as Captain—574-235-7473 (the "7473 Number")—he contacted Barbara Holleman, Secretary to the Chief of Police, and asked her to ensure that the 7473 Number would follow him to the new office he would occupy as Division Chief.

Barbara Holleman, the administrative assistant to the Chief of Police, performed the task of switching the lines that were connected to Richmond's former office and new office. In the process of transferring Richmond's phone number (235-7473) to his new office, she transferred the phone number in the office that Richmond was going to occupy (245-6031) to the office that was now assigned to Young. Unbeknownst to Holleman and Young, that line had previously been wired into the DIR system when former division chief Bishop asked Fautz to record his 6031 number.

No one was aware when Young took over his new office that his line was recorded. No one informed Young when he moved into his new office that his calls were being recorded.

Sometime around January of 2011, while performing troubleshooting on the DIR recording system, DePaepe discovered that Young's line was being recorded.

5

No one intended to record Young's assigned line. No one was aware when Young took over his new office that his line was recorded. No one informed Young when he moved into his new office that his calls were being recorded.

Notwithstanding these facts, DePaepe regularly listened to the recorded conversations of Young and made cassette recordings of some of those conversations.

Young did not consent to the recording of his assigned line and did not discover that the line was being recorded until October 2011 at the earliest.

## II. LEGAL OVERVIEW

### A.   Standard of Review

The Declaratory Judgment Act authorizes a federal court, "in a case of actual controversy within its jurisdiction," to "declare the rights and other legal relations of any interested party seeking such declaration." 28 U.S.C. § 2201; *Geisha, LLC v. Tuccillo,* 525 F. Supp. 2d 1002, 1009 (N.D. Ill. 2007). The party seeking a declaratory judgment in federal district court bears the burden of establishing the existence of an actual controversy. *Id.*

Once it is determined that an actual controversy exists, district courts are well-suited to make the particular factual findings necessary to determine the propriety of a declaratory judgment action, and because of this they have specifically been vested with the discretion to make such judgments. *Stewart Title Guar. Co. v. Cadle Co.,* 74 F.3d 835, 837 (7th Cir. 1996). The burden is on the moving party to prove its case by a preponderance of the evidence. *Bauer v. Clark,* 161 F.2d 397, 400 (7th Cir. 1947). The burden shifts to the respondent to establish affirmative defenses. *Id.*

**B.     The Federal Wiretap Act**

The Federal Wiretap Act provides that it is unlawful to intentionally intercept any wire communication:

> (1) Except as otherwise specifically provided in this chapter any person who—
> (a) intentionally intercepts, endeavors to intercept, or procures any other person to intercept or endeavor to intercept, any wire, oral, or electronic communication;
> (b) intentionally uses, endeavors to use, or procures any other person to use or endeavor to use any electronic, mechanical, or other device to intercept any oral communication when--
> (i) such device is affixed to, or otherwise transmits a signal through, a wire, cable, or other like connection used in wire communication;
> ****
> (c) intentionally discloses, or endeavors to disclose, to any other person the contents of any wire, oral, or electronic communication, knowing or having reason to know that the information was obtained through the interception of a wire, oral, or electronic communication in violation of this subsection; [or]
> (d) intentionally uses, or endeavors to use, the contents of any wire, oral, or electronic communication, knowing or having reason to know that the information was obtained through the interception of a wire, oral, or electronic communication in violation of this subsection;
> ****
> shall be punished as provided in subsection (4) or shall be subject to suit as provided in subsection (5).

18 U.S.C. § 2511.  It is not a violation of the statute if the person intercepting the communication if the party whose communications are recorded gave prior consent. 18 U.S.C. § 2511 (2)(a)(iii)(d).

Intentionality requires that a person's act must have been the product of her conscious objective rather than the product of a mistake or an accident.  *United States v. Townsend,* 987 F.2d 927, 930 (2d Cir. 1993). Nor is an affirmative act, rather than an omission, required. It is enough to be aware that such interception is occurring and to fail to stop it. *Narducci v. Moore,* 444 F. Supp. 2d 924, 935-936 (N.D. Ill. 2006).

The Wiretap Act forbids the disclosure of "the contents of any wire, oral, or electronic communication [that was] obtained through the interception of a wire, oral, or electronic

communication in violation of" the Act. 18 U.S.C. § 2511(c). A separate violation of 18 U.S.C. § 2511 occurs each time a person discloses illegally intercepted communications to "any other person" *Zinna v. Cook,* 2009 WL 3158136 *9 (D. Colo. Sept. 29, 2009).

