UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
SOUTH BEND DIVISION

| | | |
|---|---|---|
| CITY OF SOUTH BEND, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Cause No. 3:12-cv-475 |
| | ) | |
| SOUTH BEND COMMON COUNCIL, et al., | ) ) | |
| | ) | |
| Defendants. | ) | |
| ************************************************************************* | | |
| BRIAN YOUNG, SANDY YOUNG TIMOTHY CORBETT, DAVID WELLS, and STEVE RICHMOND | ) ) ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | Consolidated |
| v. | ) | Cause No. 3:12-cv-532 |
| | ) | |
| THE CITY OF SOUTH BEND, Acting Through its Police Department, DARRYL BOYKINS, Individually and in his Official Capacity as Chief of Police, KAREN DEPAEPE, and SCOTT DUERRING, | ) ) ) ) ) | |
| | ) | |
| Defendants. | ) | |

### SOUTH BEND OFFICERS' RESPONSE
### TO COMMON COUNCIL'S POST-TRIAL BRIEF

Respondents Brian Young, Sandy Young, Timothy Corbett, David Wells, and Steve Richmond ("South Bend Officers"), by counsel, file their Brief in Response to the South Bend Common Council's Post-Trial Brief pursuant to this Court's Orders of August 13, 2014, and September 15, 2014.

## I. Introduction

The South Bend Officers' interests are aligned with the City of South Bend for purposes of this declaratory action. As a preliminary matter, therefore, the South Bend Officers agree with the arguments set forth in the City's Post Trial-Brief. (Doc. No. 169.) This Response Brief will address the arguments made in the South Bend Common Council's Post-Trial Brief. (Doc. No. 167.) Because the items requested in the Common Council's subpoena to the City of South Bend were created in violation of the Federal Wiretap Act, 18 U.S.C. § 2511, the South Bend Officers respectfully request that Court declare the Common Council's subpoena void, and permanently enjoin the City of South Bend from disclosing those items and their contents.

## II. Argument

This Court held a two-day trial on August 12 and August 13, 2014, to answer two deciding questions:

(1) Whether the telephone recordings constitute a violation of the Federal Wiretap Act;

(2) If the recordings do constitute a violation, whether nonetheless the recordings were excepted under the federal statute because they were made in the ordinary course of business of the South Bend Police Department.

The evidence showed that Director of Communications Karen DePaepe, having discovered that police captain Brian Young's phone line was mistakenly recorded, did not correct the mistake, but rather started a rogue investigation consisting of listening to and making cassette recordings of months of other personal, private phone conversations on her own authority. (Tr. V. II at 142; Stipulations ¶ 10.) The evidence further showed that former Chief of Police Darryl Boykins, who acknowledged that there was no law enforcement purpose to recording Young's line before the DePaepe's discovery, nevertheless after the fact commissioned further investigation—without a

warrant—of Young based on the content of those recordings. (Tr. V. I at 194-196; 217-218.) Boykins did not intend to create a regular and routine, non-investigatory recording practice for Young's line, or Young's office, or Young's position. (Stipulations ¶ 15; Tr. V. I at 184.) That Young's phone line was inadvertently recorded was anything but the "ordinary course" of business in the South Bend Police Department. Therefore, the recordings were made in violation of the Federal Wiretap Act, and that violation was not excepted under the ordinary course exclusion, 18 U.S.C. § 2510(5).

> A. The recordings were in violation of the Federal Wiretap Act.

The City of South Bend brought this case as a declaratory action against the South Bend City Council and the South Bend Officers as respondents. The Declaratory Judgment Act authorizes a federal court, "in a case of actual controversy within its jurisdiction," to "declare the rights and other legal relations of any interested party seeking such declaration." 28 U.S.C. § 2201; *Geisha, LLC v. Tuccillo,* 525 F. Supp. 2d 1002, 1009 (N.D. Ill. 2007). District courts are specifically vested with the discretion to make such judgments. *Stewart Title Guar. Co. v. Cadle Co.,* 74 F.3d 835, 837 (7th Cir. 1996). The burden is on the moving party to prove its case by a preponderance of the evidence. *Bauer v. Clark,* 161 F.2d 397, 400 (7th Cir. 1947). The burden shifts to the respondent to establish affirmative defenses. *Id.*

> 1. The City of South Bend satisfied its burden of proving by a preponderance of the evidence that the recordings at issue constituted a *prima facie* violation of the Federal Wiretap Act.

