UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
SOUTH BEND DIVISION

| | | |
|---|---|---|
| CITY OF SOUTH BEND, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Cause No. 3:12-cv-475 |
| | ) | |
| SOUTH BEND COMMON COUNCIL, et al., | ) ) | |
| | ) | |
| Defendants. | ) | |

**SOUTH BEND OFFICERS' REPLY
TO COMMON COUNCIL'S RESPONSE BRIEF**

Respondents Brian Young, Sandy Young, Timothy Corbett, David Wells, and Steve Richmond ("South Bend Officers"), by counsel, file their Reply Brief to the South Bend Common Council's Response Brief pursuant to this Court's Orders of August 13, 2014, and September 15, 2014.

**I. Introduction**

The Common Council in its Response Brief analogizes *Amati v. City of Woodstock,* 176 F.3d 952 (7th Cir. 1999), and it distinguishes *Abraham v. City of Greenville,* 237 F.3d 386 (4th Cir. 2001) (holding that the law enforcement exception did not apply where there was no department policy that all phone calls are recorded and/or monitored); *United States v. Townsend,* 987 F.2d 927 (2d Cir. 1993) (upholding a criminal conviction of a sheriff who listened to employees' phone conversations to "find out who might be in the office that was betraying him"); *Adams v. City of Battle Creek,* 250 F.3d 980 (6th Cir. 2001) (holding that the "ordinary course of business" requires that the use be first for a legitimate business purpose, second routine, and third with notice); and *Abbott v. Village of Winthrop Harbor,* 205 F.3d 976

(7th Cir. 1999) (holding the law enforcement exclusion does not apply to the surreptitious recording of telephone calls). The Common Council makes its analogies and distinctions by way of explanation of the facts of each case.

The factual explanations are helpful. Digging into the facts of *Amati* reveals that *Amati*, though superficially similar to this case, is substantively different. *Amati* demonstrates the same as *Abraham*, *Townsend*, *Adams* and *Abbott* demonstrate—that the Common Council failed to produce evidence sufficient to prove by a preponderance of the evidence that the illegally obtained recordings in this case are excepted under the ordinary course exclusion, 18 U.S.C. § 2510(5). Therefore, the South Bend Officers respectfully request that Court declare the Common Council's subpoena void, and permanently enjoin the City of South Bend from disclosing those items and their contents.

## II. Argument

Deciding this case comes down to which party carried the day and proved its case by a preponderance of the evidence. The evidence showed that the recordings were made in violation of the Federal Wiretap Act. The Council failed to show that the recordings were nevertheless made legally under the law enforcement exception. The City of South Bend, therefore, carried the day, and the City's relief sought should be the same relief granted.

A.   **The recordings were in violation of the Federal Wiretap Act.**

The Federal Wiretap Act states that it is illegal to intentionally intercept wire communications, and it is illegal to intentionally disclose the contents of any wire communications that were obtained through such an interception. 18 U.S.C. § 2511. When Communications Director Karen DePaepe uncovered the mistakenly-recorded conversations, she did not inform Young that his line was recorded. (Tr. V. II at 132.) DePaepe began to listen to

Young's phone conversations to investigate the content of those conversations. (Tr. V. II at 142.) She subsequently informed Police Chief Darryl Boykins of the recordings and their contents, and she reduced eight of Young's telephone conversations onto five audio cassette tapes at Boykins's instruction. (Tr. V. I at 193-194; Stipulations Doc. No. 155.) All these actions were taken without Young's knowledge. (Tr. V. II at 89-90.) DePaepe's actions had the requisite intent under the Federal Wiretap Act, and the recordings were therefore in violation of the Act.

> 1. The City of South Bend proved its *prima facie* case because the evidence showed that DePaepe discovered that Young's line was mistakenly recorded, and she took no corrective action to stop it.

