**EXHIBIT A TO CITY'S REPLY BRIEF**
**ANSWERS TO QUESTIONS POSED BY THE COURT**

**FACTUAL FINDINGS:**

**1.     Whether Young's line was recorded by mistake before DePaepe discovered the recordings?**

The parties have stipulated, and the evidence at trial verified, that the recording of Young was initially a mistake. *See* Pre-Trial Order, ¶ F(22).  Calling it a "mistake" does not make it an "accident."  The actions of Barb Holleman directed the telephone line #6031 into a port that brought it to an office later occupied by Young.  Holleman's actions were not accidental.  The use of the term "mistake" is meant to signify that, initially, no one knew that Young was recorded and, during that time frame, no one intended to record Young.

Young's conversations began being inadvertently intercepted in March of 2011 when he moved into the captain's office in the Investigative Division.  That office contained the recorded line that Barb Holleman had directed there prior to Young's occupancy.  Pre-Trial Order, ¶ F(19); Tr. Vol. II 70:18-20.  Mistaken recordings are not in the ordinary course of law enforcement because they necessarily cannot be pursuant to any routine and no good faith provision exists in the law enforcement exclusion.  *See* City's Resp. Br., § I(c).  Therefore, as Darryl Boykins conceded, inadvertent recordings can serve no law enforcement purpose and are not excluded from the Wiretap Act.  *See also Abraham v. Cnty. of Greenville*, 237 F.3d 386, 389 (4th Cir. 2001).

**2.     Whether Young's line continued to be recorded pursuant to the department's policy after DePaepe discovered the recordings?**

The continued recording of Young's line was *not* pursuant to *any* policy but was continued as part of a Karen DePaepe's unilateral initiative to investigate Young and then part of Chief Boykins personal decision to allow the investigation to continue.

The parties agree that there was no policy, procedure, or routine that applied to the recording of individually assigned lines and that no general announcement was ever made regarding the lines to be recorded. Council's Findings [Doc. Entry No. 166], ¶¶ 26, 37-40, 58-59, 73. The Police Department's routine for recording all front desk and communications center lines did not apply to individually assigned lines. City's Resp. Br., § I(b). Therefore, the recordings were not at any time intercepted pursuant to any policy, procedure, or routine.

At most, the Police Department followed an informal protocol for assigned lines established by chiefs of police that gave command staff the "personal choice" to have their individual lines recorded in consultation with the chief. Council's Findings, ¶ 37-40; City's Resp. Br., § I(a). This protocol was communicated by former Police Chief Tom Fautz to Communications Director Karen DePaepe in 2004. Police Chief Darryl Boykins expressly adopted this approach upon becoming police chief in 2007. He stated that he would not record an officer without that officer's knowledge and that he believed officers had a privacy right in their assigned lines.

Nevertheless, upon discovering that Young's line was recorded in error in February 4, 2011, DePaepe failed to take any action. Indeed, she undertook an unsupervised and unauthorized investigation into the content of the recordings of Young. In March of 2011, when DePaepe finally informed Boykins, Boykins also took no action to halt the improper recording of Young's line. His stated purpose in allowing the recording to continue was to investigate Young. *See* City's Resp. Br., § II. Thus, the recordings were not pursuant to any policy, procedure, or routine and were also in direct violation of the police chief's informal protocol.

3.    **What was the police department's policy –written or unwritten—or customary practice for recording officer's lines?**

The parties agree that there was no policy, procedure, or routine that applied to the recording of individually assigned lines and that no general announcement was ever made regarding the lines to be recorded.  Council's Findings [Doc. Entry No. 166], ¶¶ 26, 37-40, 58-59, 73.  The Police Department's routine for recording all front desk and communications center lines did not apply to individually assigned lines.  City's Resp. Br., § I(b).  Therefore, the recordings were not at any time intercepted pursuant to any policy, procedure, or routine.

At most, the Police Department followed an informal protocol for assigned lines established by chiefs of police that gave command staff the "personal choice" to have their individual lines recorded in consultation with the chief.  Council's Findings, ¶ 37-40; City's Resp. Br., § I(a).  This protocol was communicated by former Police Chief Tom Fautz to Communications Director Karen DePaepe in 2004.  Police Chief Darryl Boykins expressly adopted this approach upon becoming police chief in 2007.  He stated that he would not record an officer without that officer's knowledge and that he believed officers had a privacy right in their assigned lines.

