United States District Court
Northern District of Indiana
Hammond Division

| | |
|---|---|
| City of South Bend,<br><br>        Plaintiff,<br><br>    v.<br><br>South Bend Common Council, Tim Corbett, Dave Wells, Steve Richmond, Brian Young, Sandy Young, Karen Depaepe, and Scott Duerring,<br><br>        Defendants. | Civil Action No. 3:12-CV-475 JVB |

**MEMORANDUM OF DECISION AND ORDER**

On August 30, 2012, City of South Bend filed a declaratory judgment action before this Court to seek a determination of (1) whether certain recordings on a police officer's telephone line violated the Federal Wiretap Act, 18 U.S.C. § 2511, and (2) whether disclosure of those recordings would violate the Federal Wiretap Act. (DE 1). This case was tried before the Court without jury, and the Court, having heard the evidence, having reviewed the exhibits admitted into evidence, and having considered the arguments of the parties, now makes its findings of fact and conclusions of law.[1]

**A. Findings of Facts**

South Bend Police Department had a recording system which was capable of recording forty-eight phone lines simultaneously. Once a line was wired to the recording system, everything on that line was recorded regardless of content, time, and persons in the conversation. This

---

[1] City of South Bend and Defendant Officers have requested another oral argument after the bench trial has concluded. (DEs 179, 180). Because this case has been extensively briefed and tried, the Court finds an additional oral argument unnecessary, and therefore denies the motions.

1

recording system was maintained by Police Department Communications Director Karen Depaepe who assumed her post on July 1, 1998.

Due to the limited capacity of the recording system, not all lines in the Police Department were recorded. Nevertheless, it was common knowledge that lines in the communication center and the front desk were recorded. In fact, the communication center's training manual notified dispatchers that all calls on the dispatch floor were recorded. The front desk personnel, despite not having the same training manual, were verbally informed that the front desk lines were recorded.

Besides the 911 and front desk lines, the Police Department also wired several officers' lines into the recording system. An officer's line was customarily recorded upon the officer's request and approval by the Chief of Police. Except for DePaepe and the officers who requested their lines to be recorded, other people in the Police Department did not specifically know which officers line were recorded.

The line at issue (245-6031) was previously assigned to Rick Bishop who requested then-Chief of Police Thomas Fauz to record his line. Upon Chief Fauz's approval, the '6031 line was wired to the recording system. Around early 2007, Bishop was promoted to Division Chief of the Investigative Division and the '6031 line followed him to the Division Chief's office. Three years later, then-Captain Steve Richmond replaced Bishop to become the new Division Chief and moved into the Division Chief's office. In the meantime, Brian Young was promoted to Captain of the Investigative Division, moving to Richmond's old office.

Richmond, however, wanted his line (235-7473) to follow him to the Division Chief's office. He asked Barbara Holleman, who was an administrative assistant to the Division Chief's office, to accomplish the transfer. Holleman completed Richmond's request by moving the '6031 line to

the Captain's office while moving the '7473 line to the Division Chief's office. As a result of the switch, Young ended up with the '6031 line which was being recorded. Neither Young nor Holleman knew that Young's line was recorded. At that time, no one intended to record Young's line.

In late 2010, the recording system was experiencing crashes. As part of the troubleshooting process, DePaepe listened to recordings to determine whether any data loss has occurred. On February 4, 2011, while listening to the recordings, DePaepe heard Captain Young's voice on the '6031 line which she believed had previously belonged to Richmond. DePaepe thought this could be a malfunction of the system. Therefore, she continued listening to conversations on that line, including conversations dated before the crashes, and learned that Young had indeed been using the '6031 line. She then checked the list of recorded lines on her computer and confirmed that Young's line was recorded.

