


In the

# United States Court of Appeals

## For the Seventh Circuit

---

Nos. 15-3315 & 15-3385

CITY OF SOUTH BEND, INDIANA,

*Plaintiff-Appellee*,

*v.*

SOUTH BEND COMMON COUNCIL,

*Defendant-Appellee, Cross-Appellant*,

*and*

TIM CORBETT, *et al.*,

*Defendants-Appellants, Cross-Appellees*.

---

Appeals from the United States District Court for the Northern District of Indiana, South Bend Division.
No. 3:12-CV-475 JVB — **Joseph S. Van Bokkelen**, *Judge*.

---

ARGUED OCTOBER 26, 2016 — DECIDED AUGUST 1, 2017

---

Before FLAUM, EASTERBROOK, and WILLIAMS, *Circuit Judges*.

EASTERBROOK, *Circuit Judge*. The caption of this case says much of what is necessary to its resolution: the City of South Bend, Indiana, is suing one of its constituent parts.

As a matter ordinary business, South Bend's Police Department (part of the City rather than a distinct juridical entity) records some of the desk phones supplied to officers as official equipment at its headquarters. In 2005 Rick Bishop, then a Captain in the Risk Management Bureau, asked that his phone be added to those being recorded, and this was done. The line's phone number does not matter; we call it the Line. In February 2010 Steve Richmond took Bishop's former position and office. Richmond wanted to keep his old phone number, so the Line was switched to the office of the Captain of the Investigative Division, which was vacant at the time. In March 2010 Brian Young was promoted to that job. Young did not know that the phone in his new office was among those being recorded. It is unclear who did know in 2010; once recording began in 2005, no one appears to have given the subject further thought.

In February 2011 the recording system crashed and had to be restored from a backup. While listening to some recordings to make sure that this had been done correctly, Karen DaPaepe, the Police Department's Director of Communications, heard Young say things that she thought inappropriate. This was reported up the chain of command, and in December 2011 the Chief of Police (Darryl Boykins) asked DaPaepe to give him recordings of the most troubling calls. DaPaepe gave the Chief cassette tapes of calls Young had made on eight dates in 2011. Apparently knowledge of the recordings' existence and contents went beyond Boykins; other persons whose voices had been recorded on the Line became concerned. Boykins used some of the information to threaten Richmond. Federal and state officials launched investigations, which ended without charges being filed. Boykins was demoted; DaPaepe was fired. And the Com-

mon Council (the City's legislature) demanded access to the tapes. When the Police Department demurred, the legislators issued a subpoena to the City's executive officials and applied to state court for its enforcement.

The City believes that complying with the subpoena would violate federal wiretap statutes. See 18 U.S.C. §§ 2510–22. Not content with the prospect of interposing a federal defense to the subpoena, the City of South Bend filed this federal suit, seeking a declaratory judgment that disclosure of the recordings would violate §2511(1)(c). A federal defense to a claim arising under state law does not permit the suit's removal. See, e.g., *Aetna Health Inc. v. Davila*, 542 U.S. 200 (2004) (discussing the rule and its exceptions, such as complete preemption). The City tried to sidestep this rule, and obtain a decision on an isolated federal issue, through the declaratory-judgment process. For good measure the City sued Young, Richmond, and three other persons, contending that it should be declared not liable to any of them. They filed their own suit seeking damages from the City. The district court consolidated the two suits.

The district court ruled that it had subject-matter jurisdiction despite the fact that the suit had been filed to present a federal defense to a state suit rather than a stand-alone federal claim. Normally the Declaratory Judgment Act, 28 U.S.C. §2201, cannot be used to present a federal defense to state litigation. But before the Common Council moved to dismiss the action, the five individual defendants in the City's suit had become plaintiffs in their own suit, seeking damages based directly on federal statutes. This supplied jurisdiction, the district court concluded, even though the City's original complaint did not. 2013 U.S. Dist. LEXIS 5192

(N.D. Ind. Jan. 14, 2013). In effect, the district court treated the second suit, consolidated with the City's, as the jurisdictional footing for both suits, with the original dispute between the City's legislative and executive branches along for the ride under the supplemental jurisdiction of 28 U.S.C. §1367.

After a bench trial, the judge concluded that recordings through February 4, 2011, had been lawful because Captain Bishop had consented in 2005 and no one with authority over the recording system recognized that Captain Young had started using the Line in March 2010. Lawfully made recordings may be disclosed, the judge added. But once DaPaepe learned that Young was using the Line, recording became unlawful—and because the recordings were unlawful, their distribution, even in response to a state subpoena, would be unlawful. The district court rejected the Common Council's reliance on 18 U.S.C. §2510(5)(a)(ii), which permits the recording of any line "being used by … an investigative or law enforcement officer in the ordinary course of his duties". The judge based his finding of illegality principally on §2511(1)(a), which forbids the intentional interception of a call in the absence of a statutory justification. The district court treated the intent element as related to knowledge of whose voice would be heard rather than knowledge of which line would be recorded, but the judge did not explain why the statutory word "intentionally" refers to the identities of the parties to a call.

We have cross-appeals. The Common Council asks us to hold that all of the recordings may be disclosed and the individual parties that none may be. The City did not appeal but also does not defend the judgment in full. It asks us to

hold, contrary to the district court, that the recordings *on* February 4, 2011, are unlawful. The City does not discuss the venerable rule that only a party that has filed a timely appeal may obtain a modification of the judgment. See *Greenlaw v. United States*, 554 U.S. 237 (2008). And none of the parties' briefs discusses the significance of the pending state litigation, the fact that one branch of the City of South Bend is suing another, or the fact that before trial the individual parties' suit had been settled and dismissed. After argument we directed the parties to file briefs on these issues. We now conclude that it is unnecessary to discuss the merits, for reasons that can be stated succinctly.