  C. **The Ordinary Course of Business Exception**

  The Common Council contends that all telephone calls that were intercepted by the Police Department were done in the ordinary course of business. The business use exception under 18 U.S.C. § 2510(5) states that "electronic, mechanical, or other device" means any device or apparatus which can be used to intercept a wire, oral, or electronic communication other than:

> [A]ny telephone or telegraph instrument, equipment or facility, or any component thereof, (i) furnished to the subscriber or user by a provider of wire or electronic communication service in the ordinary course of its business and being used by the subscriber or user in the ordinary course of its business or furnished by such subscriber or user for connection to the facilities of such service and used in the ordinary course of its business; or (ii) being used by a provider of wire or electronic communication service in the ordinary course of its business, or by an investigative or law enforcement officer in the ordinary course of his duties.

18 U.S.C. § 2510(5). In other words, there is no violation of the Federal Wiretap Act where the recording at issue is done in the ordinary course of business.

  The ordinary course of business exception is discussed in the well-known Seventh Circuit case *Amati v. City of Woodstock,* 176 F.3d 952 (7th Cir. 1999). That appeal came following a civil jury verdict in favor of the defendant police department, which the jury determined was acting in the ordinary course of business by recording a particular department phone line. The Woodstock police department made it a policy to record all phone lines save one, and a memo was distributed to the employees explaining that the "line was intentionally left untapped to allow for personal calls, however, we request that you keep those calls brief and to a minimum." *Id.* at 955. Following a complaint lodged against the department following an unrecorded conversation on that phone line, the police department decided to make it a policy to record that

8

line. *Id.* No memo stating such was disseminated to the employees, though "many of them may have known about it." *Id.*

The Seventh Circuit affirmed the jury verdict because it was the department's policy to record all phone lines. The decision to change the previously unrecorded line to a line that was recorded made the practice one in the ordinary course of business. *Id.* at 956. The court rejected the plaintiffs' argument that explicit consent was required notwithstanding the policy: "If the 'ordinary course' exclusion required proof of notice, it would have no function in the statute because there is a separate statutory exclusion for cases in which one party to the communication has consented to the interception." *Id.* at 955. The Seventh Circuit explained: "The boundary is between routine noninvestigative uses of electronic eavesdropping and its use either as a tool of investigation (which requires a warrant) or as a device for intimidation, suppression of criticism, blackmail, embarrassment, or other improper purposes." *Id.* at 956.

The Sixth Circuit further explained the business use exception in *Adams v. City of Battle Creek,* 250 F.3d 980, 984 (6th Cir. 2001). The court noted that the "ordinary course of business" is not defined in the statute, but it generally requires that the use be (1) for a legitimate business purpose, (2) routine and (3) with notice. *Id.* The court held that monitoring in the ordinary course of business requires notice to the person or persons being monitored. *Id.* The Sixth Circuit reasoned that the gold standard of the business use exception is a police department that "routinely and indiscriminately records all phone activity." *Id.*

The Fourth Circuit holds that the business use exception does not apply where there is no policy of monitoring phone calls. *Abraham v. City of Greenville,* 237 F.3d 386, 389 (4th Cir. 2001). In *Abraham*, several state court judges in South Carolina brought suit against the County of Greenville under the Wiretap Act when they discovered that their personal phone calls made

from the detention center were being recorded. The county appealed from a jury verdict in favor of the plaintiffs, which verdict the Fourth Circuit upheld because the county was recording the phone calls mistakenly. There was no policy regarding the judges' phone calls. The business use exception—which the court pointed out is not a limitless concept—did not apply. *Id.* at 391.

### III. KEY ISSUES FOR TRIAL

**A.     The recordings at issue are in violation of the Federal Wiretap Act.**

*1.     The phone calls were "intercepted" under the Act.*

Under the plain language of the statute, the telephone conversations of the 532 Plaintiffs were "intercepted." "Intercept" is a defined term meaning the aural or other acquisition of the contents of any wire, electronic, or oral communication through the use of any electronic, mechanical, or other device. 18 U.S.C. § 2510 (4). Here, the parties have stipulated that all recordings at issue were intercepted by the DIR, and that Young's line was being recorded, which no one was aware of, and which fact was never communicated to Young when he moved into his new office. (Stipulations ¶¶ 7, 22, 23.)

*2.     The interceptions at issue were intentional under the Act.*

Because Karen DePaepe failed to take corrective action when she discovered that Brian Young's line was inadvertently recorded, she had the requisite intent for liability under the Wiretap Act. Sometime around January of 2011, while performing troubleshooting on the DIR recording system, DePaepe discovered that Young's line was being recorded in error. She did not, however, inform Young forthwith that his line was recorded, nor did she end the recording of his line. Becoming aware that the interception was occurring and to failing to stop it satisfied the *mens rea* element under the statute. *Narducci,* 444 F. Supp. 2d at 935-936.

### B.     The ordinary course of business exception does not apply.

*1.     Young's 6031 line was recorded inadvertently.*

The business use exception does not apply because the recordings were captured mistakenly as a result of inadvertent actions. Young never requested that his phone line be recorded. He was never informed that it was recorded. It was recorded simply because Holleman was accommodating Richmond's request to keep his 7473 number when he changed offices. Both Boykins and DePaepe acknowledge that Young's phone line was recorded due to a "mix up." The recording of Young's line, therefore, was not a business use because it was done only by mistake. *Abraham,* 237 F.3d at 389.