The City as the party bringing this action had the burden to prove that the recordings at issue violated the Federal Wiretap Act. This burden required the City to prove that the phone conversations were intentionally intercepted, and/or their contents intentionally disclosed. 18 U.S.C. § 2511. The evidence showed that DePaepe took it upon herself to initiate an

3

investigation by listening to the administrative phone line. (Tr. V. II at 151.) She listened to those recordings and reported their contents to Boykins. Then Boykins instead instructed DePaepe to find similar recordings and to prepare an officer's report on what she heard on those recordings. (Tr. V. II at 165.) Boykins further instructed DePaepe to copy the recordings onto audio cassette tapes. DePaepe did so, copying eight different recorded conversations onto five cassette tapes. (Stipulations Doc. No. 155.) Because the City proved that the recordings were intentionally intercepted, and their contents intentionally disclosed, the City therefore satisfied its burden to prove a *prima facie* case that the recordings at issue were made in violation of the Federal Wiretap Act. *See Amati v. City of Woodstock,* 176 F.3d 952, 954 (7th Cir. 1999).

      2.      The Common Council conceded that the recordings were made intentionally under the Federal Wiretap Act.

For the first time during the pendency of this action, the Common Council asserted in its Post-Trial Brief that one of the conversations recorded on Young's phone line was done so by mistake, and was therefore done legally. (Br. at 20.) This Court in its questions posed to the parties on August 13, 2014, requested that the parties address first whether the recordings were intentional under the Federal Wiretap Act,[1] and second whether the ordinary course exclusion nevertheless excepted the illegal recordings.[2] The Common Council, however, has already conceded the argument that the recordings were made intentionally under the Act.[3] The Common Council in its Answer to the Complaint for Declaratory Judgment alleged only that the

---

[1] The exact question asked was: "Are unintentional recordings illegal under the Federal Wiretap Act?"

[2] Here, the question was: "If Young's line was recorded illegally, does law enforcement officer exception nevertheless cover the recordings at issue?"

[3] In answering the Court's last question, the Common Council stated: "If the Ordinary Course Exclusion applies, the recordings are legal. If the recordings are illegal, by definition, the Ordinary Course Exclusion does not apply." (Br. at 21.) The answer is clearly non-responsive to the question asked, and the answer ignores the burdens of proof of the respective parties at trial.

recordings fall within the statutory exclusions from the Federal Wiretap Act under 18 U.S.C. § 2510(5). (Common Council's Answer at ¶ 17.) The Pretrial Order set forth the Common Council's contention as simply: "The Federal Wiretap Act does not apply to the Recordings pursuant to the Ordinary Course Exclusion." (Doc. No. 142.) Similarly, the Common Council's Trial Brief stated that there was only one issue for the Court to decide: whether the ordinary course of business exclusion applied to this case. (Doc. No. 151 at 14.)

To the extent that the Common Council attempted to argue in its Post-Trial Brief that the February 4, 2011, conversation recorded by DePaepe was not made illegally because it was inadvertent, the argument must fail. The Common Council did not raise the defense that the recording was made inadvertently in its answer. Nor did the Common Council raise the argument in its motion for summary judgment, its trial brief, or at trial. The Court should not, therefore, make any findings that certain recordings at issue were intercepted unintentionally, and therefore legally. No party has taken this position until the Common Council argued it in its Post-Trial Brief.

Furthermore, taking the position that any of the recordings at issue were made unintentionally runs counter to the Common Council's contention in this case. That the conversations were recorded by mistake is entirely inconsistent with the Council's position that they were recorded in the ordinary course of business. The Council's Post-Trial Brief says as much in answering "the recording of line 6031 was not a mistake" to the Court's question whether Young's line was recorded by mistake. (Br. at 2.)

Waiver aside, every phone line recording at issue—including the February 4, 2011, recording—was made intentionally, and therefore illegally, under the Federal Wiretap Act. The Common Council argues wrongly that the recording of February 4, 2011, was recorded as a

result of a mistake and it was not therefore illegal. (Br. at 20-21.) To the contrary, DePaepe heard the February 4, 2011, recording, realized within a few seconds that it was a recording of Young's phone line, and initiated an investigation based on the content of the phone conversation. (Tr. V. I at 100; V. II at 142.) DePaepe then disclosed the contents of that conversation to Boykins. (Tr. V. II at 149.) Then in December of 2011, Boykins instructed DePaepe to reduce the recording to an audio cassette, and DePaepe delivered to Boykins an audio cassette tape containing the February 4, 2011, conversation. (Tr. V. I at 193-194; Stipulations Doc. No. 155.) All of these acts were illegal. The February 4, 2011, conversation, therefore, is under no circumstances exempted under the Federal Wiretap Act.