Intent under the Federal Wiretap Act requires only awareness that an interception is occurring. *Narducci v. Village of Bellwood,* 444 F. Supp. 2d 924, 935 (N.D. Ill. 2006). The City adequately proved that DePaepe acted intentionally under the Act because the evidence showed (1) that DePaepe became aware of the recordings, (2) had the power to stop it, and (3) failed to do so. *Id.* at 935-936. Therefore, because DePaepe acted intentionally in intercepting the recordings at issue, the recordings were intercepted illegally under the Act.

The Common Council misapprehends the importance of *Narducci*. The Common Council distinguishes *Narducci*, explaining that it has nothing to do with the ordinary course exclusion. The relevant inquiry, according to the Common Council, is whether the recording of all the telephone lines was within the ordinary course of law enforcement. (Br. at 12.) To the contrary, the relevant provision in *Narducci* is central to the City proving a *prima facie* case that the recordings were illegal under the Federal Wiretap Act. The City's explanation of *Narducci* goes to the *mens rea* element, namely, intent.

The Common Council provides an extensive explanation of the facts of the *Narducci* in order to distinguish it from this case. *Narducci* stands for a legal rule: what constitutes *intent*

3

under the statute. Applying the rule to this case, it is clear that DePaepe—by going above and beyond her duties as communications director, taking it upon herself to listen to hours of private phone conversations, failing to take Young's line off the voice logger system, failing to inform Young that his line was mistakenly recorded, reporting the contents of those phone conversations to Boykins, and reducing the conversations to audio cassettes—acted intentionally, and therefore illegally, under the statute. The City had the burden to prove merely that DePaepe failed to take corrective action. The City fulfilled its burden.

    2.    The recordings of Young's private phone conversations were illegally obtained under the Federal Wiretap Act.

The Common Council argues that if the recordings were legally made, they do not become subsequently illegal. (Br. at 25.) The Common Council bases the premise that the recordings were legally made on a mischaracterization of the City's argument in this case. According to the Common Council, the parties supposedly agree that the initial recordings were inadvertent and not a violation of the Act. (Br. at 17.)

The parties do not agree that the initial February 4, 2011, recordings were inadvertent. The City's and the Officers' contention is the opposite. The recordings were made illegally because DePaepe discovered that Young's phone line was mistakenly recorded, she had the power to stop it, and she failed to do so.[1] Based on the content of that first conversation, DePaepe began a targeted, illegal investigation. She admitted as much during her testimony:

> Q. That point that you referred to is the point that you began to listen to recorded conversations, not for the purpose of maintenance or a data check, but to investigate something that you had heard that bothered you?
> A. And to investigate when this line may have been switched.

---

[1] That DePaepe acted intentionally by failing to stop the recording does not mean it was therefore an intentional decision to record Young's phone line. There was no law enforcement purpose to record Young's line before DePaepe discovered the mistake. (Tr. V. I at 194-196; 217-218.) Boykins testified that it was his intent to not record Young's line. (Tr. V. I at 190.)

4

> Q. But you investigated to see if there was more information in regard to this incident?
> A. In regard to the content.
> Q. Yes. That's my question.
> A. Yes.
> Q. That was the point that you began to listen to the lines for purposes of listening for content?
> A. Correct.

(Tr. V. II at 142.) The Common Council's characterization that the parties agree that the initial recordings were made legally is simply wrong. The evidence did not support that argument, and none of the parties—including the Common Council—argued that position.

### B. The law enforcement exception does not apply.

Under the Federal Wiretap Act, the law enforcement exception excludes from the definition of "electronic, mechanical, or other device" any telephone instrument that is used by an investigative or law enforcement officer in the ordinary course of his duties. 18 U.S.C. § 2510(5). What is ordinary is apt to be known; it imports implicit notice. *Amati,* 176 F.3d at 956. Here, the evidence showed that Young's personal phone line was recorded by mistake. (Tr. V. I at 190.) No one in the South Bend Police Department ("SBPD") was aware that Young's line was recorded. (Stipulations ¶ 22.) No one was aware because unlike front desk phone lines and 911 call center phone lines—which everybody knew were recorded 24 hours a day, seven days a week—individual officers' personal phone lines were recorded only with the knowledge and consent of the user. (Tr. V. I at 136.) Young did not ask for his line to be recorded, know that his line was recorded, or consent to his line being recorded. (Tr. V. II at 89-90.) The Common Council, therefore, failed to prove by a preponderance of the evidence that the ordinary course exclusion applied.