4.    **Did police department have different policies / practices regarding recording officer's lines vs. recording line going into the Communications Center and Front Desk?**

Yes.  The evidence established that all front desk and communications center calls were recorded on all lines with the exception of a single line for personal calls.  The Communications Center adopted a written training manual pursuant to which it trained and informed dispatchers regarding the recording practices of the front desk and communications center lines.  The front desk personnel were orally informed of the practice.  By contrast, as stated above, there was no policy for recording individually assigned lines and no training.  Each Chief would determine the

3

approach he desired and he then worked with his command staff to implement. It is undisputed that Chief Boykins desired to continue the approach of prior Chief Fautz. That approach necessarily included informing and seeking permission from any officer prior to recording that officer. *See* City's Resp. Br., § I(b); City's Reply Br., at 5-6; City's Findings of Fact ¶¶ 4-12; 63-66.

5.   **Was Young's line recorded for investigative purpose?**

Yes. After initially being recorded inadvertently, Young continued to be recorded after discovery of the error to further an investigation into Young's conduct. Boykins specifically testified that he allowed the recording of Young to continue to investigate his conduct and that this was the law enforcement purpose for recording Young. Boykins' subsequent actions with respect to Young and others verify that he allowed the recording to continue for improper purposes. Under *Amati*, the law enforcement exclusion requires a routine recording that is *not* for an investigative purpose. City's Resp. Br., § I(f); City's Findings of Fact ¶¶ 68-71, 73.

6.   **Was Young's line recorded in violation of police department's recording policy?**

*See* answers to No. 2 -4. There was no policy regarding the recording of individually assigned lines. As the City has argued, various police chiefs had developed informal protocols of recording officers with their knowledge as a personal choice. Boykins acknowledged that he implemented that same protocol. Thus, the only way to answer question No. 6 is to say: "Yes, to the extent that the Boykins protocol can be colloquially referred to as a 'policy,' that policy was violated with respect to Young's line." *See* City's Resp. Br., §§ I(a), (d).

**ISSUES OF LAW TO ADDRESS**:

**1.   Should there be a different legal treatment for the recordings of Captain Young's line before and after they were found by Karen DePaepe?**

Not for the purposes of applying the law enforcement exclusion. The legal treatment of the recordings does not change before and after they were discovered by DePaepe. Whether inadvertent or for the purpose of investigating Young in violation of the police chief's protocol, the recordings were not routine or non-investigative and they occurred without notice. The recordings are therefore subject to the Act and cannot be disclosed as they were not obtained as required under the Act. *See* City's Resp. Br., § II.[1]

**2. Are unintentional recordings illegal under the Federal Wiretap Act?**

Unintentional recordings are neither excluded from or authorized by the Wiretap Act and therefore are subject to the Act's provisions. *See* City's Resp. Br., §§ I(c) and II. However, they are not "illegal" in the sense that they do not give rise to civil or criminal liability under the Act. *See* 18 U.S.C. § 2511.

**3. If Young's line was recorded illegally, does law enforcement officer exception nevertheless cover the recordings at issue?**

No. The legal status of the recordings hinges in the first instance on whether they are excluded from the Act. The law enforcement exclusion is inapplicable because the Council has failed to show a routine, non-investigative purpose for the recordings. Specifically, the interception of Young's conversations was: (a) not pursuant to any policy, procedure, or routine; (b) initially inadvertent; (c) allowed to continue once the error was discovered for the express purpose of investigating Young; (d) without implicit notice; and (e) in violation of the police chief's own informal protocol of recording only as a personal choice with actual notice. *See* City's Resp. Br., § I; *see generally* City's Reply Br.

---

[1] For the purpose of imposing civil and criminal liability, there is an intent requirement under the Act. 18 U.S.C. § 2511. However, neither civil nor criminal liability is at issue in this case.

5

Because the law enforcement exclusion does not apply, the recordings are subject to the Act.  The interception of Young's conversations was not authorized by the Act pursuant to 18 U.S.C. § 2516.  Therefore, they may not be used or disclosed.  *See* City's Resp. Br., § II.