During this process, DePaepe heard some comments in Young's recorded conversations, which she found to be inappropriate. About a month later, in March 2011, Depaepe told then-Chief of Police Darryl Boykins that Young's line was recorded and there were some disturbing conversations recorded on that line. Upon learning this, Boykins decided to continue the recording practice to gather more information before making a decision on what to do. Seven months later, in October 2011, Young learned from Captain Phil Trent that his line was being recorded. Young requested the recording to be stopped, but nothing was done regarding his request. About 2 months later, Boykins asked DePaepe to give him relevant recordings of Young's line to keep them as evidence. DePaepe then created an officer report and made five

audio cassette tapes for eight recordings that occurred between February 4, 2011, and July 15, 2011[2].

After receiving these cassette tapes from DePaepe, Boykins told Young and Richmond that he had access to those recordings. Boykins also told Richmond that he no longer considered Richmond as a loyal employee and threatened to demote, discipline, or fire him. Shortly after that, a federal investigation on the recordings was initiated. Boykins was demoted and DePaepe was discharged.

**B. Conclusions of Law**

*(1) Legality of the Recordings under the Wiretap Act*

Title III of the Omnibus Crime Control and Safe Streets Act of 1968 (the "Wiretap Act") forbids disclosure of communications obtained in violation of the Act. 18 U.S.C. § 2511(1)(c). An intentional interception of wire communications is a prima facie violation of the Wiretap Act. 18 U.S.C. § 2511(1)(a); *Amati v. City of Woodstock*, 176 F.3d 952, 954 (7th Cir. 1999). But § 2511(1) does not cover inadvertent interceptions. 18 U.S.C. § 2511(1)(a) ("[A]ny person who intentionally intercepts . . . any wire, oral, or electronic communication shall be punished . . . ."); s*ee Narducci v. Vill. of Bellwood*, 444 F. Supp. 2d 924, 935 (N.D. Ill. 2006) *aff'd sub nom. Narducci v. Moore*, 572 F.3d 313 (7th Cir. 2009) (interception must have been the result of defendant's conscious objective rather than the product of a mistake or an accident); *see also Abraham v. County of Greenville, S.C.*, 237 F.3d 386, 391 – 392 (4th Cir. 2001) (requiring interceptions to be intentional before liability attaches).

---

[2] Specifically, the eight conversations occurred on February 4, 2011, April 5, 2011, June 3, 2011, June 6, 2011, June 16, 2011, June 27, 2011, July 14, 2011, July 15, 2011. The contents of the recordings are not known to this Court, as they were not introduced into the evidence. In fact, the contents are not relevant for the purpose of this case.

On or before February 4, 2011, nobody intended to record Young's line. His line was recorded accidentally; in fact, not even the person who switched the lines knew of the mix-up. Since the recordings on or before February 4 do not satisfy the intentionality requirement of the Wiretap Act, they are not covered by the Wiretap Act.

However, after discovering Young's line was mistakenly recorded, Boykins and DePaepe nevertheless continued to record and listen to Young's line. Continuing these recordings without Young's consent was intentional and, unless excepted by the statute, illegal.

One of the exceptions to the prohibitions of the Wiretap Act is a statutory exclusion for law enforcement activities. The Act defines the word "intercept" as "acquisition of the contents of any wire, electronic, or oral communication through the use of any electronic, mechanical, or other device." 18 U.S.C. § 2510(4). However, the definition of "electronic, mechanical, or other device" excludes equipment "being used . . . by an investigative or law enforcement officer in the ordinary course of his duty." 18 U.S.C. § 2510(5)(a)(ii).

The law enforcement exclusion protects routine noninvestigative eavesdropping. It does not apply to recordings used as a tool of investigation (which requires a warrant) or as a device for intimidation, suppression of criticism, blackmail, embarrassment, or other improper purposes. *Amati*, 176 F.3d at 956. The court in *Amati* found that, if the ordinary practice of the police department was to record all lines, then the recordings of all personal and official calls were within the law enforcement exclusion. In *Amati* the police department recorded all lines except one which was used for personal calls. From time to time, the department referred to that line as untapped in its memoranda and correspondence. At some point, the department decided to record that one line without telling the employees. The court held that the ordinary practice of the police department was to record all lines; therefore, adding this previously untapped line to the

recording system was in the ordinary course of law enforcement, even if the line was included without notice. *Id*.