The initial problem, as we observed at the outset, is that this suit began as a claim by the executive branch of a city's government against the legislative branch. Asked for precedent deeming such a suit justiciable, the parties knew of none. We likewise could not find any. The suit is like one division of General Motors suing another. We held in *Illinois v. Chicago*, 137 F.3d 474 (7th Cir. 1998), that a state cannot sue one of its cities, because as far as the national government is concerned a state and all of its creatures is a unit. That goes for cities suing their states, too. See, e.g., *Trenton v. New Jersey*, 262 U.S. 182, 185–86 (1923); *Williams v. Mayor & City Council of Baltimore*, 289 U.S. 36, 40 (1933).

Doubtless a state can divide powers into such rigidly separated compartments that it is possible for one to sue another. See, e.g., *Arizona State Legislature v. Arizona Independent Redistricting Commission*, 135 S. Ct. 2652 (2015). But a city's legislative and executive branches are not distinct juridical entities; they are part of a single government. Sometimes individual members of the legislature are permitted to sue par-

ticular executive officers, but they face formidable problems of standing. See *Raines v. Byrd*, 521 U.S. 811 (1997). A suit by one whole branch of the federal government against another is not possible; a suit by the executive branch of a city versus the legislative branch is equally improper. State courts may have authority to resolve an intramural dispute, but otherwise it must be worked out the same way Congress and the President resolve their differences: by politics.

But suppose this is wrong and that *Arizona State Legislature* becomes the norm rather than, as the Justices described it, a special situation based on a state constitution's provision allocating powers among state entities in a way that was asserted to violate the federal Constitution. 135 S. Ct. at 2661–65. The fact remains that the City filed this suit in an effort to achieve, through the Declaratory Judgment Act, the removal of a single federal issue in a pending state case.

Potential state-court defendants can use the declaratory-judgment process to curtail legal risk. The paradigm is the person who contends that he fears being prosecuted under state law for speech that is protected by the First Amendment and to avoid the risk of punishment will keep silent unless a federal court declares the state law invalid. See, e.g., *Steffel v. Thompson*, 415 U.S. 452 (1974). But once a state prosecution begins, the state court is the right place for the federal defense. That's the holding of *Younger v. Harris*, 401 U.S. 37 (1971), for criminal cases, and we know from *Samuels v. Mackell*, 401 U.S. 66, 69–73 (1971), that *Younger* applies to declaratory judgments as well as to injunctions. *Trainor v. Hernandez*, 431 U.S. 434 (1977), adds that the same principle applies to civil litigation brought by a state to implement state policy. See also *Huffman v. Pursue, Ltd.*, 420 U.S. 592 (1975).

The Common Council sued in state court to vindicate what it depicts as a right to information needed for the exercise of its legislative powers. Whether or not that activates the *Younger* principle, it certainly makes the issuance of a declaratory judgment imprudent. *Wilton v. Seven Falls Co.*, 515 U.S. 277, 289–90 (1995), and *Brillhart v. Excess Insurance Co.*, 316 U.S. 491 (1942), conclude that a federal judge ordinarily should decline to issue a declaratory judgment when the same parties are litigating the same issues before a state court, even when the state plaintiff is a private entity. When the state plaintiff is a governmental body, putting *Trainor* and *Huffman* together with *Wilton* and *Brillhart* leads straight to the conclusion that it is an abuse of discretion to take a federal defense out of a state judge's hands by issuing a declaratory judgment. If any court is to resolve a dispute between the legislative and executive branches of a unit of state or local government, a state court is the right forum.

The district judge did not suggest disagreement with these principles and instead invoked Captain Young's (and the other private litigants') request for damages under 18 U.S.C. §2520 as the basis of its authority. There are two problems. First, what we have said already shows that the existence of subject-matter jurisdiction is a necessary, but not a sufficient, condition for issuing a declaratory judgment. Second, by the time of trial there was no dispute about damages requiring resolution. The request for damages had been settled and the private suit dismissed. The parties to that suit executed a release in November 2013. The settlement includes a provision that public release of the recordings will be governed by the outcome of the state litigation. That left nothing more for the federal judge to do.

In papers filed after the oral argument, the parties stressed that only the request for damages has been settled and that the five individual litigants still want a declaratory judgment that the City must not make the recordings public or otherwise use them. But how does that justify a decision by a federal court? Equitable relief—injunctions and declaratory judgments alike—depends on a conclusion that legal relief such as damages is inadequate to protect injured parties. By settling their claims, the five individual litigants have shown that financial relief *is* adequate. To seek a declaratory judgment is to request an advisory opinion on top of the settlement.

We could imagine an argument that a further release or use of the recordings, should the Common Council prevail in the state case, would cause further injury to the five individual litigants and justify additional compensation. But the settlement forecloses that possibility. It provides for payment of a flat sum, even as it contemplates the possibility that the state court will permit dissemination of the recordings. The parties could have structured their settlement so that additional disclosure leads to additional remuneration, but they did not. The five individual litigants have given up any entitlement to further compensation, perhaps receiving a larger lump sum as a result. What's more, if the state court authorizes a further disclosure, this would reflect a decision that federal law permits disclosure. That conclusion would knock out any legal basis for additional compensation. In sum, the settlement removes the private interests from the case, leaving only the City's effort to move a federal defense from state to federal court.

The judgment of the district court is vacated, and the case is remanded with instructions to dismiss the complaint. The state court now is free to resolve the underlying dispute on its own, without regard to the vacated federal judgment.