*2.     There was no policy or procedure that the department chiefs followed.*

Chief Fautz made it clear that phone lines were recorded on a person-by-person basis. It was to the particular officer's personal preference whether his or her line was recorded. Fautz never intended to institute a policy. And Boykins likewise did not institute a policy. He followed the practice that Chief Fautz put in place—that is, there was no procedure that the department followed determining which phone lines would be recorded and which phone lines would not be recorded.

The parties have stipulated that the police department never adopted a procedure, practice, or routine of recording all of the incoming and outgoing lines into the department. (Stipulations ¶ 12.) The "ordinary course of business" generally requires that the use be (1) for a legitimate business purpose, (2) routine and (3) with notice. *Adams,* 250 F.3d at 984. The business use exception is carved out for departments that "routinely and indiscriminately records all phone activity." *Id.* That standard is opposite to the situation here, where the recordings were made on an *ad hoc* basis.

11

It is of no consequence that Young's 6031 number was recorded from the time that it was used by Rick Bishop, who did request his phone line to be recorded. The determinative fact is that there was no policy or procedure from Chief Fautz to record any particular phone number or phone line. Fautz's practice was to record an individual officer's number if that officer requested it. Brian Young did not request his phone to be recorded. He did not know that it was recorded. Therefore, the recording Young's phone line was contrary to the practice followed by Fautz because Young did not request his line to be recorded.

> 3.  *It is the Common Council's burden to prove that Young's line was recorded in the ordinary course of business.*

The closest that the Common Council can come to proving that this was the ordinary course of business is by strained analogy to *Amati v. City of Woodstock,* 176 F.3d 952. That case, though superficially similar, is distinct precisely because *Amati* involved (1) a purposeful determination by the department to tape the phone line at issue, and (2) a department policy adopted to record all of the incoming and outgoing lines into the department. *Id.* at 955. Here, the parties have stipulated that (1) no one was aware when Young took over his new office that his line was recorded, and (2) the police department never adopted a procedure, practice, or routine of recording all of the incoming and outgoing lines into the department. These are the two most important distinctions. Two further distinctions are that the *Amati* line was not a captain's personal phone line, and that the *Amati* phone line was used for making calls to and from public agencies and banks.

It is worth repeating that the Common Council has the burden to prove that the recordings at issue were made in the ordinary course of business of the South Bend Police Department. *Bauer,* 161 F.2d at 400. The evidence simply does not support that conclusion. Chief Fautz never intended to institute a policy that certain phone lines were to be recorded in

the ordinary course of business. Chief Boykins followed Chief Fautz's practice, and he likewise never instituted a policy that certain phone lines should be recorded.

## CONCLUSION

The 532 Plaintiffs/475 Defendants have an important privacy interest in this action. That interest is to prevent the disclosure of conversations that the 532 Plaintiffs had every reason to think were private and personal. Protecting the privacy of individuals was an overriding congressional concern in enacting Title III. *Gelbard v. U. S.,* 408 U.S. 41, 48 (1972). Those privacy concerns are clearly at issue in this case because the recordings here were made without the individuals' knowledge or consent, and it is of great importance to them—as it would be for any person—to keep private matters private.

For these reasons, the 532 Plaintiffs/475 Defendants respectfully request that the Court declare the recordings were captured in violation of the Wiretap Act, a permanent injunction be issued by the Court prohibiting disclosure of the recordings without a further hearing.

Respectfully submitted,

Dated: August 7, 2014

/s/ Daniel H. Pfeifer_____
Daniel H. Pfeifer (5720-71)
Jeffrey J. Stesiak (16876-46)
Jerome W. McKeever (30022-71)
Attorneys for Defendants
PFEIFER, MORGAN & STESIAK
53600 North Ironwood Drive
South Bend, Indiana 46635
(574) 272-2870

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that on the 7th day of August, 2014, I electronically filed the foregoing with the clerk of the court by using the CM/ECF system which will send a notice of electronic filing to the following:

| | |
|---|---|
| E. Spence Walton, Jr.<br>Christopher M. Lerner<br>Robert J. Palmer<br>May Oberfell Lorber<br>4100 Edison Lakes Parkway, Suite 100<br>Mishawaka, IN 46545 | Jeffrey S. McQuary<br>Brown Tompkins Lory & Mastrian<br>608 East Market Street<br>Indianapolis, IN 46202 |

Aladean DeRose
City Attorney, South Bend, Indiana
227 W. Jefferson Blvd., Suite 1400
South Bend, IN 46601

Edward A. Sullivan, III
Ryan G. Milligan
Faegre Baker Daniels, LLP
202 South Michigan Street, Suite 1400
South Bend, IN 46601

/s/ Daniel H. Pfeifer_____