> 3. The Common Council has no First Amendment interest that would be violated by application of the Federal Wiretap Act.

This Court's final question that it posed to the parties stated: "If Young's line was recorded illegally, does law enforcement officer exception nevertheless cover the recordings at issue?" Instead of answering question asked, the Common Council discussed the case of *Bartnicki v. Vopper,* 532 U.S. 514 (2001) (misspelled as *Bartnicki v. Bopper* in the Common Council's brief at 24). The issue in *Bartnicki* was whether application of the Federal Wiretap Act violated the First Amendment rights of radio stations that broadcasted illegally recorded phone conversations regarding labor negotiations. The tapes were legally obtained by the radio stations. *Id.* at 524-525.

*Bartnicki* is wholly inapplicable here. There were three parts to the Supreme Court's reasoning: (1) respondents played no part in the illegal interception; (2) their access to the information on the tapes was obtained legally; and (3) subject matter was a public concern. Attempting to shoehorn the facts of this case into the *Bartnicki* Court's reasoning, the Common Council argues that DePaepe played no part in the illegal interception of the February 4, 2011,

6

conversation, and she obtained the recording legally. (Br. at 26.) This conclusion is of course false because DePaepe was the communications director of the South Bend Police Department when the recordings were intercepted, and when she obtained access to those recordings. DePaepe was not an innocent third party. She was an employee and agent of the department. The Supreme Court's reasoning, therefore, does not apply to this case.

Furthermore, the Common Council has no First Amendment interest in the disclosure of the recordings whatsoever. There is no freedom of the press or freedom of expression interest that the Common Council can claim. The only First Amendment interest in this case belongs to the South Bend Officers, who own claim to a fundamental right to be free from unwanted intrusions into their privacy. *Stanley v. Georgia,* 394 U.S. 557, 564 (1969). That interest is the very privacy interest that the Federal Wiretap Act is supposed to protect. *Gelbard v. U. S.,* 408 U.S. 41, 48 (1972). It is perverse that the Common Council would imply that it has any interest in the outcome of this case that is more important than the South Bend Officers' fundamental right to privacy. The Council's discussion of *Bartnicki v. Vopper*—non-responsive to answering any issue in this case—should be entirely ignored.

### B. The ordinary course of business exception does not apply.

The City of South Bend carried its burden to prove that the recordings in this case constituted a *prima facie* violation of the Federal Wiretap Act. The burden then shifted to the Common Council to prove its affirmative defense—that the recordings at issue were made in the ordinary course of business of the South Bend Police Department. *Bauer,* 161 F.2d at 400. The Common Council failed to carry its burden because it presented zero evidence that recording an officer's phone line without his knowledge and consent, and then initiating a targeted,

warrantless investigation against that individual was all within the "ordinary course" of police business in the South Bend Police Department.

    1.    The Common Council bore the burden to prove that the recordings were excluded by the ordinary course exclusion.

This is a declaratory action. The City of South Bend brought the action against the South Bend Common Council. The Common Council raised the ordinary course exclusion as a defense in its answer. The Court held a two-day long trial. The Common Council had the burden to prove its defense. The Common Council's non-responsive answer to this Court's last question, however, clearly shows us that the Common Council is attempting to put the onus of disproving the defense on the City.[4] This is not the correct standard.

In its Post-Trial Brief, the Common Council makes the observation that that the ordinary course provision is an exclusion as opposed to an exception. (Br. at n. 3.) The Council made the same tired, inconsequential observation in its motion for summary judgment. (Doc. No. 20 at 2.) The provision—the ordinary course exclusion, or the law enforcement exception, or the business use exception—is continuously referred to as an *exception* in case law, in this Court, and in this Circuit. *See, e.g., Amati,* 176 F.3d at 956 (referring to 18 U.S.C. § 2510 (5)(a)(ii) as "an exception for electronic eavesdropping in the ordinary course of law enforcement").

Debating the terms *exclusion* versus *exception* is sophistry. By employing *exclusion*, the Common Council tries to create the illusion that there can be no *prima facie* case made by the City without first disproving that the recordings were made in the ordinary course. But of course, this is false. *See Amati,* 176 F.3d at 954 (noting that "the taping was indeed a *prima facie*

---

[4] Question: "If Young's line was recorded illegally, does law enforcement officer exception nevertheless cover the recordings at issue?" Common Council's answer: "If the Ordinary Course Exclusion applies, the recordings are legal. If the recordings are illegal, by definition, the Ordinary Course Exclusion does not apply."