      1.      The Common Council's explanation of *Amati* highlights why this case should be decided differently.

The Common Council by explaining *Amati* highlights the fact that the police department in that case made the conscious decision to record a previously unrecorded line. According to the Common Council, it was significant that the police department did not tell the employees that the previously unrecorded line was then recorded. (Br. at 2.) These facts indeed are significant, and the differences in this case are dispositive.

Here, the phone line at issue was an officer's private line. Its use was intended for no other person than Brian Young. (Tr. V. II at 117.) Furthermore, nobody was informed that Young's private line was recorded because nobody knew. (Stipulations ¶ 22.) Finally, Young was not merely an "employee" of the SBPD. Young was a captain. He was on command staff. (Tr. V. II at 19.) The command staff had input into procedures and practices of the department. (Tr. V. I at 131-133.) Unlike *Amati*, there was no conscious decision to record Brian Young's phone line. Recording Young's line was not, therefore, in the "ordinary course" at the SBPD.

In short, the difference between *Amati* and this case is that the police department in *Amati* had a departmental policy to record all calls on all its lines. *Amati,* 176 F.3d at 956. Here, there was no such policy. If there had been such a policy, Young as a captain on the command staff would have known about it.

The pertinent reasoning in *Amati* does not apply to the evidence that was produced at this trial. The Common Council argues that under *Amati*, a police officer has implicit notice that lines to and from the police department are routinely recorded. (Br. at 8.) The exact words of Seventh Circuit were: "To record all calls to and from a police department is … a routine police practice." *Id.* Here, indeed, the 911 calls and front desk calls were routinely recorded, and the officers knew it. The phone line at issue, however, was a private phone line. The SBPD did not record all

private phone lines. In the detective bureau, for example, only three phone lines of 25 to 30 lines were recorded. (Tr. V. II at 56.) Because the Common Council failed to show that it was a routine police practice to record all calls on all the SBPD's private phone lines, it failed to prove that Young's phone line in particular was recorded in the ordinary course.

      2.      The recordings here were a device for intimidation, suppression of criticism, blackmail, and embarrassment.

The Common Council concedes that the evidence showed that Boykins may be subject to claims for intimidation and harassment. (Br. at 25.) The Common Council argues, however, that under *Amati,* 176 F.3d at 956, Boykins's subsequent use of the recordings is immaterial because Young was not tricked into making damaging admissions while using his own private phone line. (Br. at 4, 21.) This interpretation of the evidence that was presented at trial is not persuasive.

There was evidence of trickery produced at trial. DePaepe discovered that Young's line was recorded in February of 2011. (Tr. V. II at 122, 125.) She did not inform Young. (Tr. V. II at 144.) She informed Boykins in March of 2011. (Tr. V. II at 149.) But even then, neither Boykins nor DePaepe informed Young. (Tr. V. I at 191-192.) Despite DePaepe's and Boykins's efforts to conceal the truth, Young learned from Captain Trent on October 12, 2011, that his line was recorded. (Tr. V. I at 96-97.) Young asked that the recording be stopped, and Trent told Young that same day that it was "taken care of." (Tr. V. II at 74.) But DePaepe continued to record Young's line, and in December of 2011, Boykins instructed DePaepe to make cassettes of certain recordings. (Tr. V. I at 193-194.) All these actions occurred without Young's consent. (Tr. V. II at 89-90.) The endgame was that in January of 2012, Boykins confronted Young and Steve Richmond with threats of demotion and/or termination. (Tr. V. II at 101.) The facts smack of trickery and illicit intentions.