The law enforcement exclusion, however, does not apply in this case. Unlike *Amati*, the South Bend Police Department does not customarily record all lines. In fact, very few lines assigned to officers are recorded. Furthermore, an officer's line is recorded only upon the officer's request and with the Chief's approval. After discovering Young's line was inadvertently recorded, Boykins chose to continue recording the line to gather more information related to the conversations reported by DePaepe. The recording was therefore a tool to gather evidence on certain people and their conversations. This is different from the routine noninvestigative use in *Amati*. Moreover, there were no other known instances where officers' lines were recorded without their consent. Therefore, the law enforcement exclusion does not apply to the recordings after DePaepe discovered the mistake of recording Young's line.

### *(2) Disclosure of the Recordings under the Wiretap Act*

The Wiretap Act forbids disclosures of recordings obtained in violation of the Act. § 2511(1)(c). Because the recordings after February 4, 2011, are illegal under the Act, they are prohibited from disclosures.

The recordings on or before February 4, 2011, however, were inadvertent. Although inadvertent wiretappings do not violate the Wiretap Act, the City nevertheless argues that the Act places strict disclosure controls on all interceptions. The City primarily relies on § 2517, *United States v. Dorfman*, 690 F.2d 1230 (7th Cir. 1982), and *Gelbard v. U.S.*, 408 U.S. 41 (1972) to argue that the Wiretap Act prohibits disclosures of all wiretapped conversations whether or not

the conversations were recorded inadvertently, unless the disclosures are specifically authorized by the Act. The Court disagrees with this argument for the following reasons.

Section 2517 of the Wiretap Act provides a list of situations where disclosures are allowed. Generally speaking, if a recording is obtained "by any means authorized by [the Act]," the recording may not be disclosed except in some limited circumstances. 18 U.S.C. § 2517; *United States v. Dorfman*, 690 F.2d 1230, 1232. However, inadvertent recordings, although not violating the Act, are not the types of recordings specifically authorized by the Act. Rather, since the Act covers only the intentional recordings, *see* § 2511(1) ("[A]ny person who . . . intentionally intercepts . . . intentionally uses . . . intentionally discloses . . . shall be punished . . . ."), inadvertent recordings are not covered by the Act as the City suggests.

Additionally, *Dorfman* and *Gelbard* are distinguishable because both cases relate to authorized intentional eavesdropping. In *Dorfman*, the government conducted electronic surveillance of a certain business pursuant to a warrant and intercepted hundreds of telephone conversations. These wiretapped conversations were sealed by the district court. After the district court ruled that most of the wiretap evidence was obtained lawfully by the government, the press sought to unseal the recordings before criminal trial. The Court of Appeals for the Seventh Circuit ruled that these wiretapped conversations that were obtained under provisions authorized by the Act should not be disclosed unless the circumstances of disclosure fell within 18 U.S.C. § 2517. *United States v. Dorfman*, 690 F.2d 1230 (7th Cir. 1982). However, *Dorfman* does not suggest that any wiretapped conversation, even if inadvertent, falls within the purview of the Act. Similarly, in *Gelbard*, the wiretap evidence was obtained by the government for criminal investigations, pursuant to an approved wiretap order. *Gelbard v. United States*, 408 U.S. 41, 44 (1972).

For these reasons the Court finds that the Wiretap Act does not control the disclosure of the recordings on or before February 4, 2011. While some other federal, state, or local laws may prohibit such disclosure, that is not within the scope of the City's declaratory action.

### C. Conclusion

The Court finds that the recordings made on Young's line on or before February 4, 2011, did not violate § 2511(1)(a) of the Wiretap Act. Furthermore, because the Wiretap Act does not control unintentional recordings, their disclosure would not violate the Act. However, the recordings after February 4, 2011, violated the Wiretap Act and are prohibited from disclosure.

The Clerk is ordered to enter final judgment consistent with the Court's findings.

SO ORDERED on January 14, 2015.

>  s/ Joseph S. Van Bokkelen
> JOSEPH S. VAN BOKKELEN
> UNITED STATES DISTRICT JUDGE