8

violation," though it was done in the ordinary course of business). The Common Council had the burden to prove its defense. It failed to carry that burden.

> 2. The Common Council failed to prove that the recordings were made in the ordinary course of business.

The Common Council's conclusion that the ordinary course exclusion applies follows from two basic premises:

> (1) Because everybody knows that police departments around the country routinely record phone calls in the ordinary course, and
>
> (2) Because the South Bend Police Department is a police department,
>
> (3) Therefore, the South Bend Police Department recorded Young's phone line in the ordinary course of business.

We know that this is the logic of the Common Council because the Common Council states it expressly (quoting *Amati*, 176 F.3d at 955: "To record all calls to and from a police department is . . . a routine police practice," Br. at 17), and by implication. The Common Council makes a hyper-technical distinction, for example, of a case that is clearly on point, *Abraham v. City of Greenville,* 237 F.3d 386, 389 (4th Cir. 2001) (holding that the business use exception does not apply where there is no department policy that all phone calls are recorded and/or monitored). What is the Common Council's point of distinction? *Abraham* is about calls coming in and out of judges' chambers, whereas this case is about a police station. (Br. at 10.) The opening paragraph explaining the facts in *Abraham*, however, describes the Detention Center at issue in that case, where the judges' offices were located: "The Detention Center contained a jail, visitation facilities, and offices for law enforcement and administrative personnel." *Abraham,* 237 F.3d at 388. The Common Council's factual distinction is a far reach.

The Common Council's argument runs contrary to both the testimony in this case, and to other cases interpreting the Federal Wiretap Act. The "ordinary course of business" is not

9

defined in the statute, but it generally requires that the use be (1) for a legitimate business purpose, (2) routine, and (3) with notice. *Adams v. City of Battle Creek,* 250 F.3d 980, 984 (6th Cir. 2001). The gold standard of the business use exception is a police department that "routinely and indiscriminately records all phone activity." *Id.*

Here, it was never a practice of the South Bend Police Department to record every phone line. (Stipulations ¶ 12; Tr. V. I at 105.) Boykins followed the same practices as Fautz, recording individuals' phone lines on demand only, and with the knowledge and consent of the user. (Tr. V. I at 184-185.) Young did not ask for his line to be recorded, know that his line was recorded, or consent to his line being recorded. (Tr. V. II at 89-90.) Once he discovered that his line was recorded, he asked that it be stopped immediately. (Tr. V. II at 74.) He learned three months later, however, that his line was still recorded. (Tr. V. II at 74-75.) Boykins himself acknowledged that recording Young's line without his knowledge was contrary to standard practice. (Tr. V. I at 214.) Recording Young's line was anything but the ordinary course of business.

To support its reasoning, the Common Council argues that the existence or non-existence of any policy in the police department regarding recording private phone lines is irrelevant because the statute does not require a policy. (Br. at 2, n. 1.) The question of whether a policy existed is of course relevant deciding this case. If such a policy existed, it would be probative as to whether the recording of Young's private phone line was in the "ordinary course."

Here, there was no written policy regarding which individual officers' phone lines were recorded. At best there was a customary practice. When Fautz was the police chief from September 2002 through December 28, 2007, it was the police department's practice to record any individual's phone line only with his or her knowledge or consent. (Tr. V. I at 136.) Fautz

10

did not intend to establish a procedure to always record a certain phone number (e.g., 6031, which was Rick Bishop's phone number). (Tr. V. I at 135.) Likewise, it was specifically Boykins's customary practice to not record a line without the person's knowledge. (Tr. V. II at 184-185.) Boykins recorded phone lines "on demand" only. (Tr. V. I at 186.)

The absence of a department policy distinguishes this case from *Amati v. City of Woodstock*, which involved (1) a purposeful determination by the department to tape the phone line at issue, and (2) a department policy to record all calls on all its lines. 176 F.3d 952, 954 (7th Cir. 1999). Here, the evidence showed that (1) no one was aware when Young took over his new office that his line was recorded, and (2) the police department never adopted a procedure, practice, or routine of recording all of the incoming and outgoing lines into the department. The Common Council cannot rely, therefore, on the superficially favorable language that "to record all calls to and from a police department is . . . a routine police practice," because to do so was not the ordinary course of business in the South Bend Police Department. *Amati,* 176 F.3d 952, 955.