7

Although Boykins did not intend to record Young's personal phone line, both he and DePaepe surreptitiously concealed the fact from Young. (Tr. V. I at 190.) Recording Young's phone line served no law enforcement purpose. (Tr. V. II at 205.) DePaepe did not talk to Young after the fact was discovered. (Tr. V. II at 132.) DePaepe listened to Young's phone conversations to investigate the content of those conversations. (Tr. V. II at 142.) This surveillance continued for eight months without Young's knowledge. (Tr. V. II at 192.) Young—rightfully so—felt that it was intentionally concealed from him that his line was being recorded. (Tr. V. II at 85.)

Despite the evidence to the contrary, the Common Council argues that there was no secrecy involved in the recording of the lines. (Br. at 4.) The Common Council's logic is that DePaepe was not secretive because she did not lie. But DePaepe was not forthcoming, either. Consider an exchange that DePaepe described during her testimony at trial:

> Q. Did you have a conversation with Division Chief Eugene Kyle to see if he was aware that his line was being recorded?
> A. Yes. After I had spoke with Division Chief Hassig --
> Q. Wait a second. This would be back in 2004?
> A. Correct.
> Q. Both of these conversations?
> A. Yes.
> Q. Okay. Did you ever advise Eugene Kyle his line was being recorded?
> A. Yes. I didn't actually tell him. I just stated, "You know, Chief, we record a lot of lines around here," and I looked at his phone. And he says, "Oh, I'm aware."
> Q. So Eugene Kyle was aware his line was being recorded, from your knowledge?
> A. That's what he told me.

(Tr. V. II at 170.) We copied this testimony only to illustrate the point. When DePaepe described this conversation on the stand, it doubtless left a lasting impression on the Court. What is DePaepe's behavior if not surreptitious? DePaepe admitted to suggesting to a division chief by way of innuendo and nonverbal communication that he ought to beware because his phone line was tapped. Much worse in Young's case, DePaepe knew that Young's phone line was recorded

8

by mistake, and she actively concealed the fact from him. The Common Council's position that there was no secrecy is an unreasonable inference to draw from the evidence.

The Common Council's explanation of "reasonable suspicion" in the context of *Jandak v. Brookfield,* 520 F. Supp. 815 (N.D. Ill. 1981) should be disregarded for lack of evidence. The Common Council explains that *Jandak* is important for the proposition that it is proper law enforcement purpose for a police chief to listen to recorded conversations based on reasonable suspicion that an officer was improperly using a telephone or guilty of conduct unbecoming an officer. (Br. at 8.) The only evidence on point in this case showed that Young was never under an internal investigation based on any recordings. (Tr. V. II at 84, 198-199.) There was no evidence that Young was improperly using (his own) telephone or guilty of conduct unbecoming of an officer, or any other conduct that would warrant investigation. Boykins never referred Young to Internal Affairs for investigation. The only investigation that Boykins was interested in was determining whom he could trust. (Tr. V. II at 99-100.) Because the Common Council failed to produce evidence, therefore, that the recordings of Young's phone line were undertaken in furtherance of legitimate law enforcement, the ordinary course exclusion does not apply.

### III. Conclusion

For the foregoing reasons, Corbett, Richmond, Wells, and the Youngs respectfully request that the Court declare the recordings were captured in violation of the Wiretap Act, and issue a permanent injunction prohibiting disclosure of the recordings.

Respectfully submitted,

Dated: October 7, 2014                    /s/ Daniel H. Pfeifer
                                                              Daniel H. Pfeifer (5720-71)
                                                              Jeffrey J. Stesiak (16876-46)
                                                              Jerome W. McKeever (30022-71)
                                                              Attorneys for Respondents
                                                             PFEIFER, MORGAN & STESIAK
                                                             53600 North Ironwood Drive
                                                             South Bend, Indiana 46635
                                                             (574) 272-2870

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that on October 7, 2014, a copy of the foregoing was served upon all counsel of record via the Court's electronic filing system.

/s/ Daniel H. Pfeifer