Additionally, under a common sense reading of the statute, the Common Council failed to produce evidence proving that Young's line was recorded in the ordinary course. The Common Council asks us to believe that "the most that can be said regarding the existence of policy is that each individual police chief had his own policy, or philosophy, regarding the recording of telephone lines at the South Bend Police Department." (Br. at 3.) The Common Council argues that South Bend Police Department functioned at such a level of dysfunction, in other words, that it was the ordinary course to record individuals' phone lines without reason, and it was the ordinary course that nobody—not even the police chief—had knowledge. This

11

interpretation of the "ordinary course" makes no sense. What is *ordinary* is apt be known. *Amati,* 176 F.3d 952, 955.

The Common Council's argument is not robust on its face. But it wilts more pitifully when examined under the light of the testimony: that Fautz discussed his decisions with his command staff; that he authorized lines to be recorded only at the request of the user; that he did so only with the knowledge and consent of the user; and that Boykins's intention was to follow Fautz's practice to a T. Most damning, Boykins acknowledged that it was a mistake to record Young's phone, and that there was no legitimate purpose to doing so—until hearing the content of Young's conversations prompted an illegal, warrantless investigation. (Tr. V. I at 194-196; 217-218.)

> 3. The recordings here were a device for intimidation, suppression of criticism, blackmail, and embarrassment.

The Common Council argues that there was never an intent to record a conversation in order to trick people into making damaging admissions over the phone or for purposes of intimidation, suppression of criticism, blackmail, embarrassment or other improper motives. (Br. at 31.) But in this case, that was in fact the very purpose. Boykins told Richmond that Boykins listened to the tape and wanted to see if Richmond would "man up" to what Boykins heard him say. (Tr. V. II at 59.) Boykins told Young that he felt stabbed in the back and did not know whom Boykins could trust. (Tr. V. II at 99-100.) Both Richmond and Young were so distressed by what Boykins told them that they assumed that their jobs were in jeopardy. (Tr. V. II at 60-61, 100.)

The Common Council repeats time and again what it calls the "only relevant inquiry" in this case—whether the recordings were routine and noninvestigative, as opposed to tools used for intimidation and blackmail. *Amati,* 176 F.3d at 956. The Common Council argues that the

recordings at issue were the former as opposed to the latter. This argument, however, is contrary to what Boykins testified to at trial:

> Q. Let me see if I can clear this up a little, Captain Boykins. The testimony that Mr. Pfeifer was asking you about, on page 66 [of your deposition], where you said there was no law enforcement purpose to recording Brian Young's line -- right?
> A. Right.
> Q. -- that was at the beginning when it was by mistake directed to his office; that's what you meant?
> A. Right.
> Q. Then it became for a law enforcement purpose after you learned something?
> A. Yes.

(Tr. V. I at 217-218.) Boykins expressly testified that though there was no law enforcement purpose for recording Young's line prior to its discovery, there became a law enforcement purpose after Boykins learned the content of those recordings. The recordings were not, therefore, "routine and noninvestigative." They were investigative. The recordings were targeted at investigating Young and others.

The Common Council failed to prove that the recordings at issue were routine and noninvestigative. They were not routine because it was a mistake to record Young's phone line. They were investigative by Boykins's DePaepe's own admissions. Even the Common Council's argument that a recording of officers' personal lines was not surreptitious does not ring true. Young thought that it was intentionally concealed from him that his phone line was being recorded, and the evidence shows that he was correct. From February of 2011 to October of 2011, nobody notified Young that it was discovered that his phone line was recorded. When he asked that the department stop the recording, he was promised wrongly that it would stop. There was nothing routine about recording Young's phone line. Both DePaepe and Boykins testified that the recording was investigative. The Common Council failed, therefore, to carry its burden to prove that the recordings were made in the ordinary course.

13

### III. Conclusion

For the foregoing reasons, Corbett, Richmond, Wells, and the Youngs respectfully request that the Court declare the recordings were captured in violation of the Wiretap Act, and issue a permanent injunction prohibiting disclosure of the recordings.

Respectfully submitted,

Dated: September 29, 2014

/s/ Daniel H. Pfeifer
Daniel H. Pfeifer (5720-71)
Jeffrey J. Stesiak (16876-46)
Jerome W. McKeever (30022-71)
Attorneys for Respondents
PFEIFER, MORGAN & STESIAK
53600 North Ironwood Drive
South Bend, Indiana 46635
(574) 272-2870

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that on the 29th day of September, 2014, a copy of the foregoing was served upon all counsel of record via the Court's electronic filing system.

                                              /s/ Daniel H. Pfeifer